| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| WRIGHT, FINLAY & ZAK, LLP<br>Nichole L. Glowin, Esq. SBN 262932<br>4665 MacArthur Court, Suite 200<br>Newport Beach, CA  92660<br>Tel: (949) 477-5050; Fax: (949) 608-9142<br>nglowin@wrightlegal.net<br><br><br><br>☐ *Movant appearing without an attorney*<br>☒ *Attorney for Movant* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO VALLEY DIVISION**

| In re:<br><br>ORNA SHAPOSHNIK | CASE NO.: 1:19-bk-12354-VK |
|---|---|
| | CHAPTER: 13 |
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** |
| | DATE: 11/06/2019 |
| | TIME:  9:30 am |
| Debtor(s). | COURTROOM: 301 |

| **Movant:** | U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2006-AR11 |
|---|---|

1. **Hearing Location**:

   ☐ 255 East Temple Street, Los Angeles, CA 90012        ☐ 411 West Fourth Street, Santa Ana, CA 92701

   ☒ 21041 Burbank Boulevard, Woodland Hills, CA 91367    ☐ 1415 State Street, Santa Barbara, CA 93101

   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 1                                    **F 4001-1.RFS.RP.MOTION**

4.  When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5.  If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6.  ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d).  If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7.  ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b).  If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

    a.  ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

    b.  ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

    c.  ☐ An application for order setting hearing on shortened notice was filed and remains pending.  After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: 10/09/2019

WRIGHT, FINLAY & ZAK, LLP
Printed name of law firm (if applicable)

Nichole L. Glowin
Printed name of individual Movant or attorney for Movant

/s/ Nichole L. Glowin
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                    Page 2                              F 4001-1.RFS.RP.MOTION

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

   ☐ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

   ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

   ☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

   ☐ Other (*specify*):

2. **The Property at Issue (Property):**

   a. Address:

   *Street address*: 23848 Killion Street
   *Unit/suite number*:
   *City, state, zip code*: Woodland Hills, CA 91367

   b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit __2__): 06 1510586, Los Angeles, County, California

3. **Bankruptcy Case History:**

   a. A ☒ voluntary ☐ involuntary  bankruptcy petition under chapter  ☐ 7  ☐ 11  ☐ 12  ☒ 13
   was filed on (*date*)  __09/18/2019__.

   b. ☐ An order to convert this case to chapter  ☐ 7  ☐ 11  ☐ 12  ☐ 13  was entered on (*date*) _____.

   c. ☐ A plan, if any, was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay:**

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

   (1) ☒ Movant's interest in the Property is not adequately protected.

       (A) ☒ Movant's interest in the Property is not protected by an adequate equity cushion.

       (B) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

       (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

   (2) ☒ The bankruptcy case was filed in bad faith.

       (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

       (B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

       (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

       (D) ☒ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

       (E) ☒ The Debtor filed only a few case commencement documents with the bankruptcy petition.  Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

       (F) ☐ Other (*see attached continuation page*).

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 3                          **F 4001-1.RFS.RP.MOTION**

(3) ☒  (*Chapter 12 or 13 cases only*)

    (A) ☐  All payments on account of the Property are being made through the plan.
        ☐ Preconfirmation ☐ Postconfirmation  plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

    (B) ☒  Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐  The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐  The Movant regained possession of the Property on (*date*) _____, which is ☐ prepetition ☐ postpetition.

(6) ☐  For other cause for relief from stay, see attached continuation page.

b. ☐  Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐  Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☒  Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    (1) ☐  The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

    (2) ☒  Multiple bankruptcy cases affecting the Property.

5. ☐  **Grounds for Annulment of the Stay.**  Movant took postpetition actions against the Property or the Debtor.

a. ☐  These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

b. ☐  Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐  Other (*specify*):

6. **Evidence in Support of Motion:  (D***eclaration(s) MUST be signed under penalty of perjury and attached to this motion*)

a. The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☐  Supplemental declaration(s).

c. ☐  The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents.  Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit _____.

d. ☒  Other:
    Note attached hereto as Exhibit 1; Deed of Trust attached hereto as Exhibit 2, Assignments and Merger Documents attached hereto as Exhibit 3 and Payment History attached hereto as Exhibit 4.

7. ☐  **An optional Memorandum of Points and Authorities is attached to this motion.**

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                              Page 4                              **F 4001-1.RFS.RP.MOTION**

**Movant requests the following relief:**

1. Relief from the stay is granted under:   ☒ 11 U.S.C. § 362(d)(1)   ☐ 11 U.S.C. § 362(d)(2)   ☐ 11 U.S.C. § 362(d)(3).

2. ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3. ☒ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement.  Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

4. ☐ Confirmation that there is no stay in effect.

5. ☐ The stay is annulled retroactive to the bankruptcy petition date.  Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6. ☐ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
   ☐ without further notice, or ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9. ☒ Relief from the stay is granted under 11 U.S.C. § 362(d)(4):  If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
    ☐ without further notice, or ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:

    ☐ without further notice, or ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☒ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☐ If relief from stay is not granted, adequate protection shall be ordered.

14. ☐ See attached continuation page for other relief requested.

Date:   10/09/2019

WRIGHT, FINLAY & ZAK, LLP
_____
Printed name of law firm (*if applicable*)
 Nichole L. Glowin
_____
Printed name of individual Movant or attorney for Movant

/s/ Nichole L. Glowin
_____
Signature of individual Movant or attorney for Movant

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# REAL PROPERTY DECLARATION

I, (*print name of Declarant*) Daniel Maynes _____, declare:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age.  I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (*specify*):

   a. ☐ I am the Movant.

   b. ☐ I am employed by Movant as (*state title and capacity*):

   c. ☒ Other (*specify*): Employed by Servicing Agent, Select Portolio Servicing, Inc. as a Document Control Officer

2. a. ☒ I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property.  I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant.  These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate.  Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event.  The business records are available for inspection and copies can be submitted to the court if required.

   b. ☐ Other (*see attached):*

3. The Movant is:

   a. ☐ Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.  A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit _____.

   b. ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g.,mortgage or deed of trust) or (2) is the assignee of the beneficiary.  True and correct copies of the recorded security instrument and assignments are attached as Exhibit _1-3_.

   c. ☐ Servicing agent authorized to act on behalf of the:
      ☐ Holder.
      ☐ Beneficiary.

   d. ☒ Other (*specify):* The promissory Note (1) names Movant as the payee under the promisory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. See Exhibit 1 attached hereto, Note.

4. a. The address of the Property is:

   *Street address*: 23848 Killion Street
   *Unit/suite no.*:
   *City, state, zip code*: Woodland Hills, CA 91367

   b. The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:
   06 1510586, Los Angeles County, California.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                           Page 6                           **F 4001-1.RFS.RP.MOTION**

5.  Type of property (*check all applicable boxes*):

    a.  ☒  Debtor's principal residence      b.  ☐  Other residence
    c.  ☐  Multi-unit residential      d.  ☐  Commercial
    e.  ☐  Industrial      f.  ☐  Vacant land
    g.  ☐  Other (*specify*):

6.  Nature of the Debtor's interest in the Property:

    a.  ☒  Sole owner

    b.  ☐  Co-owner(s) (*specify*):

    c.  ☐  Lienholder (*specify*):

    d.  ☐  Other (*specify*):

    e.  ☒  The Debtor  ☒ did  ☐ did not  list the Property in the Debtor's schedules.

    f.  ☒  The Debtor acquired the interest in the Property by  ☐ grant deed  ☐ quitclaim deed  ☒ trust deed.

        The deed was recorded on (*date*) 07/10/2006 .

7.  Movant holds a  ☒ deed of trust  ☐ judgment lien  ☐ other (*specify*) _____
    that encumbers the Property.

    a.  ☒  A true and correct copy of the document as recorded is attached as Exhibit 2 .

    b.  ☒  A true and correct copy of the promissory note or other document that evidences the Movant's claim is
        attached as Exhibit 1 .

    c.  ☒  A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of
        trust to Movant is attached as Exhibit 3 .

8.  Amount of Movant's claim with respect to the Property:

|   |   | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ | $ | $ 593,652.02 |
| b. | Accrued interest: | $ | $ | $ 196,292.90 |
| c. | Late charges | $ | $ | $ 0.00 |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ | $ | $ 11,687.52 |
| e. | Advances (property taxes, insurance): | $ | $ | $ 97,605.32 |
| f. | Less suspense account or partial balance paid: | $[          ] | $[          ] | $[0.00          ] |
| g. | TOTAL CLAIM as of (*date*):  10/09/2019 | $ | $ | $ 899,237.76 |

    h.  ☐ Loan is all due and payable because it matured on (*date*) _____

9.  Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action
    has occurred*):

    a.  Notice of default recorded on (*date*) 01/20/2009  or ☐ none recorded.

    b.  Notice of sale recorded on (*date*)  01/02/2018  or ☐ none recorded.

    c.  Foreclosure sale originally scheduled for (*date*)  01/25/2018  or ☐ none scheduled.

    d.  Foreclosure sale currently scheduled for (*date*) _____ or ☒ none scheduled.

    e.  Foreclosure sale already held on (*date*) _____ or ☒ none held.

    f.  Trustee's deed upon sale already recorded on (*date*) _____ or ☒ none recorded.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 7                        **F 4001-1.RFS.RP.MOTION**

10. Attached (*optional*) as Exhibit __4___ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☐ (*chapter 7 and 11 cases only*) Status of Movant's loan:

    a.  Amount of current monthly payment as of the date of this declaration: $_____ for the month of _____ 20___.

    b.  Number of payments that have come due and were not made: _____. Total amount: $_____

    c.  Future payments due by time of anticipated hearing date (*if applicable*):

        An additional payment of $_____ will come due on (*date*) _____, and on the _____ day of each month thereafter. If the payment is not received within _____ days of said due date, a late charge of $_____ will be charged to the loan.

    d.  The fair market value of the Property is $_____, established by:

        (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit _____.

        (2) ☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit _____.

        (3) ☐ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit _____.

        (4) ☐ Other (*specify*):

    e.  **Calculation of equity/equity cushion in Property:**

        Based upon ☐ a preliminary title report ☐ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | | $ | $ |
| 2nd deed of trust: | | $ | $ |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | | $ | $ |
| Taxes: | | $ | $ |
| Other: | | $ | $ |
| **TOTAL DEBT: $** | | | |

    f.  Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit _____ and consists of:

        (1) ☐ Preliminary title report.

        (2) ☐ Relevant portions of the Debtor's schedules.

        (3) ☐ Other (*specify*):

    g. ☐ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
        I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $_____ and is _____% of the fair market value of the Property.

    h. ☐ **11 U.S.C. § 362(d)(2)(A) - Equity:**
        By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $_____.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017            Page 8            **F 4001-1.RFS.RP.MOTION**

i.  ☐  Estimated costs of sale: $_____ (estimate based upon _____% of estimated gross sales price)

j.  ☐  The fair market value of the Property is declining because:


12. ☒  (*Chapter 12 and 13 cases only*) Status of Movant's loan and other bankruptcy case information:

a.  A 341(a) meeting of creditors is currently scheduled for (*or concluded on*) the following date: _09/18/2019_.
A plan confirmation hearing currently scheduled for (or concluded on) the following date:_11/12/2019_.
A plan was confirmed on the following date (*if applicable*): _____.

b.  Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| 1 | | $ 3,136.09 | $ 3,136.09 |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _4_.)

c.  Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d.  Postpetition advances or other charges due but unpaid:                                    $ 0.00
(*For details of type and amount, see Exhibit* 4___)

e.  Attorneys' fees and costs:                                                                    $ 0.00
(*For details of type and amount, see Exhibit* _____)

f.  Less suspense account or partial paid balance:                          $[ 0.00                    ]

TOTAL POSTPETITION DELINQUENCY:               $ 3,136.09

g.  Future payments due by time of anticipated hearing date (*if applicable*): _1_____.
An additional payment of $ 3,136.09_____ will come due on _11/01/2019_, and on
the _1st_ day of each month thereafter. If the payment is not received by the _16th_ day of the month, a late
charge of $_____ will be charged to the loan.

h.  Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how
applied (if applicable):

$_____   received on (*date*) _____
$_____   received on (*date*) _____
$_____   received on (*date*) _____

i.  ☐  The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent.
A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or
13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                   Page 9                          **F 4001-1.RFS.RP.MOTION**

13. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on (*date*) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on (*date*) _____, which is ☐ prepetition ☐ postpetition.

17. ☒ The bankruptcy case was filed in bad faith:

    a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

    b. ☒ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

    c. ☒ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

    d. ☐ Other (*specify*):

18. ☒ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

    b. ☒ Multiple bankruptcy cases affecting the Property include:

        1. Case name: Orna Shaposhnik _____

            Chapter: 13 ___    Case number: 1:18-bk-10943-MT _____

            Date dismissed: 10/22/2018 ___    Date discharged: _____    Date filed: 04/16/2018 ___

            Relief from stay regarding the Property ☒ was ☐ was not granted. True and correct copies of the Relief and Dismissal Orders are attached hereto as Exhibit 5, collectively.

        2. Case name: _____

            Chapter: _____    Case number: _____

            Date dismissed: _____    Date discharged: _____    Date filed: _____

            Relief from stay regarding the Property ☐ was ☐ was not granted.

        3. Case name: _____

            Chapter: _____    Case number: _____

            Date dismissed: _____    Date discharged: _____    Date filed: _____

            Relief from stay regarding the Property ☐ was ☐ was not granted.

    ☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

    ☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

   a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

   c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/8/19 | Daniel Maynes | _signature_ |
| --- | --- | --- |
| _Date_ | _Printed name_ | _Signature_ |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_June 2017_                                         Page 11                                         **F 4001-1.RFS.RP.MOTION**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

4665 MacArthur Court, Ste. 280, Newport Beach, CA 92660

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _10/09/2019_, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Elizabeth F. Rojas, Chapter 13 Trustee: cacb_ecf_sv@ch13wla.com
United States Trustee: ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _10/09/2019_, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Honorable Victoria S. Kaufman
21041 Burbank Boulevard, Suite 354 / Courtroom 301
Woodland Hills, CA 91367
COURT COPY

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| _10/09/2019_ | _Brandon Quon_ | _/s/ Brandon Quon_ |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017    Page 12    **F 4001-1.RFS.RP.MOTION**

# <u>ADDITIONAL SERVICE LIST</u>
## IN RE ORNA SHAPOSHNIK
## BK CASE NO.: 1:19-bk-12354-VK

**ADDITIONAL PARTIES SERVED BY U.S. MAIL:**

Orna Shaposhnik
18375 Ventura Blvd #599
Tarzana, CA 91356
DEBTOR PRO SE

Elizabeth (SV) F Rojas (TR)
Valley Executive Center
15260 Ventura Blvd., Suite 710
Sherman Oaks, CA 91403
CHAPTER 13 TRUSTEE

# EXHIBIT 1

39US
M39

# ADJUSTABLE RATE NOTE
### (12-MTA Index - Payment and Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. MY MONTHLY PAYMENT INCREASES WILL HAVE LIMITS WHICH COULD RESULT IN THE PRINCIPAL AMOUNT I MUST REPAY BEING LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN __110%__ OF THE ORIGINAL AMOUNT (OR $_____605,000.00__). MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THIS NOTE OR ANY RIDER TO THIS NOTE. A BALLOON PAYMENT MAY BE DUE AT MATURITY.

__JUNE 28, 2006_____        __GLENDALE_____, __CALIFORNIA_____
                                              CITY                              STATE

__23848 KILLION ST., WOODLAND HILLS, CA  91367_____
                                    PROPERTY ADDRESS

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ _____550,000.00_____ plus any amounts added in accordance with Section 4 (G) below, (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is __WASHINGTON MUTUAL BANK, FA_____. I will make all payments under this Note in form of cash, check or money order. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST
Interest will be charged on unpaid Principal until the full amount has been paid. Up until the first day of the calendar month that immediately precedes the first payment due date set forth in Section 3 of this Note, I will pay interest at a yearly rate of __6.682__%. Thereafter until the first Change Date (as defined in Section 4 of this Note) I will pay interest at a yearly rate of __1.100__%. The interest rate required by this Section 2 and Section 4 of this Note is the Rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS
### (A) Time and Place of Payments
I will pay Principal and interest by making payments every month. In this Note, "payments" refer to Principal and interest payments only, although other charges such as taxes, insurance and/or late charges may also be payable with the monthly payment.
I will make my monthly payments on __1ST__ day of each month beginning on __AUGUST, 2006_____, I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest before Principal. If, on __JULY 01, 2046_____, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".
I will make my monthly payments at __P.O. BOX 78148 PHOENIX, AZ 85062-8148_____
_____, or at a different place if required by the Note Holder.
### (B) Amount of My Initial Monthly Payments
Each of my monthly payments until the first Payment Change Date will be in the amount of U.S. $ __1,416.86__, unless adjusted at an earlier time under Section 4(H) of this Note.

**(C) Payment Changes**

My monthly payment will be recomputed, according to Sections 4(E)(F)(G)(H) and (I) of this Note, to reflect changes in the Principal balance and interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may further change on the ___1ST___ day of ___AUGUST , 2006_____, and on that day every month thereafter. Each such day is called a "Change Date".

**(B) The Index**

On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as of 15 days before each interest rate Change Date is called the "Current Index". If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding ___TWO AND 40/100_____ percentage points ___2.400___% ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available). This difference will be rounded to the next higher 1/8 of 1%.

**(D) Interest Rate Limit**

My interest rate will never be greater than ___NINE AND 70/100_____ percentage points ___9.700___% ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

**(E) Payment Change Dates**

Effective every year commencing ___AUGUST 01 , 2007_____, and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected principal balance I am expected to owe as of the Payment Change Date in full on the Maturity Date at the interest rate in effect 45 days prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date unless my payments are changed earlier under Section 4(H) of this Note.

**(F) Monthly Payment Limitations**

Unless Section 4(H) and 4(I) below apply, the amount of my new monthly payment, beginning with a Payment Change Date, will be limited to 7 1/2% more or less than the amount I have been paying. This payment cap applies only to the principal payment and does not apply to any escrow payments Lender may require under the Security Instrument.

(11-01)                         Page 2 of 6                         LNT60USB (VERSION 1.0)

**(G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated Amortization**

Since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the maturity date in substantially equal payments. For each month that the monthly payment is less than the interest portion, the Note Holder will subtract the monthly payment from the amount of the interest portion and will ad the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the excess towards a principal reduction of the Note.

**(H) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal can never exceed a maximum amount equal to ___110%___ of the principal amount original borrowed. In the event my unpaid Principal would otherwise exceed that ___110%___ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 1/2% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid Principal in full on the maturity date at my interest rate in effect the month prior to the payment due date in substantially equal payments.

**(I) Required Full Monthly Payment**

On the ___FIFTH___ anniversary of the due date of the first monthly payment, and on that same day every ___FIFTH___ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

**(J) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(K) Failure to Make Adjustments**

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial Prepayment of unpaid Principal.

**5.  BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will apply all of my prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the principal amount of the Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may have the effect of reducing the amount of my monthly payments, but only after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

. 39U2

**6.  LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then; (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**Miscellaneous Fees:** I understand that the Note Holder will also charge a return item charge in the event a payment that I make in connection with repayment of this loan is not honored by the financial institution on which it is drawn. The current fee is $__15.00__. Lender reserves the right to change the fee from time to time without notice except as may be required by law.

**7.  BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of __FIFTEEN__ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be __5.000__% of my overdue payment of Principal and interest. I will pay this late charge promptly but only once of each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 10 days after the date on which the notice is delivered or mailed to me (or, if the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation buys all or part of Lender's rights under the Security Instrument, in which case the notice will specify a date, not less than 30 days from the date the notice is given the Borrower).

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note, whether or not a lawsuit is brought, to the extent not prohibited by Applicable Law. Those expenses include, for example, reasonable attorneys' fees.

**8.  GIVING OF NOTICES**

Unless Applicable Law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

(11-01)                          Page 4 of 6                          LNT60USD (VERSION 1.0)

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

### Transfer of the Property or a Beneficial Interest in Borrower.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) the request to assume is made after one year following recordation of the Deed of Trust, (b) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (c) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument or other obligations related to the Note or other loan document is acceptable to Lender, (d) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (e) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption and Lender may increase the maximum rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written Assumption Agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12. MISCELLANEOUS PROVISIONS

In the event the Note Holder at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical or ministerial mistake, calculation error, computer error, printing error or similar error (collectively "Errors"), I agree, upon notice from the Note Holder, to reexecute any Loan Documents that are necessary to correct any such Errors and I also agree that I will not hold the Note Holder responsible for any damage to me which may result from any such Errors.

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Note Holder delivers to me an indemnification in my favor, signed by the Note Holder, then I will sign and deliver to the Note Holder a Loan Document identical in form and content which will have the effect of the original for all purposes.

(11-01)                          **Page 5 of 6**                          LNT60USE (VERSION 1.0)

WITNESS THE HAND (S) AND SEAL (S) OF THE UNDERSIGNED.

_____          _____
ORNA  SHAPOSHNIK

_____          _____

_____          _____

_____          _____

Pay to the order of

Without Recourse
WASHINGTON MUTUAL BANK, FA

By_____
CYNTHIA RILEY
VICE PRESIDENT

(11-01)                    **Page 6 of 6**                    LNT60USF (VERSION 1.0)

WP 1Y
M39

# Prepayment Fee Note Addendum

This Note Addendum is made this **28TH** day of **JUNE , 2006** and is incorporated into and shall be deemed to amend and supplement the Note made by the undersigned (the "Borrower") in favor of **WASHINGTON MUTUAL BANK , FA** (the "Lender") and dated as of even date herewith (the "Note").

This Note Addendum amends the provision in the Note regarding the Borrower's right to prepay as follows:

### BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal before they are due. Any payment of principal, before it is due, is known as a "prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment." A prepayment of the full amount of the unpaid principal is known as a "full prepayment."

If I make a full prepayment, I may be charged a fee as follows:

If Noteholder receives a prepayment on or before the first anniversary of the date of the Note, the Prepayment Fee shall be equal to **TWO** percent ( **2.000** %) of the original loan amount. Thereafter, prepayment of the Note shall be permitted without any Prepayment Fee.

The Prepayment Fee shall be payable upon a full prepayment, voluntary or involuntary, including but not limited to a prepayment resulting from Noteholder's permitted acceleration of the balance due on the Note. Notwithstanding the foregoing, nothing herein shall restrict my right to prepay at any time without penalty accrued but unpaid interest that has been added to principal.

When I make a full or partial prepayment I will notify the Noteholder in writing that I am doing so. Any partial prepayment of principal shall be applied to interest accrued on the amount prepaid and then to the principal balance of the Note which shall not reduce the amount of monthly installments of principal and interest (until reamortized as set forth in the Note at the next Payment Change Date) nor relieve me of the obligation to make the installments each and every month until the Note is paid in full. Partial prepayments shall have no effect upon the due dates or the amounts of my monthly payments unless the Noteholder agrees in writing to such changes.

**NOTICE TO THE BORROWER**

Do not sign this Note Addendum before you read it. This Note Addendum provides for the payment of a Prepayment Fee if you wish to repay the loan prior to the date provided for repayment in the Note.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Note Addendum.

_____     _____
ORNA SHAPOSHNIK

_____     _____

(08-01)  VERSION 1.0 (09/29/03)          Page 2 of 2                    LR136USB

# EXHIBIT 2

**This page is part of your document - DO NOT DISCARD**

**06 1510586**

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
**07/10/06 AT 08:00am**

**TITLE(S) :**



L E A D    S H E E T

FEE                                         D.T.T.

FEE $ 73 SS   23
DAF $ 2
C-20

CODE
20

CODE
19

CODE
9____

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.      Number of AIN's Shown

**THIS FORM IS NOT TO BE DUPLICATED**

*NATE*

Recording Requested By:
WASHINGTON MUTUAL BANK

06 1510586

Return To:
WASHINGTON MUTUAL BANK
2210 ENTERPRISE DRIVE
FLORENCE, SC 29501
DOC OPS M/S FSCE 440

Prepared By:
FERNADO VELAZQUEZ

ZCA1
M39

———————— [Space Above This Line For Recording Data] ————————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated  JUNE 28, 2006
together with all Riders to this document.
**(B) "Borrower"** is  ORNA SHAPOSHNIK, A MARRIED WOMAN AS HER SOLE AND SEPERATE PROPERTY

Borrower's address is  23848 KILLION ST., WOODLAND HILLS, CA 91367
. Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is  WASHINGTON MUTUAL BANK, FA

Lender is a  FEDERAL SAVINGS BANK
organized and existing under the laws of  THE UNITED STATES OF AMERICA

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3005 1/01

(VMP)–6(CA) (0207)

Page 1 of 15          Initials: *O.S.*
VMP MORTGAGE FORMS - (800)521-7291

07/18/06

*3*

Lender's address is 2273 N. GREEN VALLEY PARKWAY, SUITE 14, HENDERSON, NV 89014
Lender is the beneficiary under this Security Instrument.

**(D) "Trustee"** is CALIFORNIA RECONVEYANCE COMPANY, A CALIFORNIA CORP

**(E) "Note"** means the promissory note signed by Borrower and dated JUNE 28, 2006
The Note states that Borrower owes Lender FIVE HUNDRED FIFTY THOUSAND AND 00/100                                                                                    Dollars
(U.S. $    550,000.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JULY 01, 2046
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower (check box as applicable):

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] Other(s) [specify] |
| [ ] 1-4 Family Rider | [ ] Biweekly Payment Rider | |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and

06/19/06

-6(CA) (0207)                    Page 2 of 15              Initials: /O J.                    Form 3005 1/01

**06 1510586**

restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the  COUNTY                                of  LOS ANGELES                                  :

[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

THE LEGAL DESCRIPTION IS ATTACHED HERETO AS A SEPARATE EXHIBIT AND IS MADE A PART HEREOF.

### SEE EXHIBIT "A" ATTACHED

Parcel ID Number:  2047-008-002                    which currently has the address of
23848 KILLION ST.                                  [Street]
WOODLAND HILLS                       [City], California 91367   [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the

-6(CA) (0207)                Page 3 of 15      Initials B.S.        Form 3005 1/01

## 06 1510586

Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the

*Ⓜ* -6(CA) (0207)    Page 4 of 15    Initials: /O.S.    Form 3005 1/01

06 1510586

term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

07/10/06

-6(CA) (0207)    Page 5 of 15    Initials _O.S._    Form 3005 1/01

06 1510586

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

07/10/06

-6(CA) (0207)    Page 6 of 15    Initials: *O.S.*    Form 3005 1/01

**06 1510586**

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

<table>
<tr><td>-6(CA) (0207)</td><td>Page 7 of 15</td><td>Initials <i>DS.</i></td><td>Form 3005 1/01</td></tr>
</table>

06 1510586

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

@~6(CA) (0207)            Page 8 of 15            Initials: _L.D.S_            **Form 3005 1/01**

## 06 1510586

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or

-6(CA) (0207)    Page 9 of 15    Initials: O.S.    Form 3005 1/01

06 1510586

loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and *shall be paid to* Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to

make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred

in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual

Initials: _____

-6(CA) (0207)                    Page 12 of 15                    Form 3005 1/01

knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee.

‑6(CA) (0207)      Page 13 of 15      Initials: _T.S._      Form 3005 1/01

07/19/06

**06 1510586**

**ZCA2**

Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and
duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution
of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum
amount permitted by Applicable Law for furnishing the statement of obligation as provided by
Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained
in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                                              -Borrower
                                   ORNA SHAPOSHNIK

_____          _____ (Seal)
                                                              -Borrower

_____ (Seal)  _____ (Seal)
                  -Borrower                                   -Borrower

_____ (Seal)  _____ (Seal)
                  -Borrower                                   -Borrower

_____ (Seal)  _____ (Seal)
                  -Borrower                                   -Borrower

07/10/06

⑩ᴹ–6(CA) (0207)                    Page 14 of 15                    Form 3005 1/01

**06 1510586**

State of California
County of  LOS ANGELES                                    } ss.

On    June 29, 2006            before me,   NAVA Abramoff, Notary Public
                                                          personally appeared

ORNA SHAPOSHNIK

personally known to me (or proved to me on the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s)
acted, executed the instrument.
WITNESS my hand and official seal.

_____ Nava Abramoff _____ (Seal)



NAVA ABRAMOFF
Commission # 1405669
Notary Public - California
Los Angeles County
My Comm. Expires Mar 15, 2007

-6(CA) (0207)                        Page 15 of 15        Initials: D.S.        Form 3005 1/01

06 1510586

EXHIBIT "A"
(LEGAL DESCRIPTION)

LOT 78 OF TRACT NO. 25233, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK 680 PAGES 78 TO 81 INCLUSIVE OF MAPS, IN THE
OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM ALL OF THE OIL, GAS AND HYDROCARBON SUBSTANCES AND MINERALS, AND
RIGHTS THERETO, BENEATH A DEPTH OF 500 FEET BELOW THE PRESENT SURFACE OF SAID LAND,
BUT WITH NO RIGHT OF SURFACE ENTRY, AS RESERVED IN DEED RECORDED MARCH 5, 1959, IN
BOOK D-388 PAGE 443, OFFICIAL RECORDS, AND AS GRANTED IN DEED RECORDED AUGUST 3, 1961,
IN BOOK M-823 PAGE 10, OFFICIAL RECORDS.

06 1510586

LGLD

LEGAL DESCRIPTION

THE LEGAL DESCRIPTION IS ATTACHED HERETO AS A SEPARATE
EXHIBIT AND IS MADE A PART HEREOF.

07/10/06

06 1510586

Branch :F7L User :TZ01 Comment: Station Id :OX9U

Case 1:19-bk-12354-VK Doc 15 Filed 10/09/19 Entered 10/09/19 14:34:14 Desc
Main Document Page 42 of 111

RMTA
M39

# ADJUSTABLE RATE RIDER
### (12-MTA Index - Payment and Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this ___28TH___ day of
__JUNE, 2006_____, and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same
date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the
"Note") to ___WASHINGTON MUTUAL BANK, FA_____ (the "Lender") of the
same date and covering the property described in the Security Instrument and located at:

__23848 KILLION ST., WOODLAND HILLS, CA 91367_____
(PROPERTY ADDRESS)

> THIS RIDER CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY
> INTEREST RATE AND MY MONTHLY PAYMENT. MY MONTHLY PAYMENT
> INCREASES WILL HAVE LIMITS WHICH COULD RESULT IN THE PRINCIPAL
> AMOUNT I MUST REPAY BEING LARGER THAN THE AMOUNT I ORIGINALLY
> BORROWED, BUT NOT MORE THAN _110%___ OF THE ORIGINAL AMOUNT (OR
> $_____605,000.00_____). MY INTEREST RATE CAN NEVER EXCEED THE
> LIMIT STATED IN THE NOTE AND RIDER. A BALLOON PAYMENT MAY BE DUE AT
> MATURITY.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
Interest will be charged on unpaid Principal until the full amount of Principal has been paid. Up
until the first day of the calendar month that immediately precedes the first payment due date set
forth in Section 3 of the Note, I will pay interest at a yearly rate of ___6.682_% . Thereafter until the
first Change Date (as defined in Section 4 of the Note) I will pay interest at a yearly rate of
_1.100___%. The interest rate I will pay will thereafter change in accordance with Section 4 of the
Note.

32843 (11-01)  **Page 1 of 6**  LRD02USA (VERSION 1.0)

06/10/06

06 1510586



Section 4 of the Note provides for changes in the interest rate and monthly payment as follows:

**4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the <u>1ST</u> day of <u>AUGUST, 2006</u>, and on that day every month thereafter. Each such day is called a "Change Date".

**(B) The Index**

On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as of the date 15 days before each Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Interest Rate Change**

Before each Change Date, the Note Holder will calculate my new interest rate by adding <u>TWO AND 40/100</u> percentage points <u>2.400</u> % ("Margin") to Current Index. The Note Holder will then round the result of this addition to the nearest one thousandth of one percentage point (0.001%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available). The difference will be rounded to the next higher 1/8 of 1%.

**(D) Interest Rate Limit**

My interest rate will never be greater than <u>9.700</u> % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

**(E) Payment Change Dates**

Effective every year commencing <u>AUGUST 01, 2007</u>, and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the

32843 (11-01)               **Page 2 of 6**              LRD02USB (VERSION 1.0)

07/10/06

06 1510586

amount of the monthly payment that would be sufficient to repay the projected Principal balance I am expected to owe as of the Payment Change Date in full on the maturity date at the interest rate in effect 45 days prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date unless my payments are changed earlier under Section 4(H) of the Note.

**(F) Monthly Payment Limitations**

Unless Section 4(H) and 4(I) below apply, the amount of my new monthly payment, beginning with a Payment Change Date, will be limited to 7 1/2% more or less than the amount I have been paying. This payment cap applies only to the Principal Payment and does not apply to any escrow payments Lender may require under the Security Instrument.

**(G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated Amortization**

Since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the maturity date in substantially equal payments. For each month that the monthly payment is less than the interest portion, the Note Holder will subtract the monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the excess towards a Principal reduction of the Note.

**(H) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed a maximum amount equal to __110%____ of the principal amount original borrowed. In the event my unpaid Principal would otherwise exceed that _110%____ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 1/2% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid principal in full on the maturity date at my interest rate in effect the month prior to the payment due date in substantially equal payments.

**(I) Required Full Monthly Payment**

On the __F I F T H___ anniversary of the due date of the first monthly payment, and on that same day every __F I F T H_____ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

**(J) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

32843 (11-01)                    **Page 3 of 6**                    LRD02USC (VERSION 1.0)

06 1510586

RMT 2

**(K) Failure to Make Adjustments**

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid "Principal."

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser. If all or any part of the Property or any interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Agreement or other obligations related to the Note or other loan document is acceptable to Lender, (c) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (d) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption, and Lender may increase the maximum interest rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written assumption agreement with transferee and formally releases Borrower.

32843 (11-01)                          **Page 4 of 6**                          LRD02USD (VERSION 1.0)

**06 1510586**

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

32843 (11-01)                       Page 5 of 6                       LRD02USE (VERSION 1.0)

07/10/06

06 1510586

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider. Borrower agrees to execute any document necessary to reform this Agreement to accurately reflect the terms of the Agreement between Borrower and Beneficiary or if the original Note, Trust Deed or other document is lost, mutilated or destroyed.

_____          _____
ORNA SHAPOSHNIK

_____          _____

_____          _____

_____          _____

32843 (11-01)                    **Page 6 of 6**                    LRD02USF (VERSION 1.0)

06 1510586

# EXHIBIT 3



**This page is part of your document - DO NOT DISCARD**



# 20090068505



Pages:
0003

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**01/20/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 14.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 14.00 |

## TITLE(S) : ASSIGNMENT TRUST DEED



LEADSHEET



200901200150004



001182360

SEQ:
04

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

RECORDING REQUESTED BY

CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE COMPANY
9200 Oakdale Avenue
Mail Stop: N 11 06 12
Chatsworth, CA  91311



01/20/2009

*20090068505*

2

---

Space above this line for recorder's use only

Trustee Sale No. █████    Loan No. █████    Title Order No. █████████

## IMPORTANT NOTICE

NOTE: After having been recorded, this Assignment should be kept with the
Note and the Deed of Trust hereby assigned.

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to LaSalle Bank NA
as trustee for WaMu Mortgage Pass-Through Certificates Series 2006-AR11 Trust all beneficial
interest under that certain Deed of Trust dated 06/28/2006, executed by ORNA SHAPOSHNIK, A
MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY, as Trustor; to CALIFORNIA
RECONVEYANCE COMPANY as Trustee; and Recorded 07/10/2006, Book , Page , Instrument 06-
1510586 of official records in the Office of the County Recorder of LOS ANGELES County,
California. **APN:** 2047-008-002 **Situs:** 23848  KILLION ST, , WOODLAND HILLS, CA 91367

TOGETHER with the note or notes therein described and secured thereby, the money due and to
become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust
including the right to have reconveyed, in whole or in part, the real property described therein.

DATE:  January 16, 2009

JPMorgan Chase Bank, National Association, successor in interest to WASHINGTON MUTUAL
BANK,  FA

Karime Arias, Officer

FA_MERGE.DOC

1

4B

Trustee Sale No. [blank]    Loan No. [blank]    Title Order No. [blank]

*3*

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

On January 16, 2009 before me, CARLA DODD, "Notary Public", personally appeared Karime Arias, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Carla Dodd_ (Seal)

CARLA DODD
Commission # 1672174
Notary Public - California
Los Angeles County
My Comm. Expires Jun 3, 2010

FA_MERGE.DOC                                    2

Return Address:

Washington Mutual Bank
Office of the Corporate Secretary
1301 2nd Ave., WMC3501
Seattle, WA  98101



**200810030000790**
COOK        AFF        44.00
PAGE-001 OF 003
10/03/2008 13:11
KING COUNTY, WA

Please print or type information **WASHINGTON STATE RECORDER'S Cover Sheet** (RCW 65.04)

**Document Title(s)** (or transactions contained therein): (all areas applicable to your document **must** be filled in)
Affidavit of the Federal Deposit
1. Insurance Corporation _____ 2. _____

3. _____ 4. _____

**Reference Number(s) of Documents assigned or released:**

Additional reference #'s on page _____ of document

**Grantor(s)** Exactly as name(s) appear on document
Washington Mutual Bank, formerly known
1. as Washington Mutual Bank, FA
Federal Deposit Insurance
2. Corporation _____, _____

Additional names on page _____ of document.

**Grantee(s)** Exactly as name(s) appear on document

1. JPMorgan Chase Bank, National Association _____

2. _____, _____

Additional names on page _____ of document.

**Legal description** (abbreviated: i.e. lot, block, plat or section, township, range)
_____
_____
_____

Additional legal is on page _____ of document.

**Assessor's Property Tax Parcel/Account Number**        ☐ Assessor Tax # not yet
assigned

The Auditor/Recorder will rely on the information provided on this form.  The staff will not read the document
to verify the accuracy or completeness of the indexing information provided herein.

"I am signing below and paying an additional $50 recording fee (as provided in RCW 36.18.010 and
referred to as an emergency nonstandard document), because this document does not meet margin and
formatting requirements.  Furthermore, I hereby understand that the recording process may cover up or
otherwise obscure some part of the text of the original document as a result of this request."

_____   Signature of Requesting Party

Note to submitter: Do not sign above nor pay additional $50 fee if the document meets margin/formatting requirements

Recording Requested By and
When Recorded Mail to:

Washington Mutual Bank
Office of the Corporate Secretary
1301 2nd Ave., WMC3501
Seattle, WA 98101

---

**Space Above for Recording Information**

## AFFIDAVIT OF THE
## FEDERAL DEPOSIT INSURANCE CORPORATION

I, Robert C. Schoppe, having been first duly sworn, hereby make this Affidavit and say
that:

1.      I am an authorized representative of the Federal Deposit Insurance Corporation,
an agency of the United States government (the "FDIC").

2.      On September 25, 2008, Washington Mutual Bank, formerly known as
Washington Mutual Bank, FA ("Washington Mutual"), was closed by the Office of Thrift
Supervision and the FDIC was named receiver.

3.      As authorized by Section 11(d)(2)(G)(i)(II) of the Federal Deposit Insurance Act,
12 U.S.C § 1821(d)(2)(G)(i)(II), the FDIC, as receiver of Washington Mutual, may
transfer any asset or liability of Washington Mutual without any approval, assignment, or
consent with respect to such transfer.

4.      Pursuant to the terms and conditions of a Purchase and Assumption Agreement
between the FDIC as receiver of Washington Mutual and JPMorgan Chase Bank,
National Association ("JPMorgan Chase"), dated September 25, 2008 (the "Purchase and
Assumption Agreement'), JPMorgan Chase acquired certain of the assets, including all
loans and all loan commitments, of Washington Mutual.

5.      As a result, on September 25, 2008, JPMorgan Chase became the owner of the
loans and loan commitments of Washington Mutual by operation of law.

Executed this _2ND_ day of October, 2008 in Seattle, King County, Washington.

By: _____

Print Name: Robert C. Schoppe
Title: Receiver In Charge for FDIC as
Receiver of Washington Mutual Bank

NOTARY'S ACKNOWLEDGMENT

STATE OF WASHINGTON    )
                            ) SS.
COUNTY OF KING          )

     I certify that I know or have satisfactory evidence that Robert C. Schoppe is the person who appeared before me, and said person acknowledged that he signed this instrument, on oath stated that he was authorized to execute the instrument and acknowledged it as the Receiver In Charge of the Federal Deposit Insurance Corporation, as Receiver of Washington Mutual Bank to be the free and voluntary act of such party for the uses and purposes mentioned therein.

     Dated this 2nd day of October, 2008.

Notary Public in and for the State of
Washington, residing in Redmond
My commission expires: 11/7/10

Case 1:19-bk-13454-MK   Doc 68   Filed 09/26/19   Entered 09/26/19 15:30:08   Desc
Exhibit   Page 55 of 111

STATE OF WASHINGTON }
County of King

The Director of Records & Licensing, King County, State of
Washington and exofficio Recorder of Deeds and other
instruments, do hereby certify the foregoing copy has been
compared with the original instrument as the same appears
on file and of record in the office and that the same is a true
and perfect transcript of said original and of the whole thereof.
Witness my hand and official seal this _____ day
of _____ 20____

OCT 0 3 2006

Director of Records & Licensing

By: _____

E. Harper

King County

53

## ASSISTANT SECRETARY'S CERTIFICATE

## OF

## BANK OF AMERICA, NATIONAL ASSOCIATION

The undersigned, Nathan A. Barth, an Assistant Secretary of Bank of America, National Association (the "Association"), a national banking association organized and existing under the laws of the United States of America and having its principal place of business in the City of Charlotte, County of Mecklenburg, State of North Carolina, does hereby certify that:

1. Effective April 30, 1999, **LaSalle Bank National Association,** Chicago, Illinois, Charter Number 14450, merged with and into **LaSalle National Bank,** Chicago, Illinois, Charter Number 14362, under the charter of the latter and title of the former.

2. Effective October 17, 2008, **LaSalle Bank National Association,** Chicago, Illinois, Charter Number 14362 merged into and under the charter and title of **Bank of America, National Association,** Charlotte, North Carolina, Charter Number 13044.

IN WITNESS WHEREOF, I have hereupon set my hand and affixed the seal of said Association the 21st day of October, 2008.

(SEAL)

Nathan A. Barth
Assistant Secretary

## ASSIGNMENT AND ASSUMPTION AGREEMENT

ASSIGNMENT AND ASSUMPTION AGREEMENT, dated as of December 30, 2010 (this "Agreement"), by and among the following parties:

(i)    Bank of America, N.A., a national banking association ("BANA"), acting on its own behalf and through its branch office in London,

(ii)   Bank of America National Trust Delaware, a national banking association ("BA National Trust"),

(iii)  U.S. Bank National Association, a national banking association ("USB"),

(iv)   Elavon Financial Services Limited, a private limited company incorporated under Irish law ("Elavon"), and

(v)    U.S. Bank Trust National Association, a national banking association ("USB Trust").

BANA and BA National Trust are collectively referred to herein as "Assignors." USB, Elavon and USB Trust are collectively referred to herein as "Assignees."

### RECITALS

The Assignors and the Assignees have entered into that certain Purchase Agreement, dated as of November 11, 2010, (the "Purchase Agreement") providing for, among other things, the sale, assignment, conveyance, transfer and delivery by Assignors to Assignees, and the acquisition by Assignees from Assignors, all of the Rights of the Assignors and the assumption by Assignees from Assignors of the Assumed Liabilities. Capitalized terms used herein and not otherwise defined herein shall have the meanings given to them in the Purchase Agreement.

In accordance with Section 2.3 of the Purchase Agreement, the Assignees have agreed to assume and thereafter pay, perform or discharge, as the case may be, except to the extent being contested in good faith, the Assumed Liabilities by which the Assignors are obligated.

### AGREEMENT

**NOW, THEREFORE**, for good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged, and pursuant to the Purchase Agreement, Assignors and Assignees, intending to be legally bound by this Agreement, hereby agree as follows:

1. **Assignment by Assignors**.

(a)    Upon the terms and subject to the conditions of the Purchase Agreement and the Acknowledgment of Succeeded Relationships entered into by the Assignors, the Assignees, and Bank of America (GSS) Limited on the date first above written (the "Acknowledgment") and subject to Section 6 hereof, BANA (for the avoidance of doubt, not acting through its branch office in London for these purposes), hereby assigns and transfers to USB, all of the Rights of BANA relating only to the Relationships administered by the

Business from the United States, free and clear of all liens.

(b)     Upon the terms and subject to the conditions of the Purchase Agreement and the Acknowledgment and subject to Section 6 hereof, BANA acting through its branch office in London hereby assigns and transfers to Elavon acting through its branch office in London (i) all of the Rights of BANA acting through its branch office in London relating only to the Relationships administered by the Business from the United Kingdom, free and clear of all Liens and (ii) the part of the Business relating thereto as a going concern.

(c)     Upon the terms and subject to the conditions of the Purchase Agreement and the Acknowledgment and subject to Section 6 hereof, BA National Trust, hereby assigns and transfers to USB Trust, all of the Rights of BA National Trust, free and clear of all Liens.

(d)     Upon the terms and subject to the conditions of the Purchase Agreement, the Assignors hereby assign and transfer to the Assignees, effective at the Conversion Time, the Software and Intellectual Property owned by Assignors that is set forth on Annex 7 of the Purchase Agreement.

(e)     Upon the terms and subject to the conditions of the Purchase Agreement and the Acknowledgment, the Assignors hereby assign and transfer to the Assignees the Assumed Liabilities, and the Assignors shall have no further obligations or liabilities with respect to the Assumed Liabilities from and after the date hereof, except as described in the Transaction Agreements.

## 2. **Assumption by the Assignees**.

(a)     Upon the terms and subject to the conditions of the Purchase Agreement and the Acknowledgment and subject to Section 6 hereof, USB hereby accepts the assignment and transfer of, and assumes from BANA (for the avoidance of doubt, not acting through its branch office in London for these purposes), all of the Rights of the Assignors relating only to the Relationships administered by the Business from the United States, free and clear of all liens.

(b)     Upon the terms and subject to the conditions of the Purchase Agreement and the Acknowledgment and subject to Section 6 hereof, Elavon acting through its branch office in London hereby accepts the assignment and transfer of, and assumes from BANA acting through its branch office in London, (i) all of the Rights of BANA acting through its branch office in London relating only to the Relationships administered by the Business from the United Kingdom, free and clear of all Liens and (ii) the part of the Business relating thereto as a going concern.

(c)     Upon the terms and subject to the conditions of the Purchase Agreement and the Acknowledgment and subject to Section 6 hereof, USB Trust hereby accepts the assignment and transfer of, and assumes from BA National Trust, all of the Rights of BA National Trust, free and clear of all Liens.

(d)     Upon the terms and subject to the conditions of the Purchase Agreement, the Assignees hereby accept the assignment and transfer from the Assignors, and assume all of, effective at the Conversion Time, the Software and Intellectual Property owned by Assignors that is set forth on Annex 7 of the Purchase Agreement.

2

(e)     Upon the terms and subject to the conditions of the Purchase Agreement and the Acknowledgment, the Assignees hereby accept the assignment and transfer from the Assignors, and assume all of, the Assumed Liabilities. The Assignees will pay, perform and/or discharge, as applicable, if and when due, such Assumed Liabilities. Anything to the contrary notwithstanding, the Assignees are specifically not assuming any of the Excluded Liabilities.

3. **Terms of the Purchase Agreement**. Nothing contained in this Agreement shall be deemed to modify, limit, extend or amend any of the rights, obligations or representations and warranties of any party hereto under or in the Purchase Agreement and no additional representations and warranties, express, implied or otherwise (including, without limitation, warranties or merchantability and fitness for use or a particular purpose), shall be deemed to be created by this Agreement. In the event of any conflict or inconsistency between the terms of this Agreement and the Purchase Agreement, the terms of the Purchase Agreement shall control.

4. **Successors and Assigns**. The provisions of this Agreement will be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns; provided that no party may assign, delegate or otherwise transfer any of its rights or obligations under this Agreement without the prior written consent of each other party hereto.  Any purported assignment in contravention of this provision shall be null and void.

5. **Amendments and Waivers**.

(f)     Any provision of this Agreement may be amended or waived if the amendment or waiver is written and signed, in the case of an amendment, by each party to this Agreement, or in the case of a waiver, by the party against whom the waiver is to be effective.

(g)     No failure or delay by any party in exercising any right, power or privilege under this Agreement will operate as a waiver nor will any single or partial exercise preclude any other or further exercise.

6. **Assignment of Certain Contracts**.  Nothing contained in this Agreement shall be construed as an attempt to agree to assign any contract, lease or other agreement as to which the purported assignment hereunder is finally determined by a court of competent jurisdiction not to have been effective.

7. **Counterparts; Effectiveness**. This Agreement may be executed and delivered in any number of counterparts, each of which will be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument.   This Agreement will become effective when each party has received a counterpart hereof signed by the other party.

8. **Governing Law**. This Agreement will be governed by and construed in accordance with the law of the State of New York applicable to contracts made and to be performed entirely within that State.

9. **No Third Party Beneficiaries**. Nothing in this Agreement, whether express or implied, is intended to confer any rights or remedies under or by reason of this Agreement on any other person or entity other than the parties hereto and their respective

3

successors and permitted assigns, nor is anything in this Agreement intended to relieve or discharge the obligation or liability of any third persons to any party, nor shall any provision give any third parties any right of subrogation or action over or against any party. This Agreement is not intended to and does not create any third party beneficiary rights whatsoever. Anything to the contrary notwithstanding, however, the Assignees shall be liable to the third parties to whom the payment, performance and/or discharge, as applicable, of the Assumed Liabilities which have been assumed by them hereunder are owed under the contracts, leases and other agreements pursuant to which those Assumed Liabilities were created or may arise.

[SIGNATURE PAGE FOLLOWS]

4

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Assignment and Assumption Agreement as of the date first above written.

ASSIGNORS:

BANK OF AMERICA, N.A.

By: _____
Name: __JAMES BASINGER__
Title: ____SVP____

BANK OF AMERICA NATIONAL TRUST DELAWARE

By: _____
Name: _____
Title: _____

ASSIGNEES:

U.S. BANK NATIONAL ASSOCIATION

By: _____
Name: _____
Title: _____

ELAVON FINANCIAL SERVICES LIMITED

By: _____
Name: _____
Title: _____

U.S. BANK TRUST NATIONAL ASSOCIATION

By: _____
Name: _____
Title: _____

*[Signature Page to Assignment and Assumption Agreement]*

**IN WITNESS WHEREOF,** the parties hereto have executed and delivered this Assignment and Assumption Agreement as of the date first above written.

**ASSIGNORS:**

**BANK OF AMERICA, N.A.**

By: _____
Name: _____
Title: _____

**BANK OF AMERICA NATIONAL TRUST DELAWARE**

By: _____
Name: _Sally A. Hawk_____
Title: _Global Securities Solutions Exec_

**ASSIGNEES:**

**U.S. BANK NATIONAL ASSOCIATION**

By: _____
Name: _____
Title: _____

**ELAVON FINANCIAL SERVICES LIMITED**

By: _____
Name: _____
Title: _____

**U.S. BANK TRUST NATIONAL ASSOCIATION**

By: _____
Name: _____
Title: _____

*[Signature Page to Assignment and Assumption Agreement]*

**IN WITNESS WHEREOF,** the parties hereto have executed and delivered this Assignment and Assumption Agreement as of the date first above written.


**ASSIGNORS:**

**BANK OF AMERICA, N.A.**


By: _____
Name: _____
Title: _____

**BANK OF AMERICA NATIONAL TRUST DELAWARE**


By: _____
Name: _____
Title: _____


**ASSIGNEES:**

**U.S. BANK NATIONAL ASSOCIATION**


By: _____
Name: Bryan R. Calder
Title: Executive Vice President

**ELAVON FINANCIAL SERVICES LIMITED**


By: _____
Name: _____
Title: _____

**U.S. BANK TRUST NATIONAL ASSOCIATION**


By: _____
Name: Bryan R. Calder
Title: Executive Vice President

*[Signature Page to Assignment and Assumption Agreement]*

61

**IN WITNESS WHEREOF,** the parties hereto have executed and delivered this Assignment and Assumption Agreement as of the date first above written.

ASSIGNORS:

BANK OF AMERICA, N.A.

By: _____
Name: _____
Title: _____

BANK OF AMERICA NATIONAL TRUST
DELAWARE

By: _____
Name: _____
Title: _____

ASSIGNEES:

U.S. BANK NATIONAL ASSOCIATION

By: _____
Name: _____
Title: _____

ELAVON FINANCIAL SERVICES LIMITED

By: _____
Name: Declan Lynch
Title: Director

U.S. BANK TRUST NATIONAL ASSOCIATION

By: _____
Name: _____
Title: _____

*[Signature Page to Assignment and Assumption Agreement]*



Doc ID: 003020020019 Type: LAN
BK 4567 PG 169-187

*Records return to:*
**Shipman & Goodwin** LLP
Counselors at Law
One Constitution Plaza
Hartford, Connecticut 06103-1919 *CxP*

COPY

## AFFIDAVIT

The undersigned, Charles F. Pedersen, a Vice President of U.S. Bank National Association ("USB"), and James Basinger, a Senior Vice President of Bank of America, N.A. ("BoA"; BoA and USB each a "Bank"), being duly sworn, each deposes and says that:

1.     I am authorized to execute this Affidavit on behalf of my Bank, and am doing so solely in my capacity as an authorized officer of such Bank.

2.     I have personal knowledge of the matters described in this Affidavit.

3.     Pursuant to a Purchase Agreement by and among Bank of America, N.A., Bank of America (GSS) Limited, Bank of America National Trust Delaware, U.S. Bank National Association, Elavon Financial Services Limited and U.S. Bank Trust National Association, USB acquired BoA's securitization trust administration business (the "Acquired Assets").

4.     The Acquired Assets included all of the mortgage-backed transactions described on Schedule A attached hereto (the "Mortgage-Backed Transactions").

5.     Accordingly, USB has succeeded BoA as trustee in the Mortgage-Backed Transactions.

I CERTIFY THIS TO BE A TRUE COPY OF THE
DOCUMENT RECORDED IN THE WEST HARTFORD
LAND RECORDS, DATED AT WEST HARTFORD, CT
THIS *10th* DAY OF *March 2011*
*Vol 4567 PG 169*
*Esther F. Laront*
Assistant Town Clerk

63

Witnesses:

Jocelyn Jerin

Sonia Thampi

Name: Charles F. Pedersen
Title:  Vice President
U.S. BANK NATIONAL ASSOCIATION

SUBSCRIBED AND SWORN TO before me this 11th day of February, 2011

Notary Public: Jeanne M. Escobedo
My Commission Expires: 1-31-2015

JEANNE M. ESCOBEDO
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2015

Witnesses:

_Curt Kendall_
Curt Kendall

_Harrison Thurston_
Harrison Thurston

Name: James Basinger
Title: Senior Vice President
BANK OF AMERICA, N.A.

STATE OF NORTH CAROLINA
COUNTY OF MECKLENBURG

I, James E. Dwiggins, a Notary Public for said State and County do hereby certify that James Basinger, Curt Kendall and Harrison Thurston, all personally known to me, did appear before me this date and executed the foregoing instrument.

SUBSCRIBED AND SWORN TO before me this 11th day of February, 2011

Notary Public: James E. Dwiggins
My Commission Expires: May 02, 2015

JAMES E. DWIGGINS
NOTARY PUBLIC
MECKLENBURG CO. NC

SCHEDULE A

| Long Name of Transaction (Series) |
|---|
| ACGS 2004, LLC Series 2004-1 Secured Notes |
| American Tower Trust I Commercial Mortgage Pass-Through Certificates, Series 2007-1 |
| Amresco Commercial Mortgage Funding I Corporation Mortgage Pass-Through Certificates Series1997-C1 |
| Anthracite CDO II Depositor, LLC Commercial Mortgage Pass-Through Certificates Series 2002-WGL-1 |
| Asset Securitization Corporation Commercial Mortgage Pass-Through Certificates Series 1995-D1 |
| Asset Securitization Corporation Commercial Mortgage Pass-Through Certificates Series 1995-MD IV |
| Asset Securitization Corporation Commercial Mortgage Pass-Through Certificates Series 1996-D2 |
| Asset Securitization Corporation Commercial Mortgage Pass-Through Certificates Series 1996-D3 |
| Asset Securitization Corporation Commercial Mortgage Pass-Through Certificates Series 1996-MD VI |
| Asset Securitization Corporation Commercial Mortgage Pass-Through Certificates Series 1997-D4 |
| Banc One/FCCC Commercial Mortgage Loan Trust Commercial Mortgage Pass-Through Certificates Series 2000-C1 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 1998-C1 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 1999-C1 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2002-PBW1 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2003-PWR2 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2003-TOP10 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2004-PWR3 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2004-PWR4 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2004-PWR5 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2004-PWR6 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2005-PWR10 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2005-PWR7 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2005-PWR8 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2005-PWR9 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2006-PWR11 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2006-PWR12 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2006-PWR13 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2006-PWR14 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2007-PWR15 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2007-PWR16 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2007-PWR17 |
| Bear Stearns Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2007-PWR18 |
| Bedford Capital Trust 2001-1 |
| Calwest Industrial Trust Commercial Mortgage Pass-Through Certificates, Series 2002-CALW |
| Capco America Securitization Corporation Commercial Mortgage Pass-Through Certificates Series 1998-D7 |
| Capital Lease Funding Securitization L.P. Corporate Credit-Backed Pass-Through Certificates Series 1997-CTL1 |
| CARS CNI-2 L.P Triple Net Lease Mortgage Notes, Series 2003-1 |
| CD 2005-CD1 Commercial Mortgage Trust Commercial Mortgage Pass-Through Certificates Series 2005-CD1 |
| CD 2006-CD2 Commercial Mortgage Pass-Through Certificates |
| CD 2006-CD3 Commercial Mortgage Pass-Through Certificates |
| CD 2007-CD4 Commercial Mortgage Trust Commercial Mortgage Pass-Through Certificates Series CD 2007-CD4 |
| CD 2007-CD5 Commercial Mortgage Pass-Through Certificates |
| CDC Commercial Mortgage Trust 2002-FX1 Commercial Mortgage Pass-Through Certificates, Series 2002-FX1 |
| Chandler Fashion Center A/B Note |

| |
|---|
| Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 1999-2 |
| Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2000-2 |
| Chrysler Building Mortgage Trust Commercial Mortgage Pass-Through Certificates Series 2001-C3A |
| Citigroup Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2004-C1 |
| Citigroup Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2005-C3 |
| Citigroup Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 2005-EMG |
| Citigroup Commercial Mortgage Trust 2006-C4 Commercial Mortgage Pass-Through Certificates Series 2006-C4 |
| Citigroup Commercial Mortgage Trust 2006-C5 Commercial Mortgage Pass-Through Certificates Series 2006-C5 |
| Citigroup Commercial Mortgage Trust 2006-FL2 Commercial Mortgage Pass-Through Certificates, Series 2006-FL2 |
| Citigroup Commercial Mortgage Trust 2007-C6 Commercial Mortgage Pass-Through Certificates Series 2007-C6 |
| Coastal Securities SBA RRIO Trust |
| COBALT CMBS Commercial Mortgage Trust 2006-C1, Commercial Mortgage Pass-Through Certificates, Series 2006-C1 |
| COBALT CMBS Commercial Mortgage Trust 2007-C2, Commercial Mortgage Pass-Through Certificates, Series 2007-C2 |
| COBALT CMBS Commercial Mortgage Trust 2007-C3, Commercial Mortgage Pass-Through Certificates, Series 2007-C3 |
| COMM 1999-1 Commercial Mortgage Pass-Through Certificates |
| COMM 2002-WFA Commercial Mortgage Pass-Through Certificates |
| COMM 2005-FL10 Commercial Mortgage Pass-Through Certificates |
| COMM 2006-CNL2 Commercial Mortgage-Backed Certificates |
| COMM 2006-FL12 Commercial Mortgage Pass-Through Certificates |
| COMM 2007-FL14 Commercial Mortgage Pass-Through Certificates |
| Commercial Mortgage Acceptance Corp. Commercial Mortgage Pass-Through Certificates Series 1998-C1 |
| Commercial Mortgage Acceptance Corp. Commercial Mortgage Pass-Through Certificates Series 1999-C1 |
| Commercial Mortgage Asset Trust Commercial Mortgage Pass-Through Certificates Series 1999-C1 |
| Commercial Mortgage Asset Trust Commercial Mortgage Pass-Through Certificates Series 1999-C2 |
| Commercial Mortgage Lease-Backed Securities LLC Commercial Mortgage Lease-Backed Certificates Series 2001-CMLB-1 |
| Commercial Mortgage Trust 2007-GG11, Commercial Mortgage Pass-Through Certificates, Series 2007-GG11 |
| Countrywide Commercial Mortgage Trust 2007-MF1 Commercial Mortgage Pass-Through Certificates Series 2007-MF1 |
| Credit Suisse First Boston Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 1997-C2 |
| Credit Suisse First Boston Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2001-CK3 |
| Credit Suisse First Boston Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2004-C5 |
| Credit Suisse First Boston Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2004-TFL2 |
| Credit Suisse First Boston Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2005-TFL1 |
| Credit Suisse First Boston Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2005-TFL2 |
| Credit Suisse First Boston Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2006-C4 |
| Credit Suisse First Boston Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2006-TFL2 |
| Credit Suisse First Boston Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2007-C2 |
| Credit Suisse First Boston Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2007-C3 |
| Credit Suisse First Boston Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2007-C4 |
| Credit Suisse First Boston Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series Corp 2002-CP3 |
| Credit Suisse First Boston Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2006-C2 |
| Dadeland Mall Mortgage Trust Commercial Mortgage Pass-Through Certificates Series 2002-C2A |
| DEUTSCHE MORTGAGE & ASSET RECEIVING CORPORATION Commercial Mortgage Pass-Through Certificates Series 1998-C1 |
| DEUTSCHE MORTGAGE & ASSET RECEIVING CORPORATION Multifamily Mortgage Pass-Through Certificates Series 2009-K3 |
| DLJ Commercial Mortgage Corp. Commercial Mortgage Pass-Through Certificates Series 1998-CG1 |
| DLJ Commercial Mortgage Corp. Commercial Mortgage Pass-Through Certificates Series 1999-CG1 |
| DLJ Commercial Mortgage Corp. Commercial Mortgage Pass-Through Certificates Series 1999-CG2 |
| DLJ Commercial Mortgage Corp. Commercial Mortgage Pass-Through Certificates Series 1999-CG3 |

| |
|---|
| FFCA Secured Franchise Loan Trust Certificates Series 1999-1 |
| FFCA Secured Franchise Loan Trust Certificates Series 1999-2 |
| FFCA Secured Franchise Loan Trust Certificates Series 2000-1 |
| First Union Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 1997-C2 |
| First Union Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 1999-C1 |
| First Union Commercial Mortgage Securities Inc. Commercial Mortgage Pass-Through Certificates Series 1999-C2 |
| Flik Depositor, Inc. Commercial Mortgage Pass-Through Certificates, Series 2003-EPR |
| Four Times Square Trust, Commercial Mortgage Pass-Through Certificates, Series 2006-4TS |
| G3 STRATEGIC INVESTMENTS LP Mortgage Pass-Through Certificates Series 2002-WL1 |
| Gallery at Harborplace Mortgage Trust Commercial Mortgage Pass-Through Certificates Series 2000-C5C |
| GE Capital Commercial Mortgage Corporation Commercial Mortgage Pass-Through Certificates Series 2001-1 |
| GE Capital Commercial Mortgage Corporation Commercial Mortgage Pass-Through Certificates Series 2001-3 |
| GE Capital Commercial Mortgage Corporation Commercial Mortgage Pass-Through Certificates Series 2002-2A |
| GE Commercial Mortgage Corporation Commercial Mortgage Pass-Through Certificates Series 2006-C1 |
| GFCM LLC Commercial Mortgage Pass-Through Certificates, Series 2003-1 |
| GMAC Commercial Mortgage Securities Inc. Mortgage Pass-Through Certificates Series 1998-C1 |
| GMAC Commercial Mortgage Securities Inc. Mortgage Pass-Through Certificates Series 1998-C2 |
| GMAC Commercial Mortgage Securities Inc. Mortgage Pass-Through Certificates Series 1999-C2I |
| GMAC Commercial Mortgage Securities Inc. Mortgage Pass-Through Certificates Series 2000-C1 |
| GMAC Commercial Mortgage Securities Inc. Mortgage Pass-Through Certificates Series 2000-C3 |
| GMAC Commercial Mortgage Securities Inc. Mortgage Pass-Through Certificates Series 2001-C2 |
| GMAC Commercial Mortgage Securities Inc. Mortgage Pass-Through Certificates Series 2002-C2 |
| GMAC Commercial Mortgage Securities Inc. Mortgage Pass-Through Certificates Series 2003-C1 |
| GMAC Commercial Mortgage Securities Inc. Mortgage Pass-Through Certificates Series 2003-C3 |
| GMAC Commercial Mortgage Securities Inc. Mortgage Pass-Through Certificates Series 2003-C3 |
| GMAC Commercial Mortgage Securities Inc. Mortgage Pass-Through Certificates Series 2004-C2 |
| GMAC Commercial Mortgage Securities Inc. Mortgage Pass-Through Certificates Series 2005-C1 |
| Greenwich Capital Commercial Funding Corp. Commercial Mortgage Trust 2006-FL4, Commercial Mortgage Pass-Through Certificates, |
| Greenwich Capital Commercial Funding Corp., Commercial Mortgage Trust 2002-C1, Commercial Mortgage Pass-Through Certificates, |
| Greenwich Capital Commercial Funding Corp., Commercial Mortgage Trust 2003-C1, Commercial Mortgage Pass-Through Certificates, |
| Greenwich Capital Commercial Funding Corp., Commercial Mortgage Trust 2003-C2, Commercial Mortgage Pass-Through Certificates, |
| Greenwich Capital Commercial Funding Corp., Commercial Mortgage Trust 2004-FL2, Commercial Mortgage Pass-Through Certificates, |
| Greenwich Capital Commercial Funding Corp., Commercial Mortgage Trust 2004-GG1, Commercial Mortgage Pass-Through Certificates, |
| Greenwich Capital Commercial Funding Corp., Commercial Mortgage Trust 2005-FL3, Commercial Mortgage Pass-Through Certificates, |
| Greenwich Capital Commercial Funding Corp., Commercial Mortgage Trust 2005-GG3, Commercial Mortgage Pass-Through Certificates, |
| Greenwich Capital Commercial Funding Corp., Commercial Mortgage Trust 2005-GG5, Commercial Mortgage Pass-Through Certificates, |
| Greenwich Capital Commercial Funding Corp., Commercial Mortgage Trust 2006-GG7, Commercial Mortgage Pass-Through Certificates, |
| Greenwich Capital Commercial Funding Corp., Commercial Mortgage Trust 2007-GG9, Commercial Mortgage Pass-Through Certificates, |
| GS MORTGAGE SECURITIES CORPORATION II Commercial Mortgage Pass-Through Certificates Series 1997-GL I |
| GS MORTGAGE SECURITIES CORPORATION II Commercial Mortgage Pass-Through Certificates Series 1998-C1 |
| GS MORTGAGE SECURITIES CORPORATION II Commercial Mortgage Pass-Through Certificates Series 1999-C1 |
| GS MORTGAGE SECURITIES CORPORATION II Commercial Mortgage Pass-Through Certificates Series 2001-GLIII |
| GS MORTGAGE SECURITIES CORPORATION II Commercial Mortgage Pass-Through Certificates Series 2001-ROCK |
| GS MORTGAGE SECURITIES CORPORATION II Commercial Mortgage Pass-Through Certificates Series 2004-C1 |
| GS MORTGAGE SECURITIES CORPORATION II Commercial Mortgage Pass-Through Certificates Series 2004-GG2 |
| GS MORTGAGE SECURITIES CORPORATION II Commercial Mortgage Pass-Through Certificates Series 2005-ROCK |
| GS MORTGAGE SECURITIES CORPORATION II Commercial Mortgage Pass-Through Certificates Series 2006-GG6 |

| |
|---|
| GS MORTGAGE SECURITIES CORPORATION II Commercial Mortgage Pass-Through Certificates Series 2006-GG8 |
| GS MORTGAGE SECURITIES CORPORATION II Commercial Mortgage Pass-Through Certificates Series 2007-GG10 |
| GS MORTGAGE SECURITIES CORPORATION II Commercial Mortgage Pass-Through Certificates, Series 2006-GSFL VIII |
| Hometown Commercial Trust 2006-1 Certificates of Beneficial Ownership, Series 2006-1 |
| HVB MORTGAGE CAPITAL CORP. Commercial Mortgage Pass-Through Certificates Series 2003-FL1 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2001-C1 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2001-CIB3 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2002-C1 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2002-C2 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2002-C3 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2002-CIBC5 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2003-C1 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2003-CIBC6 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2003-CIBC7 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2003-LN1 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2003-ML1 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2004-C2 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2004-CIBC9 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2004-LN2 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2004-PNC1 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2005-CB12 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2005-LDP1 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2005-LDP2 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2005-LDP3 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2005-LDP4 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2005-LDP5 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2006-CBIC14 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2006-CIBC15 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2006-CIBC17 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2006-LDP7 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2007-CIBC19 |
| J.P. Morgan Chase Commercial Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates Series 2008-C2 |
| J.P. Morgan Chase Commercial Mortgage Securities Trust 2006-LDP8 Commercial Mortgage Pass-Through Certificates Series 2006-LDP8 |
| J.P. Morgan Chase Commercial Mortgage Securities Trust 2006-LDP9 Commercial Mortgage Pass-Through Certificates Series 2006-LDP9 |
| J.P. Morgan Chase Commercial Mortgage Securities Trust 2007-LDP11 Commercial Mortgage Pass-Through Certificates Series 2007- |
| J.P. Morgan Chase Commercial Mortgage Securities Trust 2007-LDP12 Commercial Mortgage Pass-Through Certificates Series 2007- |
| JB Bond Securitization Trust Series 2005-S4 |
| JP Morgan Commercial Mortgage Finance Corp. Mortgage Pass-Through Certificates Series 1997-C5 |
| JP Morgan Commercial Mortgage Finance Corp. Mortgage Pass-Through Certificates Series 2000-C9 |
| LaSalle Commercial Mortgage Securities Trust 2005-MF1 Commercial Mortgage Pass-Through Certificates Series 2005-MF1 |
| LaSalle Commercial Mortgage Securities Trust 2006-MF2 Commercial Mortgage Pass-Through Certificates Series 2006-MF2 |
| LaSalle Commercial Mortgage Securities Trust 2006-MF3 Commercial Mortgage Pass-Through Certificates Series 2006-MF3 |
| LaSalle Commercial Mortgage Securities Trust 2006-MF4 Commercial Mortgage Pass-Through Certificates Series 2006-MF4 |
| LaSalle Commercial Mortgage Securities Trust 2007-MF5 Commercial Mortgage Pass-Through Certificates Series 2007-MF5 |
| LB Commercial Mortgage Trust 1999-C1 Commercial Mortgage Pass-Through Certificates, Series 1999-C1 |
| LB Commercial Mortgage Trust 1999-C2 Commercial Mortgage Pass-Through Certificates, Series 1999-C2 |
| LB Commercial Mortgage Trust 2007-C3 Commercial Mortgage Pass-Through Certificates, Series 2007-C3 |
| LB Commercial Mortgage Trust Commercial Mortgage Pass-Through Certificates Series 1998-C1 |

| |
|---|
| LB Commercial Mortgage Trust Commercial Mortgage Pass-Through Certificates Series 1998-C4 |
| LB-UBS 299 Park Avenue Mortgage Trust Commercial Mortgage Pass-Through Certificates Series 2001-C7A |
| LB-UBS Commercial Mortgage Trust 2000-C3 Commercial Mortgage Pass-Through Certificates, Series 2000-C3 |
| LB-UBS Commercial Mortgage Trust 2000-C4 Commercial Mortgage Pass-Through Certificates, Series 2000-C4 |
| LB-UBS Commercial Mortgage Trust 2000-C5 Commercial Mortgage Pass-Through Certificates, Series 2000-C5 |
| LB-UBS Commercial Mortgage Trust 2001-C2 Commercial Mortgage Pass-Through Certificates, Series 2001-C2 |
| LB-UBS Commercial Mortgage Trust 2001-C3 Commercial Mortgage Pass-Through Certificates, Series 2001-C3 |
| LB-UBS Commercial Mortgage Trust 2001-C7 Commercial Mortgage Pass-Through Certificates, Series 2001-C7 |
| LB-UBS Commercial Mortgage Trust 2002-C1 Commercial Mortgage Pass-Through Certificates, Series 2002-C1 |
| LB-UBS Commercial Mortgage Trust 2002-C2 Commercial Mortgage Pass-Through Certificates, Series 2002-C2 |
| LB-UBS Commercial Mortgage Trust 2002-C4 Commercial Mortgage Pass-Through Certificates, Series 2002-C4 |
| LB-UBS Commercial Mortgage Trust 2002-C7 Commercial Mortgage Pass-Through Certificates, Series 2002-C7 |
| LB-UBS Commercial Mortgage Trust 2003-C1 Commercial Mortgage Pass-Through Certificates, Series 2003-C1 |
| LB-UBS Commercial Mortgage Trust 2003-C3 Commercial Mortgage Pass-Through Certificates, Series 2003-C3 |
| LB-UBS Commercial Mortgage Trust 2003-C5 Commercial Mortgage Pass-Through Certificates, Series 2003-C5 |
| LB-UBS Commercial Mortgage Trust 2003-C7 Commercial Mortgage Pass-Through Certificates, Series 2003-C7 |
| LB-UBS Commercial Mortgage Trust 2003-C8 Commercial Mortgage Pass-Through Certificates, Series 2003-C8 |
| LB-UBS Commercial Mortgage Trust 2004-C1 Commercial Mortgage Pass-Through Certificates, Series 2004-C1 |
| LB-UBS Commercial Mortgage Trust 2004-C4 Commercial Mortgage Pass-Through Certificates, Series 2004-C4 |
| LB-UBS Commercial Mortgage Trust 2004-C6 Commercial Mortgage Pass-Through Certificates, Series 2004-C6 |
| LB-UBS Commercial Mortgage Trust 2004-C7 Commercial Mortgage Pass-Through Certificates, Series 2004-C7 |
| LB-UBS Commercial Mortgage Trust 2004-C8 Commercial Mortgage Pass-Through Certificates, Series 2004-C8 |
| LB-UBS Commercial Mortgage Trust 2005-C1 Commercial Mortgage Pass-Through Certificates, Series 2005-C1 |
| LB-UBS Commercial Mortgage Trust 2005-C2 Commercial Mortgage Pass-Through Certificates, Series 2005-C2 |
| LB-UBS Commercial Mortgage Trust 2005-C3 Commercial Mortgage Pass-Through Certificates, Series 2005-C3 |
| LB-UBS Commercial Mortgage Trust 2005-C5 Commercial Mortgage Pass-Through Certificates, Series 2005-C5 |
| LB-UBS Commercial Mortgage Trust 2005-C7 Commercial Mortgage Pass-Through Certificates, Series 2005-C7 |
| LB-UBS Commercial Mortgage Trust 2006-C1 Commercial Mortgage Pass-Through Certificates, Series 2006-C1 |
| LB-UBS Commercial Mortgage Trust 2006-C3 Commercial Mortgage Pass-Through Certificates, Series 2006-C3 |
| LB-UBS Commercial Mortgage Trust 2006-C4 Commercial Mortgage Pass-Through Certificates, Series 2006-C4 |
| LB-UBS Commercial Mortgage Trust 2006-C6 Commercial Mortgage Pass-Through Certificates, Series 2006-C6 |
| LB-UBS Commercial Mortgage Trust 2006-C7 Commercial Mortgage Pass-Through Certificates, Series 2006-C7 |
| LB-UBS Commercial Mortgage Trust 2007-C1 Commercial Mortgage Pass-Through Certificates, Series 2007-C1 |
| LB-UBS Commercial Mortgage Trust 2007-C2 Commercial Mortgage Pass-Through Certificates, Series 2007-C2 |
| LB-UBS Commercial Mortgage Trust 2007-C6 Commercial Mortgage Pass-Through Certificates, Series 2007-C6 |
| LB-UBS Commercial Mortgage Trust 2007-C7 Commercial Mortgage Pass-Through Certificates, Series 2007-C7 |
| LB-UBS Commercial Mortgage Trust 2008-C1 Commercial Mortgage Pass-Through Certificates, Series 2008-C1 |
| LB-UBS Westfield Trust, Commercial Mortgage Pass-Through Certificates, Series 2001-WM |
| LNR CFL 2004-1 Ltd. CMBS Resecuritization Notes, Series 2004-CFL |
| Merrill Lynch Floating Trust Pass-Through Certificates, Series 2006-1 |
| MERRILL LYNCH MORTGAGE INVESTORS, INC Commercial Mortgage Pass-Through Certificates Series 2004-C1 |
| MERRILL LYNCH MORTGAGE INVESTORS, INC Commercial Mortgage Pass-Through Certificates Series 2005-C3 |
| MERRILL LYNCH MORTGAGE INVESTORS, INC Commercial Mortgage Pass-Through Certificates Series 2006-C4 |
| MERRILL LYNCH MORTGAGE INVESTORS, INC Commercial Mortgage Pass-Through Certificates Series 2007-C5 |
| MERRILL LYNCH MORTGAGE INVESTORS, INC. Commercial Mortgage Pass-Through Certificates Series 2002-MW1 |
| MERRILL LYNCH MORTGAGE INVESTORS, INC. Commercial Mortgage Pass-Through Certificates Series 2005-CKI1 |
| MERRILL LYNCH MORTGAGE INVESTORS, INC. Commercial Mortgage Pass-Through Certificates Series 2005-LC1 |

| |
|---|
| Merrill Lynch Mortgage Trust 2006-C1 Commercial Mortgage Pass-Through Certificates Series 2006-C1 |
| Merrill Lynch Mortgage Trust 2006-C2 Commercial Mortgage Pass-Through Certificates Series 2006-C2 |
| Merrill Lynch Mortgage Trust 2008-C1 Commercial Mortgage Pass Through Certificates, Series 2008-C1 |
| Minnesota Bond Securitization Trust Series 2004-S1 |
| Minnesota Bond Securitization Trust Series 2004-S2 |
| ML-CFC Commercial Mortgage Trust 2006-1 Commercial Mortgage Pass-Through Certificates Series 2006-1 |
| ML-CFC Commercial Mortgage Trust 2006-2 Commercial Mortgage Pass-Through Certificates Series 2006-2 |
| ML-CFC Commercial Mortgage Trust 2006-4 Commercial Mortgage Pass-Through Certificates Series 2006-4 |
| ML-CFC Commercial Mortgage Trust 2007-6 Commercial Mortgage Pass-Through Certificates Series 2007-6 |
| ML-CFC Commercial Mortgage Trust 2007-7 Commercial Mortgage Pass-Through Certificates Series 2007-7 |
| ML-CFC Commercial Mortgage Trust 2007-8 Commercial Mortgage Pass-Through Certificates Series 2007-8 |
| MLMI98-CI-F, Commercial Mortgage Certificates, Series 2006-1 Trust |
| MONITRONICS FUNDING LP Series 2007-1 |
| MORGAN STANLEY CAPITAL I INC. Commercial Mortgage Pass-Through Certificates Series 2007-XLF |
| MORGAN STANLEY CAPITAL I INC. Commercial Mortgage Pass-Through Certificates Series FB 2005-1 |
| MORGAN STANLEY CAPITAL I INC. Commercial Mortgage Pass-Through Certificates Series2005-XLF |
| MSDWMC Owner Trust 2000-FI Notes and Participating Interests |
| MSDWMC Owner Trust 2003-FI Notes, Series 2003-FI |
| NATIONSLINK FUNDING CORPORATION Commercial Loan Pass-Through Certificates Series 1999-LTL-1 |
| NATIONSLINK FUNDING CORPORATION Commercial Mortgage Pass-Through Certiticates Series 1999-SL |
| Nomura Asset Securities Corporation Commercial Mortgage Pass-Through Certificates Series 1996-MD V |
| Nomura Asset Securities Corporation Commercial Mortgage Pass-Through Certificates Series 1998-D6 |
| Nortel Networks Lease Pass-Through Trust Pass-Through Trust Certificates, Series 2001-1 |
| PROTECTIVE FINANCE CORPORATION Commercial Mortgage Pass-Through Certificates Series 2007-PL |
| Protective Finance Corporation II Commercial  Mortgage FASIT Certificates, Series I |
| Providence Place Mall Pass-Through Certificates |
| Prudential Securities Secured Financing Corporation Commercial Mortgage Pass-Through Certificates Series 1995-MCF-2 |
| Prudential Securities Secured Financing Corporation Commercial Mortgage Pass-Through Certificates Series 2003-PWR1 |
| Rite Aid Pass-Through Certificates Series 1999-1 |
| ROCK 2001-C1 Commercial Mortgage Pass-Through Certificates Series 200 I-C 1 |
| SALOMON BROTHERS MORTGAGE SECURITIES VII, INC. Commercial Mortgage Pass-Through Certificates Series 2000-NL1 |
| SALOMON BROTHERS MORTGAGE SECURITIES VII, INC. Commercial Mortgage Pass-Through Certificates Series 2001-MM |
| SALOMON BROTHERS MORTGAGE SECURITIES VII, INC. Commercial Mortgage Pass-Through Certificates Series Inc 2000-C3 |
| Southbury Credit Lease Backed Pass-Through Certificates, Series 1999-CTL1 |
| STRUCTURED ASSET SECURITIES CORPORATION Commercial Mortgage Pass-Through Certificates Series 1997-LL 1 |
| STRUCTURED ASSET SECURITIES CORPORATION Commercial Mortgage Pass-Through Certificates Series 2002-C5 |
| STRUCTURED ASSET SECURITIES CORPORATION II Commercial Mortgage Pass-Through Certificates Series 2004-C3 |
| STRUCTURED ASSET SECURITIES CORPORATION II Commercial Mortgage Pass-Through Certificates Series 2005-C6 |
| Structured Asset Securities Corporation Multiclass Pass-Through Certificates Series 1996-CFL |
| THE PENN MUTUAL LIFE INSURANCE COMPANY and THE PENN INSURANCE AND ANNUITY COMPANY 1996-PML |
| TIAA Seasoned Commercial Mortgage Trust 2007-C4 Commercial Mortgage Pass-Through Certificates, Series 2007-C4 |
| TimberStar Trust I Commercial Mortgage Pass-Through Certificates Series 2006-1 |
| Tuckahoe Credit Lease Backed Pass-Through Certificates, Series 200 I-CTL1 |
| TW Hotel Funding 2005, LLC Commercial Mortgage Pass-Through Certificates Series 2005-LUX |
| U.S. TRADE FUNDING CORP. 4.26% TRADE TRUST CERTIFICATES Series 2002-A |
| UBS 400 Atlantic Street Mortgage Trust Commercial Mortgage Pass-Through Certificates Series 2002-C1A |
| WACHOVIA COMMERCIAL MORTGAGE SECURITIES, INC. Commercial Mortgage Pass-Through Certificates Series 2002-C1 |

| WACHOVIA COMMERCIAL MORTGAGE SECURITIES, INC. Commercial Mortgage Pass-Through Certificates Series 2002-C2 |
| WACHOVIA COMMERCIAL MORTGAGE SECURITIES, INC. Commercial Mortgage Pass-Through Certificates Series 2003-C3 |
| Wachovia Commercial Mortgage Securities, Inc. Commercial Mortgage Pass-Through Certificates Series 2003-C5 |
| Wachovia Commercial Mortgage Securities, Inc. Commercial Mortgage Pass-Through Certificates Series 2003-C6 |
| WACHOVIA COMMERCIAL MORTGAGE SECURITIES, INC. Commercial Mortgage Pass-Through Certificates Series 2003-C7 |
| Wachovia Commercial Mortgage Securities, Inc. Commercial Mortgage Pass-Through Certificates Series 2003-C8 |
| WACHOVIA COMMERCIAL MORTGAGE SECURITIES, INC. Commercial Mortgage Pass-Through Certificates Series 2004-C10 |
| Wachovia Commercial Mortgage Securities, Inc. Commercial Mortgage Pass-Through Certificates Series 2004-C11 |
| WACHOVIA COMMERCIAL MORTGAGE SECURITIES, INC. Commercial Mortgage Pass-Through Certificates Series 2004-C12 |
| WACHOVIA COMMERCIAL MORTGAGE SECURITIES, INC. Commercial Mortgage Pass-Through Certificates Series 2004-C14 |
| Wachovia Commercial Mortgage Securities, Inc. Commercial Mortgage Pass-Through Certificates Series 2004-C15 |
| WACHOVIA COMMERCIAL MORTGAGE SECURITIES, INC. Commercial Mortgage Pass-Through Certificates Series 2005-C18 |
| Wachovia Commercial Mortgage Securities, Inc. Commercial Mortgage Pass-Through Certificates Series 2005-C19 |
| WACHOVIA COMMERCIAL MORTGAGE SECURITIES, INC. Commercial Mortgage Pass-Through Certificates Series 2005-C20 |
| Wachovia Commercial Mortgage Securities, Inc. Commercial Mortgage Pass-Through Certificates Series 2005-C22 |
| Wachovia Commercial Mortgage Securities, Inc. Commercial Mortgage Pass-Through Certificates Series 2006-C23 |
| WACHOVIA COMMERCIAL MORTGAGE SECURITIES, INC. Commercial Mortgage Pass-Through Certificates Series 2006-C24 |
| Wachovia Commercial Mortgage Securities, Inc. Commercial Mortgage Pass-Through Certificates Series 2006-C25 |
| Wachovia Commercial Mortgage Securities, Inc. Commercial Mortgage Pass-Through Certificates Series 2006-C26 |
| Wachovia Commercial Mortgage Securities, Inc. Commercial Mortgage Pass-Through Certificates Series 2006-C27 |
| Wachovia Commercial Mortgage Securities, Inc. Commercial Mortgage Pass-Through Certificates Series 2006-C29 |
| Wachovia Commercial Mortgage Securities, Inc. Commercial Mortgage Pass-Through Certificates Series 2007-C30 |
| Wachovia Commercial Mortgage Securities, Inc. Commercial Mortgage Pass-Through Certificates Series 2007-C32 |
| Walnut Corporation Mortgage PasswThrough Certificates |
| Washington Mutual Commercial Mortgage Trust 2003-C1 Commercial Mortgage Pass-Through Certificates, Series 2003-C1 |
| Washington Mutual Commercial Mortgage Trust 2005-C1 Commercial Mortgage Pass-Through Certificates, Series 2005-C1 |
| Washington Mutual Grantor Trust Certificate Series 2001-1 |
| Washington Mutual Multifamily Mortgage 2001-1 Limited Secured Notes, Series 2001-1 |
| Westfield Shoppingtown West County Mall Mortgage Trust Commercial Mortgage Pass-Through Certificates Series 2003-C3A |
| Accredited Mortgage Loan Trust 2005-3 |
| ASG Resecuritization Trust 2009-1, REMIC Notes Series 2009-1 |
| ASG Resecuritization Trust 2009-3, REMIC Notes Series 2009-3 |
| ABFC asset-Backed Certificates, Series 2002-SB1 |
| Asset Backed Funding Corporation NIM Trust 2002-SB1 |
| Banc of America Mortgage 2008-A Trust, Mortgage Pass-Through Certificates Series 2008-A |
| BC50 Trust-I |
| BEAR STEARNS ASSET BACKED SECURITIES TRUST 2004-1 ASSET-BACKED CERTIFICATES, SERIES 2004-I |
| BEAR STEARNS ASSET BACKED SECURITIES TRUST 2005-2 ASSET-BACKED CERTIFICATES, SERIES 2005-2 |
| Bear Stearns Asset Backed Securities I Trust 2005-HE7, Asset-Backed Certificates, Series 2005-HE7 |
| Bear Stearns Asset Backed Securities Trust 2004-HE1 Asset-Backed Certificates, Series 2004-HE1 |
| Bear Stearns Asset Backed Securities Trust 2004-HE3 Asset-Backed Certificates, Series 2004-HE3 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2004-HE4 ASSET-BACKED CERTIFICATES, SERIES 2004-HE4 |
| Bear Stearns Asset Backed Securities I Trust 2005-FR1, Asset-Backed Certificates, Series 2005-FR1 |
| Bear Stearns Asset Backed Securities I Trust 2005-HE1, Asset-Backed Certificates, Series 2005-HE1 |
| Bear Stearns Asset Backed Securities I Trust 2005-HE11, Asset-Backed Certificates, Series 2005-HE11 |
| Bear Stearns Asset Backed Securities I Trust 2005-HE5, Asset-Backed Certificates, Series 2005-HE5 |
| Bear Stearns Asset Backed Securities I Trust 2005-HE8, Asset-Backed Certificates, Series 2005-HE8 |

| |
|---|
| Bear Stearns Asset Backed Securities I Trust 2006-EC2 Asset-Backed Certificates, Series 2006-EC2 |
| Bear Stearns Asset Backed Securities I Trust 2006-HE6 Asset Backed Certificates, Series 2006-HE6 |
| Bear Stearns Asset Backed Securities I Trust 2007-HE3 Asset-Backed Certificates, Series 2007-HE3 |
| BEAR STEARNS ASSET BACKED SECURITIES TRUST 2001-3 ASSET-BACKED CERTIFICATES, SERIES 2001-3 |
| Bear Stearns Asset Backed Securities Trust 2003-ABF1 Mortgage Pass-Through Certificates, Series 2003-ABF1 |
| BEAR STEARNS ASSET BACKED SECURITIES TRUST 2004-2 ASSET-BACKED CERTIFICATES, SERIES 2004-2 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2004-FR2 ASSET-BACKED CERTIFICATES, SERIES 2004-FR2 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2004-HE11 ASSET-BACKED CERTIFICATES, SERIES 2004-HE11 |
| Bear Stearns Asset Backed Securities Trust 2004-HE2 Asset-Backed Certificates, Series 2004-HE2 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2004-HE5 ASSET-BACKED CERTIFICATES, SERIES 2004-HE5 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2004-HE8 ASSET-BACKED CERTIFICATES, SERIES 2004-HE8 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2004-HE9 ASSET-BACKED CERTIFICATES, SERIES 2004-HE9 |
| BEAR STEARNS ASSET BACKED SECURITIES TRUST 2005-3 ASSET-BACKED CERTIFICATES, SERIES 2005-3 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2005-HE10 ASSET-BACKED CERTIFICATES, SERIES 2005-HE10 |
| Bear Stearns Asset Backed Securities I Trust 2005-HE2, Asset-Backed Certificates, Series 2005-HE2 |
| Bear Stearns Asset Backed Securities I Trust 2005-HE3, Asset-Backed Certificates, Series 2005-HE3 |
| Bear Stearns Asset Backed Securities I Trust 2005-HE4, Asset-Backed Certificates, Series 2005-HE4 |
| Bear Stearns Asset Backed Securities I Trust 2005-HE9, Asset-Backed Certificates, Series 2005-HE9 |
| BEAR STEARNS ASSET BACKED SECURITIES TRUST 2006-1 ASSET-BACKED CERTIFICATES, SERIES 2006-1 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2006-AQ1 ASSET-BACKED CERTIFICATES, SERIES 2006-AQ1 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2006-HE1 ASSET-BACKED CERTIFICATES, SERIES 2006-HE1 |
| Bear Stearns Asset Backed Securities I Trust 2006-HE10 Asset-Backed Certificates, Series 2006-HE10 |
| Bear Stearns Asset Backed Securities I Trust 2006-HE2 Asset-Backed Certificates, Series 2006-HE2 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2006-HE5 ASSET-BACKED CERTIFICATES, SERIES 2006-HE5 |
| Bear Stearns Asset Backed Securities I Trust 2006-HE8 Asset-Backed Certificates, Series 2006-HE8 |
| Bear Stearns Asset Backed Securities I Trust 2006-HE9 Asset-Backed Certificates, Series 2006-HE9 |
| Bear Stearns Asset Backed Securities I Trust 2006-PC1 Asset-Backed Certificates, Series 2006-PC1 |
| Bear Stearns Asset Backed Securities I Trust 2007-HE2 Asset-Backed Certificates, Series 2007-HE2 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2005-AQ1 ASSET-BACKED CERTIFICATES, SERIES 2005-AQ1 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2004-FR3 ASSET-BACKED CERTIFICATES, SERIES 2004-FR3 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2004-FR1 ASSET-BACKED CERTIFICATES, SERIES 2004-FR1 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2004-HE6 ASSET-BACKED CERTIFICATES, SERIES 2004-HE6 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2004-HE7 ASSET-BACKED CERTIFICATES, SERIES 2004-HE7 |
| BEAR STEARNS ASSET BACKED SECURITIES TRUST 2005-4 ASSET-BACKED CERTIFICATES, SERIES 2005-4 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2005-AQ1 ASSET-BACKED CERTIFICATES, SERIES 2005-AQ1 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2005-EC1 ASSET-BACKED CERTIFICATES, SERIES 2005-EC1 |
| Bear Stearns Asset Backed Securities I Trust 2006-EC1 Asset-Backed Certificates, Series 2006-EC1 |
| Bear Stearns Asset Backed Securities I Trust 2007-AQ1 Asset-Backed Certificates, Series 2007-AQ1 |
| Bear Stearns Asset Backed Securities I Trust 2007-FS1 Asset-Backed Certificates, Series 2007-FS1 |
| Bear Stearns Asset Backed Securities I Trust 2007-HE1 Asset-Backed Certificates, Series 2007-HE1 |
| Bear Stearns Asset Backed Securities I Trust 2007-HE5 Asset-Backed Certificates, Series 2007-HE5 |
| Bear Stearns Asset Backed Securities I Trust 2007-HE6 Asset-Backed Certificates, Series 2007-HE6 |
| Bear Stearns Asset Backed Securities I Trust 2007-HE7 Asset-Backed Certificates, Series 2007-HE7 |
| Bear Stearns Asset Backed Securities I Trust 2006-HE7 Asset-Backed Certificates, Series 2006-HE7 |
| Bear Stearns Asset Backed Securities Trust 2003-HE1 Asset-Backed Certificates, Series 2003-HE1 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2005-HE6 ASSET-BACKED CERTIFICATES, SERIES 2005-HE6 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2004-HE10 Asset-Backed Certificates, Series 2004-HE10 |

| |
|---|
| Bear Stearns Asset Backed Securities I Trust 2005-HE12 Asset-Backed Certificates, Series 2005-HE12 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2005-TC2 ASSET-BACKED CERTIFICATES, SERIES 2005-TC2 |
| Bear Stearns Asset Backed Securities I Trust 2007-AQ2 Asset-Backed Certificates, Series 2007-AQ2 |
| Bear Stearns Asset Backed Securities I Trust 2007-HE4 Asset-Backed Certificates, Series 2007-HE4 |
| Bear Stearns Mortgage Funding Trust 2006-SL2 Mortgage-Backed Certificates, Series 2006-SL2 |
| Bear Stearns Mortgage Funding Trust 2006-SL3 Mortgage-Backed Certificates, Series 2006-SL3 |
| Bear Stearns Mortgage Funding Trust 2006-SL4 Mortgage-Backed Certificates, Series 2006-SL4 |
| Bear Stearns Mortgage Funding Trust 2006-SL5 Mortgage-Backed Certificates, Series 2006-SL5 |
| Bear Stearns Mortgage Funding Trust 2006-SL6 Mortgage-Backed Certificates, Series 2006-SL6 |
| Bear Stearns Mortgage Funding Trust 2007-SL1 Mortgage-Backed Certificates, Series 2007-SL1 |
| Bear Stearns Mortgage Funding Trust 2007-SL2 Mortgage-Backed Certificates, Series 2007-SL2 |
| BEAR STEARNS STRUCTURED PRODUCTS INC. NIM TRUST 2006-16 SERIES 2006-16 |
| Bear Stearns Structured Products Inc. NIM Trust 2006-19 |
| BSABS AQ1 NIM TRUST 2005-1, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes |
| BSABS AQ2 NIM TRUST 2005-2, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes |
| BSABS EC1 NIM TRUST 2005-1, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes |
| BSABS EC1 NIM TRUST 2006-1, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes |
| BSABS EC2 NIM Trust 2006-2, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes |
| BSABS FR1 NIM Trust 2004-1, Class A-1, Class A-2 and Class C Notes |
| BSABS FR1 NIM Trust 2005-1, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes |
| BSABS FR2 NIM Trust 2004-2, Class A-1, Class A-2, Class A-3 and Class C Notes |
| BSABS FR3 NIM Trust 2004-3, Class A-1, Class A-2, Class A-3, Class A-4 and Class C Notes |
| BSABS HE1 NIM Trust 2003-1, Asset-Backed Certificates |
| BSABS HE1 NIM Trust 2004-1, Class A-1 Notes, Class A-2 Notes and Class C Notes |
| BSABS HE1 NIM Trust 2005-1, Class A-1 Notes, Class A-2 Notes and Class C Notes |
| BSABS HE1 NIM TRUST 2006-1 |
| BSABS HE10 NIM Trust 2004-1, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes and Class C Notes |
| BSABS HE10 NIM TRUST 2005-10 |
| BSABS HE11 NIM TRUST 2004-11 |
| BSABS HE11 NIM Trust 2005-11, Class A-1 Notes, Class A-2 Notes and Class C Notes |
| BSABS HE12 NIM Trust 2005-12, Class A-1 Notes, Class A-2 Notes and Class A-3 Notes |
| BSABS HE2 NIM Trust 2004-2, Class A-1 Notes, Class A-2 Notes, Class Inverse IO Notes and Class C Notes |
| BSABS HE2 NIM TRUST 2005-2, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes, Class C Notes |
| BSABS HE2 NIM TRUST 2006-2, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes |
| BSABS HE3 NIM Trust 2004-3, Class A-1 Notes, Class A-2 Notes, Class Inverse IO Notes and Class C Notes |
| BSABS HE3 NIM TRUST 2005-3, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes |
| BSABS HE4 NIM Trust 2004-4, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes and Class C Notes |
| BSABS HE4 NIM TRUST 2005-4, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes |
| BSABS HE5 NIM Trust 2004-5, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes and Class C Notes |
| BSABS HE5 NIM TRUST 2005-5, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes |
| BSABS HE6 NIM Trust 2004-6, Class A-1 Notes, Class A-2 Notes and Class C Notes |
| BSABS HE6 NIM TRUST 2005-6, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes |
| BSABS HE7 NIM Trust 2004-7, Class A-1 Notes, Class A-2 Notes and Class C Notes |
| BSABS HE7 NIM TRUST 2005-7, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes |
| BSABS HE8 NIM Trust 2004-8, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes and Class C Notes |
| BSABS HE8 NIM TRUST 2005-8, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes |
| BSABS HE9 NIM Trust 2004-9, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes and Class C Notes |

| |
|---|
| BSABS HE9 NIM TRUST 2005-9, Class A-1, Class A-2, Class A-3 |
| BSABS PC1 NIM Trust 2006-1, Class A-1 Notes, Class A-2 Notes, Class A-3 Notes |
| BSABS TC1 NIM Trust 2005-1, Class A-1 Notes, Class A-2 Notes and Class A-3 Notes |
| BSABS TC2 NIM Trust 2005-2, Class A-1 Notes, Class A-2 Notes and Class A-3 Notes |
| Bear Stearns Structured Products Inc. NIM Trust 2006-3, Series 2006-3 |
| Bear Stearns Structured Products Inc. NIM Trust 2005-23 Notes, Series 2005-23 |
| Bear Stearns Structured Products Inc. NIM Trust 2005-27, Series 2005-27 |
| BEAR STEARNS STRUCTURED PRODUCTS INC. NIM TRUST 2005-29 SERIES 2005-29 |
| BEAR STEARNS STRUCTURED PRODUCTS INC. NIM TRUST 2005-32, SERIES 2005-32 |
| BSSP Nim Trust 2005-7 |
| BEAR STEARNS STRUCTURED PRODUCTS INC. NIM TRUST 2006-10, SERIES 2006-10 |
| Bear Stearns Structured Products Inc. NIM Trust 2006-11 |
| BEAR STEARNS STRUCTURED PRODUCTS INC. NIM TRUST 2006-6, SERIES 2006-6 |
| BEAR STEARNS STRUCTURED PRODUCTS INC. NIM TRUST 2006-8 NOTES, SERIES 2006-8 |
| BEAR STEARNS ASSET BACKED SECURITIES I TRUST 2005-TC1 ASSET-BACKED CERTIFICATES, SERIES 2005-TC1 |
| Bear Stearns Mortgage Funding Trust 2006-SL1 Mortgage-Backed Certificates, Series 2006-SL1 |
| BERKELEY FEDERAL TRUST RECEIPT PASS-THROUGH CERTIFICATES, SERIES 1994-1 |
| Bear Stearns Structured Products Inc. NIM Trust 2006-17, Series 2006-17 |
| Bear Stearns Structured Products Inc. NIM Trust 2006-18, Series 2006-18 |
| Bear Stearns Structured Products Inc. NIM Trust 2006-20, Series 2006-20 |
| Bear Stearns Structured Products Inc. NIM Trust 2006-21, Series 2006-21 |
| BEAR STEARNS STRUCTURED PRODUCTS INC. NIM TRUST 2006-22 |
| Bear Stearns Structured Products Inc. NIM Trust 2006-24, Series 2006-24 |
| Bear Stearns Structured Products Inc. NIM Trust 2006-24, Series 2006-24 |
| BEAR STEARNS STRUCTURED PRODUCTS INC. NIM TRUST 2007-N3 NOTES |
| Bear Stearns Structured Products Inc. NIM Trust 2007-N1 |
| Bear Stearns Structured Products Inc. NIM Trust 2007-N2 |
| Bear Stearns Structured Products Inc. NIM Trust 2007-N4 Notes |
| Bear Stearns Structured Products Inc. NIM Trust 2007-N5 Notes |
| BEAR STEARNS STRUCTURED PRODUCTS INC. NIM TRUST 2007-N6 NOTES |
| BEAR STEARNS STRUCTURED PRODUCTS INC. NIM TRUST 2007-N7 NOTES |
| Bear Stearns Structured Products Inc. NIM Trust 2007-N8 Notes |
| C-BASS 2006-CB7NIM Trust, Series 2006-CB7NIM Notes |
| C-BASS 2006-CB9NIM Trust, Series 2006-CB9NIM Notes |
| C-BASS 2007-CB2NIM Trust, Series 2007-CB2NIM Notes |
| C-BASS 2007-CB4NIM Trust, Series 2007-CB4NIM Notes |
| C-BASS 2007-CB5NIM Trust, Series 2007-CB5NIM Notes |
| CREDIT SUISSE SEASONED LOAN TRUST 2006-1 HOME EQUITY PASS-THROUGH CERTIFICATES, SERIES 2006-1 |
| C-BASS Mortgage Loan Asset-Backed Certificates, Series 2007-CB4 |
| C-BASS Mortgage Loan Asset-Backed Certificates, Series 2007-CB5 |
| CSFB Mortgage-Backed Notes, Series 2002-NP14 |
| DB50 2004-1 Trust |
| DB50 2005-1 Trust |
| DB50 2007-1 Trust |
| DB50 HVAC 2005-1 Trust |
| Reverse Mortgage Loan Trust, Series REV 2007-2 |
| DUCAT INVESTMENT GROUP, L.P. GRANTOR TRUST, SERIES 2008-1 |

| |
|---|
| EMC MORTGAGE LOAN TRUST 2001-A MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2001-A |
| EMC MORTGAGE LOAN TRUST 2002-B MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2002-B |
| EMC MORTGAGE LOAN TRUST 2003-A MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2003-A |
| EMC MORTGAGE LOAN TRUST 2003-B MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2003-B |
| EMC MORTGAGE LOAN TRUST 2004-B MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2004-B |
| EMC MORTGAGE LOAN TRUST 2004-C MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2004-C |
| EMC MORTGAGE LOAN TRUST 2005-A MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-A |
| EMC MORTGAGE LOAN TRUST 2005-B MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-B |
| EMC MORTGAGE LOAN TRUST 2006-A MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-A |
| FCDB FF1 2008-1 TRUST |
| First Franklin Mortgage Loan Trust 2005-FFH2 NIM |
| First Franklin Mortgage Loan Trust 2007- 3 NIM |
| First Franklin Mortgage Loan Trust 2007-1 NIM |
| First Franklin Mortgage Loan Trust 2007-2 NIM |
| First Franklin Mortgage Loan Trust 2007-4 NIM |
| First Franklin Mortgage Loan Trust 2007-5 NIM |
| First Franklin Mortgage Loan Trust 2007-FF1-FF2 |
| First Franklin Mortgage Loan Trust 2007-H1 NIM |
| First Franklin Mortgage Loan Asset Backed Certificates 2006-FF18 |
| First Franklin Mortgage Loan Asset Backed Certificates 2007-FF1 |
| First Franklin Mortgage Loan Asset Backed Certificates 2007-FF2 |
| First Franklin Mortgage Loan Asset Backed Certificates 2007-FFA |
| First Franklin Mortgage Loan Asset Backed Certificates 2007-FFC |
| First Franklin Mtg Loan Asset Backed Certificates 2005-FFH2 |
| FCDB DBPL 2008-1 TRUST |
| FCDB DBPL 2008-2 TRUST |
| FCDB GMPL 2008-1 TRUST |
| FCDB LBPL 2008-1 TRUST |
| FCDB LBPL 2008-2 TRUST |
| FCDB MLPL 2008-1 TRUST |
| FCDB MLPL 2008-2 TRUST |
| FCDB NCPL 2008-1 TRUST |
| Power Express REO Trust 2008-1 |
| Power Express REO Trust 2008-2 |
| FRFT 2004-1 Trust |
| FRFT 2004-2 Trust |
| FRFT 2004-3 Trust |
| FRFT 2004-4 TRUST |
| FRFT 2004-5 Trust |
| FRFT 2005-1 Trust |
| FRFT 2005-2 Trust |
| Kondaur Capital Trust Series 2008-1 |
| Kondaur Capital Trust Series 2008-2 |
| Kondaur Capital Trust Series 2008-3 |
| Kondaur Capital Trust Series 2009-1 |
| LEHMAN ABS CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-1 |
| GREENPOINT MORTGAGE FUNDING TRUST 2005-HE3, ASSET-BACKED CERTIFICATES, SERIES 2005-HE3 |

| LEHMAN ABS CORPORATION, HOME EQUITY LOAN ASSET-BACKED NOTES, SERIES 2005-1 |
| --- |
| Lehman XS Trust Mortgage Pass-Through Certificates, Series 2005-2 |
| Lehman XS Trust Mortgage Pass-Through Certificates, Series 2005-4 |
| Lehman XS Trust Mortgage Pass-Through Certificates, Series 2006-8 |
| Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-10H |
| Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-9 |
| Mortgage Equity Conversion Asset Trust 2006-SFG1 Mortgage-Backed Notes, Series 2006-SFG1 |
| Mortgage Equity Conversion Asset Trust 2006-SFG2 Mortgage-Backed Notes, Series 2006-SFG2 |
| Mortgage Equity Conversion Asset Trust 2006-SFG3 Mortgage-Backed Notes, Series 2006-SFG3 |
| Mortgage Equity Conversion Asset Trust 2007-FF1 Mortgage-Backed Notes, Series 2007-FF1 |
| Mortgage Equity Conversion Asset Trust 2007-FF2 Mortgage-Backed Notes, Series 2007-FF2 |
| Mortgage Equity Conversion Asset Trust 2007-FF3 Mortgage-Backed Notes, Series 2007-FF3 |
| MLMI Cayman NIM 2006-AR1, Ltd. Net Interest Margin Fixed Rate Notes, Series 2006-AR1 |
| MLMI Cayman NIM 2007-HE1, Ltd. Net Interest Margin Fixed Rate Notes, Series 2007-HE1 |
| MLMI Cayman NIM 2007-HE2, Ltd. Net Interest Margin Fixed Rate Notes, Series 2007-HE2 |
| Merrill Lynch First Franklin Mortgage Loan Trust Motgage Loan Asset-Backed Certificates, Series 2007-1 |
| Merrill Lynch First Franklin Mortgage Loan Trust Mortgage Loan Asset-Backed Certificates, Series 2007-2 |
| Merrill Lynch First Franklin Mortgage Loan Trust Mortgage Loan Asset-Backed Certificates, Series 2007-3 |
| Merrill Lynch First Franklin Mortgage Loan Trust Mortgage Loan Asset-Backed Certificates, Series 2007-4 |
| Merrill Lynch First Franklin Mortgage Loan Trust Mortgage Loan Asset-Backed Certificates, Series2007-5 |
| Merrill Lynch First Franklin Mortgage Loan Trust Mortgage Loan Asset-Backed Certificates, Series 2007-A |
| Merrill Lynch First Franklin Mortgage Loan Trust Mortgage Loan Asset-Backed Certificates, Series 2007-H1 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-HE4 |
| MLMI Trust 2002-AFC1 Asset-Backed Certificates, Series 2002-AFC1 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2005-SL3 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-AHL1 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-AR1 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-FF1 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-FM1 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-HE3 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-HE6 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-RM1 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-RM3 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-RM4 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-WMC2 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2007-HE3 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2007-SD1 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-RM5 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-MLN1 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2007-HE1 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-OPT1 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-HE2 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-RM2 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-SL1 |
| Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-SD1 |
| Morgan Stanley Mortgage Loan Trust 2006-10SL Mortgage Pass-Trhough Certificates, Series 2006-10SL |
| Morgan Stanley Mortgage Loan Trust 2006-14SL Mortgage Pass-Trhough Certificates, Series 2006-14SL |

| |
|---|
| Morgan Stanley Mortgage Loan Trust 2006-4SL Mortgage Pass-Through Certificates, Series 2006-4SL |
| Morgan Stanley Mortgage Loan Trust 2007-9SL Mortgage Pass-Through Certificates, Series 2007-9SL |
| Morgan Stanley Mortgage Re-REMIC Trust 2009-R1 Re-REMIC Pass-Through Certificates, Series 2009-R1 |
| Morgan Stanley Mortgage Loan Trust 2006-7SL Mortgage Pass-Through Certificates, Series 2007-4SL |
| Nomura Asset Securities Corporation Mortgage Pass-Through Certificates, Series 1994-3 |
| Old Canal Bridge I Trust |
| Origen Manufactured Housing Contract Senior/Subordinate Asset-Backed Certificates, Series 2001-A |
| Ownit Mortgage Loan Asset Backed Certificates 2006-3 |
| Ownit Mortgage Loan Asset Backed Certificates 2006-4 |
| Ownit Mortgage Loan Asset Backed Certificates 2006-5 |
| Ownit Mortgage Loan Asset Backed Certificates 2006-6 |
| Ownit Mortgage Loan Asset Backed Certificates 2006-7 |
| Structured Asset Mortgage Investment II Inc., Prime Mortgage Trust, Mortgage Pass-Through Certificates, Series 2004-CL1 |
| Prime 2004-CL1A, Pass-Through Certificates, Series 2004-CL1A |
| Structured Asset Mortgage Investment II Inc.,Prime Mortgage Trust, Mortgage Pass-Through Certificates, Series 2004-CL2 |
| RAMP 2007-RZ1 NIM Trust |
| Home Loan-Backed Notes, Series 2007-HI1 |
| Home Equity Loan-Backed Term Notes, Series 2007-HSA1 |
| Riverview HECM Pass-Through Certificates, Series 2008-1 |
| MCMCAP Homeowners' Advantage Trust I |
| MCMCAP Homeowners' Advantage Trust II |
| MCMCAP Homeowners' Advantage Trust III |
| MCMCAP Homeowners' Advantage Trust IV |
| SACO I Trust 2005-WM1 Mortgage-Backed Certificates, Series 2005-WM1 |
| SACO I TRUST 2005-WM2 MORTGAGE-BACKED CERTIFICATES, SERIES 2005-WM2 |
| SACO I TRUST 2005-WM3 MORTGAGE-BACKED CERTIFICATES, SERIES 2005-WM3 |
| SACO I Trust 2006-3 Mortgage-Backed Certificates, Series 2006-3 |
| SACO I Trust 2005-6 Mortgage-Backed Certificates, Series 2005-6 |
| SACO I Trust 2005-9 Mortgage-Backed Certificates, Series 2005-9 |
| SACO I Trust 2006-4 Mortgage-Backed Certificates, Series 2006-4 |
| Salomon Brothers Mortgage Securities VII, Inc. Mortgage Pass-Through Certificates, Series 1997-HUD2 |
| Structured Asset Securities Corporation, Mortgage pass-Through Certificates Series 2003-4 |
| SASCO NET INTEREST MARGIN NOTES, SERIES 2004-11XS, CLASS A AND CLASS S |
| STRUCTURED ASSET SECURITIES CORPORATION, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-13 |
| SASCO NET INTEREST MARGIN NOTES, SERIES 2004-21XS, CLASS A |
| SASCO NET INTEREST MARGIN NOTES, SERIES 2004-9XS, CLASS A, CLASS B AND CLASS S |
| STRUCTURED ASSET SECURITIES CORPORATION, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-3 |
| SASCO Net Interest Margin Notes, Series 2005A-XS, Class A, Class B1A and Class B1B |
| SASCO Net Interest Margin Notes, Series 2005-NC1, Class A and Class B |
| STRUCTURED ASSET SECURITIES CORPORATION, REVERSE MORTGAGE LOAN TRUST 2005-RM1, |
| STRUCTURED ASSET SECURITIES CORPORATION, Pass-Through Certificates, Series 2006-4 |
| STRUCTURED ASSET SECURITIES CORPORATION, MORTGAGE PASS-THROUGH CERTIFICATES, Series 2006-RF1 |
| SASCO Net Interest Margin Notes, Series 2005-7XS, Class A and Class B |
| SHARPS SP I LLC Net Interest Margin 2007-RS1N Notes, Series 2007-RS1N |
| STRUCTURED ASSET SECURITIES CORPORATION, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2002-10H |
| STRUCTURED ASSET SECURITIES CORPORATION, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2002-17 |
| Structured Asset Securities Corporation Mortgage Pass-Through Certificates, eries 2005-7XS |

| |
|---|
| Terwin Cayman NIM 2006-17, Ltd., Net Interest Margin Notes, Series 2006-17HE, Class N |
| Terwin Cayman NIM 2006-9, Ltd. |
| Terwin Cayman NIM 2007-2, Ltd. |
| Terwin Mortgage Trust 2004-EQR1 Mortgage Backed Notes, Series 2004-EQR1 |
| Terwin Cayman NIM 2007-4, Ltd. |
| Thornburg Mortgage Securities Trust 2005-02 |
| Thornburg Mortgage Securities Trust 2006-03 |
| Thornburg Mortgage Securites Trust 2007-3 |
| Thornburg Mortgage Securities Trust 2007-1 |
| Thornburg Mortgage Securities Trust 2007-2 |
| Thornburg Mortgage Securities Trust 2007-4 |
| Thornburg Mortgage Securities Trust 2007-5 |
| WaMu Mortgage Pass-Through Certificates, Series 2007-HY4 Trust |
| WaMu Mortgage Pass-Through Certificates, Series 2007-HY5 Trust |
| WaMu Mortgage Pass- Through Certificates, Series 2007-OA1 Trust |
| Wamu Alternative Mortgage Pass-Through Certificates 2006-8 |
| Wamu Alternative Mortgage Pass-Through Certs 2005-11 |
| Wamu Alternative Mortgage Pass-Through Certs 2005-6 |
| Wamu Alternative Mortgage Pass-Through Certs 2005-7 |
| Wamu Alternative Mortgage Pass-Through Certs 2005-8 |
| Wamu Alternative Mortgage Pass-Through Certs 2006-1 |
| Wamu Alternative Mortgage Pass-Through Certs 2006-3 |
| Wamu Alternative Mortgage Pass-Through Certs 2006-AR2 |
| WaMu Mortgage Pass-Through Certificates, Series 2005-AR12 Trust |
| WaMu Mortgage Pass-Through Certificates, Series 2005-AR15 Trust |
| WaMu Mortgage Pass-Through Certificates, Series 2005-AR19 Trust |
| WaMu Mortgage Pass-Through Certificates, Series 2005-AR5 Trust |
| WaMu Mortgage Pass Through Certificates 2006-AR14 |
| WaMu Mortgage Pass Through Certificates 2006-AR15 |
| WaMu Mortgage Pass-Through Certificates, Series 2006-AR18 Trust |
| WaMu Mortgage Pass Through Certificates 2006-AR8 |
| WaMu Mortgage Pass Through Certificates 2006-AR9 |
| WaMu Mortgage Pass-Through Certificates, Series 2007-HY1 Trust |
| WaMu Mortgage Pass-Through Certificates, Series 2007-HY2 Trust |
| WaMu Mortgage Pass-Through Certificates, Series 2007-HY3 Trust |
| WaMu Mortgage Pass-Through Certificates, Series 2007-HY6 Trust |
| WaMu Mortgage Pass-Through Certificates, Series 2007-HY7 Trust |
| WaMu Mortgage Pass- Through Certificates, Series 2007-OA3 Trust |
| WaMu Mortgage Pass- Through Certificates, Series 2007-OA6 Trust |
| WaMu Mortgage Pass-Through Certificates, Series 2005-AR14 Trust |
| Washington Mutual Alternative Mortgage Pass-Through Certificates 2005-3 |
| Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2005-9 |
| Washington Mutual Alternative Mortgage Pass-Through Certificates 2005-AR1 |
| Washington Mutual Alternative Mortgage Pass-Through Certificates 2006-2 |
| Washington Mutual Mortgage Pass-Through Certificates WMALT Series 2006-AR10 Trust |
| Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2007-1 |
| Washington Mutual Alternative Mortgage Pass-Through Certificates 2007-HY1 |

Received for Record at West Hartford, CT
On 03/10/2011 At 11:30:07 am

Essic S. Ledrot

| |
|---|
| Washington Mutual Alternative Mortgage Pass-Through Certificates 2007-OC2 |
| Washington Mutual Asset-Backed Certificates WMABS Series 2006-HE1 |
| Washington Mutual Asset-Backed Certificates WMABS Series 2006-HE2 |
| Washington Mutual Asset-Backed Certificates WMABS Series 2006-HE3 |
| Washington Mutual Asset-Backed Certificates WMABS Series 2006-HE4 |
| Washington Mutual Asset-Backed Certificates WMABS Series 2006-HE5 |
| Washington Mutual Asset-Backed Certificates WMABS Series 2007-HE1 |
| Washington Mutual Asset-Backed Certificates WMABS Series 2007-HE2 |
| WaMu Mortgage Pass-Through Certificates, Series 2005-AR17 Trust |
| WaMu Mortgage Pass-Through Certificates, Series 2006-AR10 Trust |
| WaMu Mortgage Pass-Through Certificates, Series 2006-AR11 Trust |
| WaMu Mortgage Pass-Through Certificates, Series 2006-AR12 Trust |
| WaMu Mortgage Pass-Through Certificates, Series 2006-AR17 Trust |
| WaMu Mortgage Pass-Through Certificates, Series 2006-AR19 Trust |
| WaMu Mortgage Pass-Through Certificates Series 2006-AR6 Trust |
| WaMu Mortgage Pass-Through Certificates Series 2006-AR7 Trust |
| WaMu Mortgage Pass- Through Certificates, Series 2007-OA2 Trust |
| WaMu Mortgage Pass- Through Certificates, Series 2007-OA4 Trust |
| WaMu Mortgage Pass- Through Certificates, Series 2007-OA5 Trust |
| WaMu Mortgage Pass-Through Certificates, Series 2006-AR13 Trust |
| Washington Mutual Mortgage Pass-Through Certificates WMALT Series 2006-AR 3 Trust |
| Washington Mutual Mortgage Securities Corp. WaMu Mortgage Pass-Through Certificates Series 2004-AR14 |
| WaMu Mortgage Pass-Through Certificates Series 2004-CB4 Trust |
| WaMu Mortgage Pass-Through Certificates, Series 2005-AR3 Trust |
| WaMu Mortgage Pass-Through Certificates, Series 2005-AR7 Trust |
| Washington Mutual MSC Mortgage Pass-Through Certificates, Series 2004-RA4 Trust |
| Washington Mutual MSC Mortgage Pass-Through Certificates, Series 2005-RA1 |
| WaMu Mortgage Pass-Through Certificates, Series 2005-AR10 Trust |
| WaMu Asset Acceptance Corp. WaMu Mortgage Pass- Through Certificates Series 2006-AR16 |
| WaMu Asset Acceptance Corp. WaMu Mortgage Pass-Through Certificates Series 2006- AR2 |
| Washington Mutual Mortgage Securities Corp. Washington Mutual Mortgage Pass-Through Certificates WMAL T Series 2005-1 |
| Washington Mutual Mortgage Securities Corp. Washington Mutual Mortgage Pass-Through Certificates WMAL T Series 2005-2 |
| Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2006-9 |
| Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2007-4 |
| Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2007-5 |
| WaMu Asset Acceptance Corp. Washington Mutual Mortgage Pass-Through Certificates WMALT Series 2007-HY2 |
| Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2007-OA5 |
| WaMu Asset Acceptance Corp. Washington Mutual Mortgage Pass-Through Certificates WMAL T Series 2007 -OC 1 |
| Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2006-6 |
| Waterfall Victoria Master Fund 2008-1 Grantor Trust, Series A |
| Waterfall Victoria Master Fund 2008-1 Grantor Trust, Series B |
| Wells Fargo Home Equity Trust Mortgage Pass-Through Certificates, Series 2004-1 |
| WMABS CI NIM Notes Series 2006-HE1, Class N-1 Notes, Class N-2 Notes |
| WMABS CI NIM Notes Series 2006-HE2, Class N-1 Notes, Class N-2 Notes |
| WMABS CI NIM Notes Series 2006-HE3, Class N-1 Notes, Class N-2 Notes |
| WMABS CI NIM Notes Series 2006-HE4, Class N-1 Notes, Class N-2 Notes |
| WMABS CI NIM Notes Series 2006-HE5, Class N-1 Notes, Class N-2 Notes |

| |
|---|
| WMABS NIM Notes Series 2007-HE1 |
| Washington Mutual Mortgage Securities Corp. Washington Mutual Mortgage Pass-Through Certificates WMAL T Series 2005-5 |
| Washington Mutual Mortgage Securities Corp. Washington Mutual Mortgage Pass-Through Certificates WMAL T Series 2005-10 |
| Washington Mutual Mortgage Securities Corp. Washington Mutual Mortgage Pass-Through Certificates WMAL T Series 2005-4 |
| Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2006-4 |
| Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2006-7 |
| Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2006-AR6 |

# EXHIBIT 4

# SPS | SELECT Portfolio SERVICING, inc.

## Payment History Report

**Current Principal Bal: 593,652.02**     **Next Pay Date: 09/01/2008**

Print Date: 9/24/2019

DATA VERIFIED



| Tran Pmt Due | Tran | Tran Amt Life Pmt | Escrow Amt | Corp Adv. Amt | P & I Pmt Misc. Pmt | Escrow Payee CD | Escrow Pmt Payee | Fee Pmt | Fee Code | Corp Adv Payee | Unapplied | Corp Adv. Acct. Rest. Escrow | A & H Pmt Corp Adv Reason | Partial Prin Pmt | Partial Int Pmt | Pmt Effective | MSP Bank | MSP Bank Cat | MSP Cat |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 09/06/2019 | 631 | 15.00 | | | RRR | | RESIDENTIAL REAL ESTATE | | | | | 7ST80 | INSP | | | | CZ1 | 001 | |
| 09/01/2019 | 601 | 1.50 | | | | | | | | | | 0ST05 | | | | | CZ1 | 001 | |
| 08/16/2019 | 766 | 1.50 | | | | 60001 | SELECT PORTFOLIO ESCROW | | | | | 0ST05 | TXMF | | | | CZ1 | 001 | |
| 08/05/2019 | 631 | 15.00 | | | | 60001 | SELECT PORTFOLIO ESCROW | | | | | 0ST05 | TXMF | | | | CZ1 | 001 | |
| | 163 | 1,236.11 | | | | | | | | | | | | | | | CZ1 | 001 | |
| | 168 | -1,236.11 | | | | | | | | | | | | | | | CZ1 | 001 | |
| 08/30/2019 | 745 | 100.00 | | | | | | | | | | 0ST05 | FATT | | | | CZ1 | 001 | |
| 08/30/2019 | 745 | 100.00 | | | | | | | | | | 0ST05 | FATT | | | | CZ1 | 001 | |
| 08/30/2019 | 630 | 100.00 | | | | | | | | ATCAMCCART | | 01R01 | FATT | | | | CZ1 | 001 | |
| | | -100.00 | | | | | | | | | | 01R01 | FATT | | | | CZ1 | 001 | |
| | 601 | 0.16 | | | | | | | | | | | FICQ | | | | CZ1 | 001 | |
| | 631 | 15.00 | | | RRR | | RESIDENTIAL REAL ESTATE | | | | | | INSP | | | | CZ1 | 001 | |
| 08/16/2019 | 766 | 1.50 | | | | | | | | | | | TXMF | | | | CZ1 | 001 | |
| | 601 | 1.50 | | | | 60001 | SELECT PORTFOLIO ESCROW | | | | | 0ST05 | TXMF | | | | CZ1 | 001 | |
| 07/19/2019 | 161 | 1,236.11 | | | | | | | | MCCARTHY & HOLTHIUS LLP | | 01R01 | FATT | | | | CZ1 | 001 | |
| 07/17/2019 | 351 | -1,236.11 | 75608 | | | | FARMERS INS GI | | | | | | | | | | CZ1 | 001 | |

The contents of this document are RESTRICTED to authorized individuals.
Any unauthorized access, use or duplication is strictly prohibited.

# Payment History Report

Print Date: 9/24/2019

**Current Principal Bal: 593,652.02**    **Next Pay Date: 09/01/2008**

| Tran | Pmt Due | Tran Amt / Escrow Amt | Escrow Payee CD | Corp Adv Payee / Fee Pmt | Corp Adv Acct / Rest. Escrow | Corp Adv Reason / A & H Pmt | Pmt Effective | MSP Bank | MSP Cat |
|---|---|---|---|---|---|---|---|---|---|
| 601 | 6/21/2019 | 1.50 | 60001 | SELECT PORTFOLIO ESCROW | 05T05 | TXMF | | CZ1 | 001 |
| 766 | 7/15/2019 | 1.50 | | | 05T05 | TXMF | | CZ1 | 001 |
| 631 | | 15.00 | RRR | RESIDENTIAL REAL ESTATE | 75T80 | INSP | | CZ1 | 001 |
| 601 | 6/17/2019 | 1.50 | 60001 | SELECT PORTFOLIO ESCROW | 05T05 | TXMF | | CZ1 | 001 |
| 766 | | 1.50 | | | 05T05 | TXMF | | CZ1 | 001 |
| 631 | 6/3/2019 | 15.00 | RRR | RESIDENTIAL REAL ESTATE | 75T80 | INSP | | CZ1 | 001 |
| 632 | | 34.00 | ATCAMCCART | MCCARTHY & HOLTHUS LLP | 01R01 | FCST | | CZ1 | 001 |
| 631 | 5/14/2019 | 15.00 | RRR | RESIDENTIAL REAL ESTATE | 75T80 | INSP | | CZ1 | 001 |
| 601 | 5/3/2019 | 1.50 | 60001 | SELECT PORTFOLIO ESCROW | 05T05 | TXMF | | CZ1 | 001 |
| 766 | | 1.50 | | | 05T05 | TXMF | | CZ1 | 001 |
| 631 | | 100.00 | ATCAMCCART | MCCARTHY & HOLTHUS LLP | 01R01 | FATT | | CZ1 | 001 |
| 745 | | 100.00 | | | 05T05 | FATT | | CZ1 | 001 |
| 745 | | -100.00 | | | 01R01 | FATT | | CZ1 | 001 |
| 630 | 6/1/2019 | 15.00 | RRR | RESIDENTIAL REAL ESTATE | 75T80 | INSP | | CZ1 | 001 |
| 601 | | 0.16 | | | 05T05 | FICQ | | CZ1 | 001 |
| 631 | 4/22/2019 | 89.00 | RRR | RESIDENTIAL REAL ESTATE | 75T80 | FBPO | | CZ1 | 001 |
| 632 | | 407.10 | ATCAMCCART | MCCARTHY & HOLTHUS LLP | 01R01 | FCST | | CZ1 | 001 |
| 631 | 4/10/2019 | 15.00 | RRR | RESIDENTIAL REAL ESTATE | 75T80 | INSP | | CZ1 | 001 |
| 601 | | 1.50 | 60001 | SELECT PORTFOLIO ESCROW | 05T05 | TXMF | | CZ1 | 001 |
| 766 | 3/26/2019 | 1.50 | | | 05T05 | TXMF | | CZ1 | 001 |
| 631 | | 15.00 | RRR | RESIDENTIAL REAL ESTATE | 75T80 | INSP | | CZ1 | 001 |
| 601 | 3/20/2019 | 1.50 | 60001 | SELECT PORTFOLIO ESCROW | 05T05 | TXMF | | CZ1 | 001 |
| 766 | | 1.50 | | | 05T05 | TXMF | | CZ1 | 001 |

The contents of this document are RESTRICTED to authorized individuals.
Any unauthorized access, use or duplication is strictly prohibited.

# Payment History Report

Print Date: 9/24/2019

Current Principal Bal: 593,652.02     Next Pay Date: 09/01/2008

| Tran | Pmt Due | Tran Amt Life Pmt | P & I Pmt Escrow Pmt | Pmt Misc. Pmt | Escrow Pmt | Escrow Amt Payee CD | Corp Adv. Escrow Payee | Fee Pmt | Fee Code | Corp Adv Payee | Unapplied | Corp Adv Acct. Rest. Escrow | Corp Adv Reason A & H Pmt | Partial Prin Pmt | Partial Int Pmt | Pmt Effective | MSP Bank MSP Cat | MSP Bank | MSP Cat |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 161 | 3/15/2019 | 3,573.45 | | | | | | | | | | | | | | | CZ1 | 001 | |
| 312 | 3/01/2019 | -3,573.45 04037 | | | LOS ANGELES CC | | | | | | | | FICO | | | | CZ1 | 001 | |
| 745 | 3/01/2019 | -0.16 | | | | | | | | | | 0ST0S | FICO | | | | CZ1 | 001 | |
| 531 | 2/25/2019 | 15.00 | | RRR | | | RESIDENTIAL REAL ESTATE | | | | | 75T80 | INSP | | | | CZ1 | 001 | |
| 631 | 2/25/2019 | 18.30 | | ROTXCBC | | | CBC INNOVIS | | | | | 0ST0S | MCBR | | | | CZ1 | 001 | |
| 601 | 2/22/2019 | 0.16 | | | | | | | | | | 0ST0S | FICO | | | | CZ1 | 001 | |
| 601 | 2/20/2019 | 1.50 | | 60001 | | | SELECT PORTFOLIO ESCROW | | | | | 0ST0S | TXMF | | | | CZ1 | 001 | |
| 766 | 1/29/2019 | 1.50 | | | | | | | | | | 0ST0S | TXMF | | | | CZ1 | 001 | |
| 601 | 1/29/2019 | 1.50 | | 60001 | | | SELECT PORTFOLIO ESCROW | | | | | 0ST0S | TXMF | | | | CZ1 | 001 | |
| 766 | 1/16/2019 | 1.50 | | | | | | | | | | 0ST0S | TXMF | | | | CZ1 | 001 | |
| 531 | 12/13/2018 | 89.00 | | RRR | | | RESIDENTIAL REAL ESTATE | | | | | 75T80 | FBPO | | | | CZ1 | 001 | |
| 631 | 12/11/2018 | 40.00 | | RRR | | | RESIDENTIAL REAL ESTATE | | | | | 75T80 | INSP | | | | CZ1 | 001 | |
| 530 | 11/28/2018 | 215.00 | | ATCAMCCART | | | MCCARTHY & HOLTHUS LLP | | | | | 0ST0S | BATT | | | | CZ1 | 001 | |
| 601 | 11/27/2018 | 225.00 | | RRR | | | RESIDENTIAL REAL ESTATE | | | | | 0ST0S | VPRC | | | | CZ1 | 001 | |
| 766 | 11/27/2018 | 1.50 | | 60001 | | | SELECT PORTFOLIO ESCROW | | | | | 0ST0S | TXMF | | | | CZ1 | 001 | |
| 601 | 11/20/2018 | 1.50 | | 60001 | | | SELECT PORTFOLIO ESCROW | | | | | 0ST0S | TXMF | | | | CZ1 | 001 | |
| 632 | 11/20/2018 | 190.82 | | ATCAMCCART | | | MCCARTHY & HOLTHUS LLP | | | | | 0ST0S | BCST | | | | CZ1 | 001 | |
| 630 | 11/20/2018 | 600.00 | | ATCAMCCART | | | MCCARTHY & HOLTHUS LLP | | | | | 0ST0S | BATT | | | | CZ1 | 001 | |
| 601 | 11/19/2018 | 0.16 | | | | | | | | | | 0ST0S | FICO | | | | CZ1 | 001 | |
| 161 | | 3,573.45 | | | | | | | | | | | | | | | CZ1 | 001 | |
| 312 | | -3,573.45 04037 | | | LOS ANGELES CC | | | | | | | | | | | | CZ1 | 001 | |

The contents of this document are RESTRICTED to authorized individuals. Any unauthorized access, use or duplication is strictly prohibited.

# Payment History Report

Print Date: 9/24/2019

Current Principal Bal: 593,652.02          Next Pay Date: 09/01/2008

The contents of this document are RESTRICTED to authorized individuals.
Any unauthorized access, use or duplication is strictly prohibited.

Report_PaymentHistory_SP

| Tran | Pmt Due | Tran Amt / Life Pmt | P & I Pmt / Misc. Pmt | Escrow Pmt | Corp Adv. Escrow Amt | Corp Adv Payee CD / Escrow Payee CD | Corp Adv Payee Amt / Escrow Payee | Fee Pmt / Corp Adv Payee | Fee Code | Fee Pmt | Unapplied | Corp Adv Acct. / Rest. Escrow | Corp Adv Reason / A & H Pmt | Partial Prin Pmt | Partial Int Pmt | Pmt Effective | MSP Bank / MSP Bank Cat |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 601 | | 18.30 | ROTXCBC | | | | | CBC INNOVIS | | | | 0ST05 | MCBR | | | | CZI 001 |
| 601 | | 1.80 | | | | | | | | | | 0ST05 | BCST | | | | CZI 001 |
| 601 | | 3.00 | | | | | | | | | | 0ST05 | BCST | | | | CZI 001 |
| 601 | | 0.30 | | | | | | | | | | 0ST05 | BCST | | | | CZI 001 |
| 601 | | 0.10 | | | | | | | | | | 0ST05 | BCST | | | | CZI 001 |
| 601 | | 1.50 | | | | | | | | | | 0ST05 | BCST | | | | CZI 001 |
| 601 | 11/16/2018 | 1.50 | | | | | 60001 | SELECT PORTFOLIO ESCROW | | | | 0ST05 | TXMF | | | | CZI 001 |
| 766 | | 1.50 | | | | | | | | | | 0ST05 | TXMF | | | | CZI 001 |
| 630 | 11/22/2018 | 250.00 | | | | ATCAMCCART | | MCCARTHY & HOLTHUS LLP | | | | 0ST05 | BATT | | | | CZI 001 |
| 631 | 11/30/2018 | 89.00 | | | | RRR | | RESIDENTIAL REAL ESTATE | | | | 7ST80 | FBPO | | | | CZI 001 |
| 631 | 11/01/2018 | 250.00 | | | | ATCAMCCART | | MCCARTHY & HOLTHUS LLP | | | | 7ST80 | INSP | | | | CZI 001 |
| 630 | 11/05/2018 | 15.00 | | | | RRR | | RESIDENTIAL REAL ESTATE | | | | 7ST80 | INSP | | | | CZI 001 |
| 630 | 11/06/2018 | 215.00 | | | | ATCAMCCART | | MCCARTHY & HOLTHUS LLP | | | | 0ST05 | BATT | | | | CZI 001 |
| 632 | | 2.10 | | | | ATCAMCCART | | MCCARTHY & HOLTHUS LLP | | | | 0ST05 | BCST | | | | CZI 001 |
| 630 | | 860.00 | | | | ATCAMCCART | | MCCARTHY & HOLTHUS LLP | | | | 0ST05 | BATT | | | | CZI 001 |
| 630 | 10/10/2018 | 430.00 | | | | ATCAMCCART | | MCCARTHY & HOLTHUS LLP | | | | 0ST05 | BATT | | | | CZI 001 |
| 632 | 10/08/2018 | 6.41 | | | | ATCAMCCART | | MCCARTHY & HOLTHUS LLP | | | | 0ST05 | BCST | | | | CZI 001 |
| 601 | 10/02/2018 | 0.10 | | | | | | | | | | 0ST05 | BCST | | | | CZI 001 |
| 601 | | 0.70 | | | | | | | | | | 0ST05 | BCST | | | | CZI 001 |
| 601 | | 1.50 | | | | | | 60001 | SELECT PORTFOLIO ESCROW | | | | 0ST05 | TXMF | | | CZI 001 |
| 631 | 09/25/2018 | 15.00 | | | | RRR | | RESIDENTIAL REAL ESTATE | | | | 7ST80 | INSP | | | | CZI 001 |
| 631 | 09/19/2018 | 89.00 | | | | RRR | | RESIDENTIAL REAL ESTATE | | | | 7ST80 | FBPO | | | | CZI 001 |

# Payment History Report

Print Date: 9/24/2019

**Current Principal Bal: 593,652.02**     **Next Pay Date: 09/01/2008**

| Tran | Pmt Due | Tran Amt Life Pmt | P & I Pmt Misc. Pmt | Escrow Pmt | Escrow Amt | Corp Adv. Payee CD | Corp Adv Payee CD | Fee Pmt / Corp Adv Payee | Fee Code | Unapplied | Corp Adv Acct. / Rest. Escrow | A & H Pmt / Corp Adv Reason | Partial Prin Pmt | Partial Int Pmt | Pmt Effective | MSP Bank | MSP Cat |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | **09/11/2018** | | | | | | | | | | | | | | | |
| 601 | | 1.50 | | | | | | | | | 05T05 | BCST | | | | CZ1 | 001 |
| | | **09/10/2018** | | | | | | | | | | | | | | | |
| 766 | | 1.50 | | | 60001 | | | SELECT PORTFOLIO ESCROW | | | 05T05 | TXMF | | | | CZ1 | 001 |
| 601 | | 0.25 | | | | | | | | | 05T05 | BCST | | | | CZ1 | 001 |
| | | **09/07/2018** | | | | | | | | | | | | | | | |
| 601 | | 0.25 | | | | | | | | | 05T05 | BCST | | | | CZ1 | 001 |
| 601 | | 0.10 | | | | | | | | | 05T05 | BCST | | | | CZ1 | 001 |
| 601 | | 0.50 | | | | | | | | | 05T05 | BCST | | | | CZ1 | 001 |
| 601 | | 0.10 | | | | | | | | | 05T05 | BCST | | | | CZ1 | 001 |
| 601 | | 0.35 | | | | | | | | | 05T05 | BCST | | | | CZ1 | 001 |
| 601 | | 3.00 | | | | | | | | | 05T05 | BCST | | | | CZ1 | 001 |
| 601 | | 0.70 | | | | | | | | | 05T05 | BCST | | | | CZ1 | 001 |
| 601 | | 0.70 | | | | | | | | | 05T05 | BCST | | | | CZ1 | 001 |
| 601 | | 1.50 | | | | | | | | | 05T05 | BCST | | | | CZ1 | 001 |
| 601 | | 0.10 | | | | | | | | | 05T05 | BCST | | | | CZ1 | 001 |
| 601 | | 0.10 | | | | | | | | | 05T05 | BCST | | | | CZ1 | 001 |
| 601 | | 0.70 | | | | | | | | | 05T05 | BCST | | | | CZ1 | 001 |
| 601 | | 0.70 | | | | | | | | | 05T05 | BCST | | | | CZ1 | 001 |
| 601 | | 1.50 | | | | | | | | | 05T05 | BCST | | | | CZ1 | 001 |
| 601 | | 0.10 | | | | | | | | | 05T05 | BCST | | | | CZ1 | 001 |
| 601 | | 0.35 | | | | | | | | | 05T05 | BCST | | | | CZ1 | 001 |
| 601 | | 0.10 | | | | | | | | | 05T05 | BCST | | | | CZ1 | 001 |
| 601 | | 0.50 | | | | | | | | | 05T05 | BCST | | | | CZ1 | 001 |
| 601 | | 0.10 | | | | | | | | | 05T05 | BCST | | | | CZ1 | 001 |
| 601 | | 0.25 | | | | | | | | | 05T05 | BCST | | | | CZ1 | 001 |
| | | **09/05/2018** | | | | | | | | | | | | | | | |
| 601 | | 0.10 | | | | | | | | | 05T05 | BCST | | | | CZ1 | 001 |
| 601 | | 2.80 | | | | | | | | | 05T05 | BCST | | | | CZ1 | 001 |
| | | **08/21/2018** | | | | | | | | | | | | | | | |
| 3 | | 15.00 | | | RRR | | | RESIDENTIAL REAL ESTATE | | | 75T80 | INSP | | | | CZ1 | 001 |
| | | **08/20/2018** | | | | | | | | | | | | | | | |
| 631 | | 1.50 | | | | | | | | | 05T05 | BCST | | | | CZ1 | 001 |

The contents of this document are RESTRICTED to authorized individuals.
Any unauthorized access, use or duplication is strictly prohibited.

# Payment History Report

Print Date: 9/24/2019

Current Principal Bal: 593,652.02          Next Pay Date: 09/01/2008

| Tran | Pmt Due | Tran Amt / Life Pmt | P & I Pmt / Misc. Pmt | Escrow Payee CD | Escrow Payee | Corp Adv Payee CD | Corp Adv Payee | Corp Adv Escrow Acct / Rest. Escrow | A & H Pmt / Corp Adv Reason | Pmt Effective | MSP Bank | MSP Cat |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 601 | 08/08/2018 | 0.16 | | | | | | 0STO5 | FICO | | CZ1 | 001 |
| 601 | | 1.50 | | 60001 | SELECT PORTFOLIO ESCROW | | | 0STO5 | TXMF | | CZ1 | 001 |
| 766 | 08/07/2018 | 1.50 | | | | | | 0STO5 | TXMF | | CZ1 | 001 |
| 630 | | 100.00 | | | | ATCAMCCART | MCCARTHY & HOLTHUS LLP | 0STO5 | BATT | | CZ1 | 001 |
| 632 | 07/12/2018 | 2.10 | | | | ATCAMCCART | MCCARTHY & HOLTHUS LLP | 0STO5 | BCST | | CZ1 | 001 |
| 630 | | 250.00 | | | | ATCAMCCART | MCCARTHY & HOLTHUS LLP | 0STO5 | BATT | | CZ1 | 001 |
| 630 | 07/06/2018 | 225.00 | | | | ATCAMCCART | MCCARTHY & HOLTHUS LLP | 0STO5 | BATT | | CZ1 | 001 |
| 630 | | 425.00 | | | | ATCAMCCART | MCCARTHY & HOLTHUS LLP | 0STO5 | BATT | | CZ1 | 001 |
| 632 | 07/04/2018 | 2.89 | | | | ATCAMCCART | MCCARTHY & HOLTHUS LLP | 0STO5 | BCST | | CZ1 | 001 |
| 161 | | 1,193.84 | | | | | | | | | CZ1 | 001 |
| 351 | 07/03/2018 | -1,193.84 75608 | | | FARMERS INS GI | | | | | | CZ1 | 001 |
| 163 | | 1,193.84 | | | FARMERS INS GI | | | | | | CZ1 | 001 |
| 168 | | -1,193.84 | | | | | | | | | CZ1 | 001 |
| 351 | 07/09/2018 | 1,193.84 | | | | | | | | | CZ1 | 001 |
| 161 | | -1,193.84 75608 | | | | | | | | | CZ1 | 001 |
| 631 | 07/17/2018 | 15.00 | | | RRR | | RESIDENTIAL REAL ESTATE | 75T80 | INSP | | CZ1 | 001 |
| 601 | 07/18/2018 | 0.16 | | | | | | 0STO5 | FICO | | CZ1 | 001 |
| 766 | 06/28/2018 | 1.50 | | 60001 | SELECT PORTFOLIO ESCROW | | | 0STO5 | TXMF | | CZ1 | 001 |
| 630 | | 550.00 | | | | ATCAMCCART | MCCARTHY & HOLTHUS LLP | 0STO5 | BATT | | CZ1 | 001 |
| 632 | | 2.10 | | | | ATCAMCCART | MCCARTHY & HOLTHUS LLP | 0STO5 | BCST | | CZ1 | 001 |
| 601 | 06/08/2018 | 1.50 | | 60001 | SELECT PORTFOLIO ESCROW | | | 0STO5 | TXMF | | CZ1 | 001 |

The contents of this document are RESTRICTED to authorized individuals.
Any unauthorized access, use or duplication is strictly prohibited.

Report_PaymentHistory_SP

# Payment History Report

Print Date: 9/24/2019

**Current Principal Bal:** 593,652.02    **Next Pay Date:** 09/01/2008

| Tran | Pmt Due | Tran Amt Life Pmt | P & I Pmt Misc. Pmt | Escrow Pmt | Escrow Payee CD | Escrow Payee | Fee Pmt | Fee Code | Unapplied | Corp Adv Escrow | Rest. Escrow | A & H Pmt | Partial Prin Pmt | Partial Int Pmt | Pmt Effective | MSP Bank | MSP Cat |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 766 | 06/06/2018 | 1.50 | | | | | | | | 0ST05 | | TXMF | | | | CZ1 | 001 |
| 631 | 05/22/2018 | 15.00 | | RRR | | RESIDENTIAL REAL ESTATE | | | | 75780 | | INSP | | | | CZ1 | 001 |
| 766 | 05/22/2018 | 1.50 | 60001 | | SELECT PORTFOLIO ESCROW | | | | 0ST05 | | TXMF | | | | | CZ1 | 001 |
| 601 | 05/15/2018 | 1.50 | | | | | | | | 0ST05 | | TXMF | | | | CZ1 | 001 |
| 532 | 05/04/2018 | 23.75 | | RCMORMG | | RICHMOND MONROE GROUP | | | | 75T28 | | DOCU | | | | CZ1 | 001 |
| 591 | 05/01/2018 | 25.00 | | ATCAMCCART | | MCCARTHY & HOLTHUS LLP | | | | 0ST05 | | FCST | | | | CZ1 | 001 |
| 631 | 04/10/2018 | 15.00 | | RRR | | RESIDENTIAL REAL ESTATE | | | | 75780 | | INSP | | | | CZ1 | 001 |
| 601 | 03/27/2018 | 1.50 | 60001 | | SELECT PORTFOLIO ESCROW | | | | 0ST05 | | TXMF | | | | | CZ1 | 001 |
| 631 | 03/06/2018 | 15.00 | | RRR | | RESIDENTIAL REAL ESTATE | | | | 75780 | | INSP | | | | CZ1 | 001 |
| 745 | | -57.93 | | | | | | | | 01R01 | | FATT | | | | CZ1 | 001 |
| 745 | | 57.93 | | | | | | | | 01R01 | | FATT | | | | CZ1 | 001 |
| 630 | | 250.00 | | ATCAMCCART | | MCCARTHY & HOLTHUS LLP | | | | 01R01 | | FATT | | | | CZ1 | 001 |
| 631 | 03/22/2018 | 89.00 | | RRR | | RESIDENTIAL REAL ESTATE | | | | 75780 | | FBPO | | | | CZ1 | 001 |
| 601 | 03/19/2018 | 0.16 | | | | | | | | 0ST05 | | FICO | | | | CZ1 | 001 |
| 601 | 03/16/2018 | 1.50 | 60001 | | SELECT PORTFOLIO ESCROW | | | | 0ST05 | | TXMF | | | | | CZ1 | 001 |
| 601 | 03/09/2018 | 1.50 | | | | | | | | 0ST05 | | TXMF | | | | CZ1 | 001 |
| 161 | | 3,496.07 | | | | | | | | | | | | | | CZ1 | 001 |
| 312 | 02/21/2018 | -3,496.07 | 04037 | | LOS ANGELES C( | | | | | | | | | | | CZ1 | 001 |
| 601 | | 1.50 | 60001 | | SELECT PORTFOLIO ESCROW | | | | 0ST05 | | TXMF | | | | | CZ1 | 001 |
| 766 | | 1.50 | | | | | | | | 0ST05 | | TXMF | | | | CZ1 | 001 |

The contents of this document are RESTRICTED to authorized individuals.
Any unauthorized access, use or duplication is strictly prohibited.

Report_PaymentHistory_SP

# Payment History Report

Print Date: 9/24/2019

**Payment History Report**

Current Principal Bal: 593,652.02          Next Pay Date: 09/01/2008

The contents of this document are RESTRICTED to authorized individuals.
Any unauthorized access, use or duplication is strictly prohibited.

Report_PaymentHistory_SP

| Tran | Pmt Due | Tran Amt Life Pmt | P & I Pmt Misc. Pmt | Escrow Pmt | Escrow Payee | Fee Pmt | Fee Code | Unapplied | Corp Adv Escrow | A & H Pmt | Partial Prin Pmt | Partial Int Pmt | Pmt Effective | MSP Bank | MSP Cat |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Escrow Amt | Escrow Payee CD | Escrow Payee | | Corp Adv Payee | | | Rest. Escrow | Corp Adv Reason | | | | | |
| | | Corp Adv. Amt | Corp Adv Payee CD | | | | | | Corp Adv Acct. | | | | | MSP Bank | MSP Cat |
| **02/14/2018** | | | | | | | | | | | | | | | |
| 630 | | 50.00 | ATCAMCCART | | | MCCARTHY & HOLTHUS LLP | | | 01R01 | FATT | | | | CZ1 | 001 |
| 631 | | 15.00 | RRR | | | RESIDENTIAL REAL ESTATE | | | 75780 | INSP | | | | CZ1 | 001 |
| 632 | | 498.16 | ATCAMCCART | | | MCCARTHY & HOLTHUS LLP | | | 01R01 | FCST | | | | CZ1 | 001 |
| **11/17/2018** | | | | | | | | | | | | | | | |
| 631 | | 89.00 | RRR | | | RESIDENTIAL REAL ESTATE | | | 75780 | FBPO | | | | CZ1 | 001 |
| **11/16/2018** | | | | | | | | | | | | | | | |
| 501 | | 1.50 | 60001 | | | SELECT PORTFOLIO ESCROW | | | 0ST05 | TXMF | | | | CZ1 | 001 |
| **11/13/2018** | | | | | | | | | | | | | | | |
| 766 | | 1.50 | | | | | | | 0ST05 | TXMF | | | | CZ1 | 001 |
| **11/30/2018** | | | | | | | | | | | | | | | |
| 601 | | 225.00 | RRR | | | RESIDENTIAL REAL ESTATE | | | 0ST05 | VRC | | | | CZ1 | 001 |
| **12/28/2017** | | | | | | | | | | | | | | | |
| 631 | | 15.00 | RRR | | | RESIDENTIAL REAL ESTATE | | | 75780 | INSP | | | | CZ1 | 001 |
| 632 | | 8.54 | ATCAMCCART | | | MCCARTHY & HOLTHUS LLP | | | 01R01 | FCST | | | | CZ1 | 001 |
| 632 | | 25.00 | ATCAMCCART | | | MCCARTHY & HOLTHUS LLP | | | 0ST05 | FCST | | | | CZ1 | 001 |
| **11/21/2017** | | | | | | | | | | | | | | | |
| 501 | | 0.16 | | | | | | | 0ST05 | FICO | | | | CZ1 | 001 |
| 501 | | 0.16 | | | | | | | 0ST05 | FICO | | | | CZ1 | 001 |
| 501 | | 0.16 | | | | | | | 0ST05 | FICO | | | | CZ1 | 001 |
| **11/30/2017** | | | | | | | | | | | | | | | |
| 601 | | 50.00 | ATCAMCCART | | | MCCARTHY & HOLTHUS LLP | | | 01R01 | FATT | | | | CZ1 | 001 |
| **12/11/2017** | | | | | | | | | | | | | | | |
| 601 | | 1.50 | 60001 | | | SELECT PORTFOLIO ESCROW | | | 0ST05 | TXMF | | | | CZ1 | 001 |
| **01/16/2017** | | | | | | | | | | | | | | | |
| 766 | | 1.50 | | | | | | | 0ST05 | TXMF | | | | CZ1 | 001 |
| 161 | | 3,496.07 | LOS ANGELES CC | | | | | | | | | | | CZ1 | 001 |
| 312 | | -3,496.07 04037 | | | | | | | | | | | | | |
| **01/14/2017** | | | | | | | | | | | | | | | |
| 601 | | 1.50 | 60001 | | | SELECT PORTFOLIO ESCROW | | | 0ST05 | TXMF | | | | CZ1 | 001 |
| 631 | | 15.00 | RRR | | | RESIDENTIAL REAL ESTATE | | | 75780 | INSP | | | | CZ1 | 001 |
| 766 | | 1.50 | | | | | | | 0ST05 | TXMF | | | | CZ1 | 001 |
| **01/13/2017** | | | | | | | | | | | | | | | |
| 631 | | 89.00 | RRR | | | RESIDENTIAL REAL ESTATE | | | 75780 | FBPO | | | | CZ1 | 001 |
| **10/23/2017** | | | | | | | | | | | | | | | |
| 601 | | 1.50 | 60001 | | | SELECT PORTFOLIO ESCROW | | | 0ST05 | TXMF | | | | CZ1 | 001 |

Page 8 of 22

# Payment History Report

Print Date: 9/24/2019

**Current Principal Bal: 593,652.02**     **Next Pay Date: 09/01/2008**

| Tran | Pmt Due | Tran Amt / Escrow Life Pmt Amt | P & I Pmt / Misc. Pmt | Escrow Pmt | Escrow Payee CD | Escrow Payee | Corp Adv. Amt | Corp Adv Payee CD | Corp Adv Payee | Fee Pmt | Fee Code | Unapplied | Corp Adv Acct. / Rest. Escrow | Corp Adv Reason / A & H Pmt | Partial Prin Pmt | Partial Int Pmt | Pmt Effective | MSP Bank | MSP Cat |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 766 | 10/18/2017 | 1.50 | | | | | | | | | | | 0STO5 | TXMF | | | | CZ1 | 001 |
| 632 | 10/17/2017 | 8.54 | | | | | | ATCAMCCART | MCCARTHY & HOLTHUS LLP | | | | 0SRO1 | FCST | | | | CZ1 | 001 |
| 632 | 10/17/2017 | 70.00 | | | | | | ATCAMCCART | MCCARTHY & HOLTHUS LLP | | | | 0SRO1 | FCST | | | | CZ1 | 001 |
| 630 | 10/11/2017 | 50.00 | | | | | | ATCAMCCART | MCCARTHY & HOLTHUS LLP | | | | 0STO5 | FATT | | | | CZ1 | 001 |
| 630 | 10/03/2017 | 50.00 | | | | | | ATCAMCCART | MCCARTHY & HOLTHUS LLP | | | | 0STO5 | FATT | | | | CZ1 | 001 |
| 632 | 10/03/2017 | 50.00 | | | | | | ATCAMCCART | MCCARTHY & HOLTHUS LLP | | | | 0SRO1 | FATT | | | | CZ1 | 001 |
| 631 | 09/22/2017 | 15.00 | | | | | | RRR | RESIDENTIAL REAL ESTATE | | | | 7STBO | INSP | | | | CZ1 | 001 |
| 766 | 09/30/2017 | 50.00 | | | | | | ATCAMCCART | MCCARTHY & HOLTHUS LLP | | | | 0SRO1 | FATT | | | | CZ1 | 001 |
| 601 | 09/21/2017 | 1.50 | | | | | | 60001 | SELECT PORTFOLIO ESCROW | | | | 0STO5 | FCST | | | | CZ1 | 001 |
| 766 | 09/19/2017 | 1.50 | | | | | | 60601 | SELECT PORTFOLIO ESCROW | | | | 0STO5 | TXMF | | | | CZ1 | 001 |
| 632 | 09/03/2017 | 50.00 | | | | | | ATCAMCCART | MCCARTHY & HOLTHUS LLP | | | | 0SRO1 | FATT | | | | CZ1 | 001 |
| 632 | 08/31/2017 | 50.00 | | | | | | ATCAMCCART | MCCARTHY & HOLTHUS LLP | | | | 0STO5 | TXMF | | | | CZ1 | 001 |
| 630 | 08/31/2017 | 15.00 | | | | | | RRR | RESIDENTIAL REAL ESTATE | | | | 7STBO | INSP | | | | CZ1 | 001 |
| 632 | 08/25/2017 | 50.00 | | | | | | ATCAMCCART | MCCARTHY & HOLTHUS LLP | | | | 0SRO1 | FATT | | | | CZ1 | 001 |
| 632 | 08/17/2017 | 15.00 | | | | | | ATCAMCCART | MCCARTHY & HOLTHUS LLP | | | | 0STO5 | FCST | | | | CZ1 | 001 |
| 601 | 08/17/2017 | 15.00 | | | | | | ATCAMCCART | MCCARTHY & HOLTHUS LLP | | | | 0STO5 | FCST | | | | CZ1 | 001 |
| 766 | 08/15/2017 | 1.50 | | | | | | ATCAMCCART | MCCARTHY & HOLTHUS LLP | | | | 0SRO1 | FATT | | | | CZ1 | 001 |
| 631 | 08/07/2017 | 8.54 | | | | | | | RESIDENTIAL REAL ESTATE | | | | 0SRO1 | FATT | | | | CZ1 | 001 |
| 631 | 08/07/2017 | 89.00 | | | | | | RRR | RESIDENTIAL REAL ESTATE | | | | 7STBO | FBPO | | | | CZ1 | 001 |
| 631 | 08/01/2017 | 15.00 | | | | | | RRR | RESIDENTIAL REAL ESTATE | | | | 7STBO | INSP | | | | CZ1 | 001 |

The contents of this document are RESTRICTED to authorized individuals.
Any unauthorized access, use or duplication is strictly prohibited.

# Payment History Report

Print Date: 9/24/2019

**Current Principal Bal: 593,652.02**     **Next Pay Date: 09/01/2008**

| Tran Pmt Due | Tran | Escrow Amt / Life Pmt | P & I Pmt / Misc. Pmt | Escrow Pmt CD | Escrow Payee | Fee Pmt / Corp Adv Payee | Fee Code | Unapplied | Corp Adv Acct. / Rest. Escrow | A & H Pmt / Corp Adv Reason | Partial Prin Pmt | Partial Int Pmt | Pmt Effective | MSP Bank | MSP Cat |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 07/31/2017 | 632 | 32.08 | | ATCAMCCART | | MCCARTHY & HOLTHIUS LLP | | | 01R01 | FCST | | | | CZ1 | 001 |
| 07/18/2017 | 601 | 1.50 | | 60001 | SELECT PORTFOLIO ESCROW | | | | 0ST05 | INSP | | | | CZ1 | 001 |
| | 766 | 1.50 | | | | | | | 0ST05 | TXMF | | | | CZ1 | 001 |
| 07/17/2017 | 351 | 1,141.97 | | | | | | | 01R01 | INSP | | | | CZ1 | 001 |
| | 1161 | -1,141.97 EDIFA | | FARMERS | | | | | 01R01 | INSP | | | | CZ1 | 001 |
| 06/27/2017 | 745 | -15.00 | | | | | | | 0ST05 | INSP | | | | CZ1 | 001 |
| 06/26/2017 | 745 | -15.00 | | | | | | | 0ST05 | INSP | | | | CZ1 | 001 |
| | 631 | 15.00 | | RRR | | RESIDENTIAL REAL ESTATE | | | 7SR80 | INSP | | | | CZ1 | 001 |
| | 631 | 15.00 | | RRR | | RESIDENTIAL REAL ESTATE | | | 7ST80 | INSP | | | | CZ1 | 001 |
| | 631 | 15.00 | | RRR | | RESIDENTIAL REAL ESTATE | | | 7ST80 | INSP | | | | CZ1 | 001 |
| 06/06/2017 | 631 | 89.00 | | RRR | | RESIDENTIAL REAL ESTATE | | | 7ST80 | FBPO | | | | CZ1 | 001 |
| | 766 | 1.50 | | 60001 | SELECT PORTFOLIO ESCROW | | | | 0ST05 | TXMF | | | | CZ1 | 001 |
| | 766 | 1.50 | | | | | | | 0ST05 | TXMF | | | | CZ1 | 001 |
| | 601 | 1.50 | | 60001 | SELECT PORTFOLIO ESCROW | | | | 0ST05 | TXMF | | | | CZ1 | 001 |
| 05/09/2017 | 631 | 15.00 | | RRR | | RESIDENTIAL REAL ESTATE | | | 7SR80 | INSP | | | | CZ1 | 001 |
| 05/05/2017 | 631 | 15.00 | | RRR | | RESIDENTIAL REAL ESTATE | | | 7ST80 | INSP | | | | CZ1 | 001 |
| | 601 | 1.50 | | 60001 | SELECT PORTFOLIO ESCROW | | | | 0ST05 | TXMF | | | | CZ1 | 001 |
| 04/21/2017 | 601 | 1.50 | | | | SELECT PORTFOLIO ESCROW | | | 0ST05 | TXMF | | | | CZ1 | 001 |
| | 766 | 1.50 | | | | | | | 0ST05 | TXMF | | | | CZ1 | 001 |
| 04/19/2017 | 766 | 1.50 | | | | | | | 0ST05 | TXMF | | | | CZ1 | 001 |
| 04/03/2017 | 630 | 50.00 | | ATCQUALIT | | QUALITY LOAN SERVICE CRP | | | 01R01 | FATT | | | | CZ1 | 001 |
| | 630 | 50.00 | | ATCQUALIT | | QUALITY LOAN SERVICE CRP | | | 01R01 | FATT | | | | CZ1 | 001 |
| | 630 | 50.00 | | ATCQUALIT | | QUALITY LOAN SERVICE CRP | | | 01R01 | | | | | CZ1 | 001 |
| 03/31/2017 | 631 | 15.00 | | RRR | | RESIDENTIAL REAL ESTATE | | | 7ST80 | INSP | | | | CZ1 | 001 |
| | 631 | 15.00 | | RRR | | RESIDENTIAL REAL ESTATE | | | 7ST80 | INSP | | | | CZ1 | 001 |
| | 632 | 23.54 | | ATCQUALIT | | QUALITY LOAN SERVICE CRP | | | 01R01 | FCST | | | | CZ1 | 001 |

The contents of this document are RESTRICTED to authorized individuals.
Any unauthorized access, use or duplication is strictly prohibited.

# Payment History Report

Print Date: 9/24/2019

Current Principal Bal: 593,652.02          Next Pay Date: 09/01/2008

| Tran | Tran Pmt Due | Tran Amt Life Pmt | P & I Pmt Escrow Pmt | P & I Pmt Misc. Pmt | Escrow Amt | Escrow Amt | Corp Adv. Amt | Corp Adv Payee CD | Escrow Pmt Escrow Payee | Fee Pmt Fee Code | Corp Adv Payee | Unapplied | Corp Adv Escrow Acct. | Rest. Escrow | A & H Pmt Corp Adv Reason | Partial Prin Pmt | Partial Int Pmt | Pmt Effective | MSP Bank MSP Cat | MSP Bank MSP Cat |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 601 | 3/23/2017 | 225.00 | | | | | | RRR | | | RESIDENTIAL REAL ESTATE | | 0ST05 | | VPRC | | | | CZ1 001 | CZ1 001 |
| 631 | | 89.00 | | | | | | RRR | | | RESIDENTIAL REAL ESTATE | | 75T80 | | FBPO | | | | CZ1 001 | CZ1 001 |
| 766 | | 260.00 | | | | | | | | | RESIDENTIAL REAL ESTATE | | 0ST05 | | VPRC | | | | CZ1 001 | CZ1 001 |
| 601 | 3/23/2017 | 1.50 | | | | | | 60001 | | | SELECT PORTFOLIO ESCROW | | 0ST05 | | TXMF | | | | CZ1 001 | CZ1 001 |
| 766 | | 1.50 | | | | | | | | | | | | | | | | | CZ1 001 | CZ1 001 |
| 630 | 3/16/2017 | 50.00 | | | | | | ATCAQUALIT | | | QUALITY LOAN SERVICE CRP | | 01R01 | | FATT | | | | CZ1 001 | CZ1 001 |
| 631 | | 15.00 | | | | | | RRR | | | RESIDENTIAL REAL ESTATE | | 75T80 | | INSP | | | | CZ1 001 | CZ1 001 |
| 631 | 3/3/2017 | 15.00 | | | | | | RRR | | | RESIDENTIAL REAL ESTATE | | 75T80 | | INSP | | | | CZ1 001 | CZ1 001 |
| 3161 | | -3,407.89 040037 | | | | | | | LOS ANGELES C( | | | | | | | | | | CZ1 001 | CZ1 001 |
| 3312 | | 3,407.89 | | | | | | | | | | | | | | | | | CZ1 001 | CZ1 001 |
| 631 | 2/27/2017 | 15.00 | | | | | | RRR | | | RESIDENTIAL REAL ESTATE | | 75T80 | | INSP | | | | CZ1 001 | CZ1 001 |
| 601 | 2/27/2017 | 1.50 | | | | | | 60001 | | | SELECT PORTFOLIO ESCROW | | 0ST05 | | TXMF | | | | CZ1 001 | CZ1 001 |
| 766 | | 1.50 | | | | | | | | | | | | | | | | | CZ1 001 | CZ1 001 |
| 632 | 2/21/2017 | 38.54 | | | | | | ATCAQUALIT | | | QUALITY LOAN SERVICE CRP | | 01R01 | | FCST | | | | CZ1 001 | CZ1 001 |
| 631 | 1/31/2017 | 15.00 | | | | | | RRR | | | RESIDENTIAL REAL ESTATE | | 75T80 | | INSP | | | | CZ1 001 | CZ1 001 |
| 631 | 1/20/2017 | 89.00 | | | | | | RRR | | | RESIDENTIAL REAL ESTATE | | 75T80 | | FBPO | | | | CZ1 001 | CZ1 001 |
| 630 | 1/20/2017 | 50.00 | | | | | | ATCAQUALIT | | | QUALITY LOAN SERVICE CRP | | 0ST05 | | FATT | | | | CZ1 001 | CZ1 001 |
| 630 | 1/18/2017 | 50.00 | | | | | | ATCAQUALIT | | | QUALITY LOAN SERVICE CRP | | 01R01 | | FATT | | | | CZ1 001 | CZ1 001 |
| 601 | 1/18/2017 | 1.50 | | | | | | 60001 | | | SELECT PORTFOLIO ESCROW | | 0ST05 | | TXMF | | | | CZ1 001 | CZ1 001 |
| 631 | 1/13/2017 | 15.00 | | | | | | RRR | | | RESIDENTIAL REAL ESTATE | | 75T80 | | INSP | | | | CZ1 001 | CZ1 001 |
| 766 | 1/13/2017 | 1.50 | | | | | | | | | RESIDENTIAL REAL ESTATE | | 0ST05 | | TXMF | | | | CZ1 001 | CZ1 001 |
| 601 | 1/12/2017 | 260.00 | | | | | | RRR | | | RESIDENTIAL REAL ESTATE | | 0ST05 | | VPRC | | | | CZ1 001 | CZ1 001 |
| 632 | 1/05/2017 | 150.00 | | | | | | ATCAQUALIT | | | QUALITY LOAN SERVICE CRP | | 01R01 | | FCST | | | | CZ1 001 | CZ1 001 |

The contents of this document are RESTRICTED to authorized individuals. Any unauthorized access, use or duplication is strictly prohibited.

# Payment History Report

Print Date: 9/24/2019

**Current Principal Bal: 593,652.02**          **Next Pay Date: 09/01/2008**

| Tran | Pmt Due | Tran Amt Life Pmt | Escrow Pmt | P & I Pmt Misc. Pmt | Escrow Pmt | Escrow Payee | Corp Adv Payee | Fee Pmt | Fee Code | Corp Adv Payee | Unapplied | Corp Adv Acct. Rest. Escrow | A & H Pmt Corp Adv Reason | Partial Prin Pmt | Partial Int Pmt | Pmt Effective | MSP Bank | MSP Cat |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **12/30/2016** | | | | | | | | | | | | | | | | | | |
| 632 | | 276.68 | | ATCQUALIT | | QUALITY LOAN SERVICE CRP | | | | QUALITY LOAN SERVICE CRP | | 01R01 | FCST | | | | C21 | 001 |
| **12/27/2016** | | | | | | | | | | | | | | | | | | |
| 145 | 09/01/2008 | 0.00 0.00 | 0.00 | | 0.00 | | LOS ANGELES C( | | 0.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | C21 | 001 |
| 601 | | 1.50 | | 60001 | | SELECT PORTFOLIO ESCROW | | | | | | 0.00 | 0.00 | | | | C21 | 001 |
| **09/27/2016** | | | | | | | | | | | | | | | | | | |
| 601 | | 1.50 | | 60001 | | SELECT PORTFOLIO ESCROW | | | | | | 0S1O5 | TXMF | | | | C21 | 001 |
| 631 | | 1.50 | | RRR | | RESIDENTIAL REAL ESTATE | | | | | | 75180 | TXMF | | | | C21 | 001 |
| **09/30/2016** | | | | | | | | | | | | | | | | | | |
| 631 | | 114.00 | | RRR | | RESIDENTIAL REAL ESTATE | | | | | | 75180 | INSP | | | | C21 | 001 |
| 631 | | 15.00 | | RRR | | RESIDENTIAL REAL ESTATE | | | | | | 75180 | INSP | | | | C21 | 001 |
| **09/14/2016** | | | | | | | | | | | | | | | | | | |
| 631 | | 15.00 | | RRR | | RESIDENTIAL REAL ESTATE | | | | | | 75180 | INSP | | | | C21 | 001 |
| 601 | | 1.50 | | 60001 | | SELECT PORTFOLIO ESCROW | | | | | | 0S1O5 | TXMF | | | | C21 | 001 |
| 766 | | 1.50 | | | | | | | | | | 0S1O5 | TXMF | | | | C21 | 001 |
| **11/17/2016** | | | | | | | | | | | | | | | | | | |
| 766 | | 1.50 | | | | | | | | | | 0S1O5 | TXMF | | | | C21 | 001 |
| **11/30/2016** | | | | | | | | | | | | | | | | | | |
| 631 | | 50.00 | | ATCQUALIT | | QUALITY LOAN SERVICE CRP | | | | | | 0S1O5 | FATT | | | | C21 | 001 |
| 630 | | 50.00 | | ATCQUALIT | | QUALITY LOAN SERVICE CRP | | | | | | 0S1O5 | FATT | | | | C21 | 001 |
| 630 | | 15.00 | | RRR | | RESIDENTIAL REAL ESTATE | | | | | | 75180 | INSP | | | | C21 | 001 |
| **09/27/2016** | | | | | | | | | | | | | | | | | | |
| 601 | | 1.50 | | 60001 | | SELECT PORTFOLIO ESCROW | | | | | | 0S1O5 | TXMF | | | | C21 | 001 |
| 766 | | 1.50 | | | | | | | | | | 0S1O5 | TXMF | | | | C21 | 001 |
| **09/14/2016** | | | | | | | | | | | | | | | | | | |
| 631 | | 15.00 | | RRR | | RESIDENTIAL REAL ESTATE | | | | | | 75180 | INSP | | | | C21 | 001 |
| 632 | | 743.24 | | ATCQUALIT | | QUALITY LOAN SERVICE CRP | | | | | | 01R01 | FCST | | | | C21 | 001 |

The contents of this document are RESTRICTED to authorized individuals.
Any unauthorized access, use or duplication is strictly prohibited.

# Payment History Report

Print Date: 9/24/2019

**Current Principal Bal: 593,652.02**      **Next Pay Date: 09/01/2008**

| Tran | Pmt Due | Tran Amt / Corp Adv. Amt | Escrow Payee | Corp Adv Payee | Corp Adv Acct. | A & H Pmt / Corp Adv Reason | MSP Bank | MSP Cat |
|---|---|---|---|---|---|---|---|---|
| 601 | 09/13/2016 | 28.50 | RCMORMG | RICHMOND MONROE GROUP | 75T28 | DOCU | CZ1 | 001 |
| 632 | 09/09/2016 | 180.14 | ATCQUALIT | QUALITY LOAN SERVICE CRP | 01R01 | FCST | CZ1 | 001 |
| 630 | 09/08/2016 | 50.00 | ATCQUALIT | QUALITY LOAN SERVICE CRP | 01R01 | FATT | CZ1 | 001 |
| 630 | 08/24/2016 | 50.00 | ATCQUALIT | QUALITY LOAN SERVICE CRP | 01R01 | FATT | CZ1 | 001 |
| 631 | | 15.00 | RRR | RESIDENTIAL REAL ESTATE | 75T80 | INSP | CZ1 | 001 |
| 601 | 08/12/2016 | 1.50 | 60001 | SELECT PORTFOLIO ESCROW | 0ST05 | TXMF | CZ1 | 001 |
| 630 | 08/06/2016 | 50.00 | ATCQUALIT | QUALITY LOAN SERVICE CRP | 0ST05 | FATT | CZ1 | 001 |
| 630 | 08/01/2016 | 50.00 | ATCQUALIT | QUALITY LOAN SERVICE CRP | 0ST05 | FATT | CZ1 | 001 |
| 631 | 07/06/2016 | 15.00 | RRR | RESIDENTIAL REAL ESTATE | 75T80 | INSP | CZ1 | 001 |
| 351 | 07/27/2016 | 100.00 | ATCQUALIT | QUALITY LOAN SERVICE CRP | 0ST05 | FATT | CZ1 | 001 |
| 161 | 07/11/2016 | -1,122.77 EDIFA | FARMERS | | | | CZ1 | 001 |
| 630 | 07/07/2016 | 150.00 | ATCQUALIT | QUALITY LOAN SERVICE CRP | 01R01 | FCST | CZ1 | 001 |
| 631 | 06/21/2016 | 15.00 | RRR | RESIDENTIAL REAL ESTATE | 75T80 | INSP | CZ1 | 001 |
| 630 | 06/27/2016 | 150.00 | ATCQUALIT | QUALITY LOAN SERVICE CRP | 0ST05 | FATT | CZ1 | 001 |
| 766 | 06/16/2016 | 1.50 | 60001 | SELECT PORTFOLIO ESCROW | 0ST05 | TXMF | CZ1 | 001 |
| 631 | 06/16/2016 | 15.00 | RRR | RESIDENTIAL REAL ESTATE | 75T80 | INSP | CZ1 | 001 |

The contents of this document are RESTRICTED to authorized individuals.
Any unauthorized access, use or duplication is strictly prohibited.

# Payment History Report

Print Date: 9/24/2019

**Current Principal Bal: 593,652.02**  **Next Pay Date: 09/01/2008**

| Tran | Pmt Due | Tran Amt / Life Pmt | P & I Pmt / Misc. Pmt | Escrow Pmt / Escrow Amt | Corp Adv. Amt | Fee Pmt | Corp Adv Payee | Fee Code | Corp Adv Acct | Corp Adv Reason | MSP Bank | MSP Cat |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 632 | 06/06/2016 | 8.44 | | | | ATCQUALIT | QUALITY LOAN SERVICE CRP | | 01R01 | FCST | CZ1 | 001 |
| 631 | 06/03/2016 | 89.00 | | | | RRR | RESIDENTIAL REAL ESTATE | | 75780 | FBPO | CZ1 | 001 |
| 631 | 05/26/2016 | 15.00 | | | | RRR | RESIDENTIAL REAL ESTATE | | 75780 | INSP | CZ1 | 001 |
| 601 | 05/19/2016 | 1.50 | | | | 60001 | SELECT PORTFOLIO ESCROW | | 0ST05 | TXMF | CZ1 | 001 |
| 766 | 05/04/2016 | 1.50 | | | | | SELECT PORTFOLIO ESCROW | | 0ST05 | TXMF | CZ1 | 001 |
| 630 | 04/28/2016 | 50.00 | | | | ATCQUALIT | QUALITY LOAN SERVICE CRP | | 0ST05 | FATT | CZ1 | 001 |
| 630 | 04/19/2016 | 50.00 | | | | ATCQUALIT | QUALITY LOAN SERVICE CRP | | 0ST05 | FATT | CZ1 | 001 |
| 630 | 04/12/2016 | 50.00 | | | | ATCQUALIT | QUALITY LOAN SERVICE CRP | | 0ST05 | FATT | CZ1 | 001 |
| 631 | 04/22/2016 | 15.00 | | | | RRR | RESIDENTIAL REAL ESTATE | | 75780 | INSP | CZ1 | 001 |
| 630 | | 100.00 | | | | ATCQUALIT | QUALITY LOAN SERVICE CRP | | 01R01 | FATT | CZ1 | 001 |
| 630 | | 100.00 | | | | ATCQUALIT | QUALITY LOAN SERVICE CRP | | 01R01 | FATT | CZ1 | 001 |
| 601 | 04/08/2016 | 14.85 | | | | ROTXCBC | CBC INNOVIS | | 0ST05 | MCBR | CZ1 | 001 |
| 631 | | 35.00 | | | | ATCQUALIT | QUALITY LOAN SERVICE CRP | | 0ST05 | FCST | CZ1 | 001 |
| 631 | | 487.82 | | | | ATCQUALIT | QUALITY LOAN SERVICE CRP | | 01R01 | FCST | CZ1 | 001 |
| 601 | | 1.50 | | | | 60001 | SELECT PORTFOLIO ESCROW | | 0ST05 | TXMF | CZ1 | 001 |
| 766 | | 1.50 | | | | RRR | RESIDENTIAL REAL ESTATE | | 75780 | INSP | CZ1 | 001 |
| 631 | 03/30/2016 | 15.00 | | | | RRR | RESIDENTIAL REAL ESTATE | | 75780 | INSP | CZ1 | 001 |
| 631 | | 89.00 | | | | RRR | RESIDENTIAL REAL ESTATE | | 75780 | FBPO | CZ1 | 001 |
| 601 | 03/25/2016 | 1.50 | | | | 60001 | SELECT PORTFOLIO ESCROW | | 0ST05 | TXMF | CZ1 | 001 |
| 630 | 03/29/2016 | 15.00 | | | | RRR | RESIDENTIAL REAL ESTATE | | 0ST05 | FATT | CZ1 | 001 |
| 630 | | 250.00 | | | | ATCQUALIT | QUALITY LOAN SERVICE CRP | | 0ST05 | INSP | CZ1 | 001 |
| 601 | | 1.50 | | | | 60001 | SELECT PORTFOLIO ESCROW | | 0ST05 | TXMF | CZ1 | 001 |
| 766 | | 1.50 | | | | | SELECT PORTFOLIO ESCROW | | 0ST05 | TXMF | CZ1 | 001 |

The contents of this document are RESTRICTED to authorized individuals.
Any unauthorized access, use or duplication is strictly prohibited.

# Payment History Report

## Current Principal Bal: 593,652.02

Next Pay Date: 09/01/2008

Print Date: 9/24/2019

| Tran | Pmt Due | Tran Amt Life Pmt | P & I Pmt Misc. Pmt | Escrow Pmt | Fee Pmt | Fee Code | Unapplied | Rest. Escrow | A & H Pmt | Partial Prin Pmt | Partial Int Pmt | Pmt Effective | MSP Bank MSP Cat |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Escrow Amt | Misc. Pmt | Escrow Payee | | Corp Adv Payee | | Corp Adv. Acct. | Corp Adv. Reason | | | | MSP Bank. Cat |
| | | Corp Adv. Amt | Corp Adv Payee CD | | | | | | | | | | |
| 3 | 03/09/2016 | 3,359.03 | | | | | | | | | | CZ1 | 001 |
| 161 | | | | | | | | | | | | CZ1 | 001 |
| 312 | | -3,359.03 04037 | | LOS ANGELES C( | | | | | | | | CZ1 | 001 |
| 3 | 03/03/2016 | | | | | | | | | | | CZ1 | 001 |
| 631 | 12/19/2016 | 15.00 | | RRR | RESIDENTIAL REAL ESTATE | | | 75T80 | INSP | | | CZ1 | 001 |
| 501 | | 1.50 | 60001 | | SELECT PORTFOLIO ESCROW | | | 05T05 | TXMF | | | CZ1 | 001 |
| 3 | 02/19/2016 | 1.50 | | | | | | 05T05 | TXMF | | | CZ1 | 001 |
| 766 | | 1.50 | | | | | | | | | | CZ1 | 001 |
| 3 | 01/27/2016 | 15.00 | | RRR | RESIDENTIAL REAL ESTATE | | | 75T80 | INSP | | | CZ1 | 001 |
| 631 | | | | | | | | | | | | CZ1 | 001 |
| 3 | 12/29/2016 | 1.50 | 60001 | | SELECT PORTFOLIO ESCROW | | | 05T05 | TXMF | | | CZ1 | 001 |
| 601 | | | | | | | | | | | | CZ1 | 001 |
| 3 | 12/09/2015 | 15.00 | | RRR | RESIDENTIAL REAL ESTATE | | | 75T80 | INSP | | | CZ1 | 001 |
| 631 | | 1.50 | | | RESIDENTIAL REAL ESTATE | | | 75T80 | INSP | | | CZ1 | 001 |
| 766 | | 1.50 | | | | | | 05T05 | TXMF | | | CZ1 | 001 |
| 3 | 11/12/2016 | 190.00 | | MSCOSARCH | 5 ARCH CODE COMPLIANCE | | | 05T05 | VPRC | | | CZ1 | 001 |
| 601 | | | | | | | | | | | | CZ1 | 001 |
| 3 | 12/09/2015 | 15.00 | | RRR | RESIDENTIAL REAL ESTATE | | | 75T80 | INSP | | | CZ1 | 001 |
| 631 | | | | | | | | | | | | CZ1 | 001 |
| 3 | 12/09/2015 | 1.50 | 60001 | | SELECT PORTFOLIO ESCROW | | | 05T05 | TXMF | | | CZ1 | 001 |
| 601 | | | | | | | | | | | | CZ1 | 001 |
| 766 | | 1.50 | | | | | | 05T05 | TXMF | | | CZ1 | 001 |
| 3 | 11/25/2015 | 15.00 | | RRR | RESIDENTIAL REAL ESTATE | | | 75T80 | INSP | | | CZ1 | 001 |
| 631 | | | | | | | | | | | | CZ1 | 001 |
| 3 | 11/23/2015 | 89.00 | | RRR | RESIDENTIAL REAL ESTATE | | | 75T80 | FBPO | | | CZ1 | 001 |
| 631 | | | | | | | | | | | | CZ1 | 001 |
| 3 | 11/16/2015 | 3,359.04 | | | | | | | | | | CZ1 | 001 |
| 161 | | | | | | | | | | | | CZ1 | 001 |
| 312 | | -3,359.04 04037 | | LOS ANGELES C( | | | | | | | | CZ1 | 001 |
| 3 | 11/19/2015 | 1.50 | 60001 | | SELECT PORTFOLIO ESCROW | | | 05T05 | TXMF | | | CZ1 | 001 |
| 601 | | | | | | | | | | | | CZ1 | 001 |
| 766 | | 1.50 | | | | | | 05T05 | TXMF | | | CZ1 | 001 |
| 3 | 11/12/2015 | 1.50 | 60001 | | SELECT PORTFOLIO ESCROW | | | 05T05 | TXMF | | | CZ1 | 001 |
| 766 | | 1.50 | | | | | | 05T05 | TXMF | | | CZ1 | 001 |
| 601 | | | | | | | | | | | | CZ1 | 001 |

The contents of this document are RESTRICTED to authorized individuals. Any unauthorized access, use or duplication is strictly prohibited.

# Payment History Report

Print Date: 9/24/2019

Current Principal Bal: 593,652.02          Next Pay Date: 09/01/2008

| Tran | Pmt Due | Tran Amt Escrow Life Pmt | Escrow Amt | P & I Pmt Corp Adv. Payee CD | Escrow Amt | Escrow Payee | Corp Adv Payee CD | Escrow Pmt | Fee Pmt | Fee Code | Corp Adv Payee | Unapplied | Corp Adv Acct. Rest. Escrow | A & H Pmt Corp Adv Reason | Partial Prin Pmt | Partial Int Pmt | Pmt Effective MSP Bank Cat | MSP Bank | MSP Cat |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 766 | 11/09/2015 | 1.50 | | | | | | RRR | RESIDENTIAL REAL ESTATE | | | | 0ST0S | TXMF | | | CZ1 | 001 | |
| 631 | 09/21/2015 | 15.00 | | | | | | RRR | RESIDENTIAL REAL ESTATE | | | | 0ST0S | INSP | | | CZ1 | 001 | |
| 631 | 09/07/2015 | 15.00 | | | | | | RRR | RESIDENTIAL REAL ESTATE | | | | 0ST0S | INSP | | | CZ1 | 001 | |
| 631 | 08/31/2015 | 15.00 | | | | | | RRR | RESIDENTIAL REAL ESTATE | | | | 7ST80 | INSP | | | CZ1 | 001 | |
| 0632 | 07/29/2015 | 863.00 | | | | | | ATCAQUALIT | QUALITY LOAN SERVICE CRP | | | | 01R01 | FCST | | | CZ1 | 001 | |
| 3161 | 08/13/2015 | 1.50 | | | | | | 60001 | SELECT PORTFOLIO ESCROW | | | | 0ST0S | TXMF | | | CZ1 | 001 | |
| 3351 | 07/13/2015 | -1,113.15 EDIFA / 1,113.15 | | | | | | FARMERS | | | | | | | | | CZ1 | 001 | |
| 601 | 07/01/2015 | 1.50 | | | | | | 60001 | SELECT PORTFOLIO ESCROW | | | | 0ST0S | TXMF | | | CZ1 | 001 | |
| 766 | 08/26/2015 | 1.50 | | | | | | | SELECT PORTFOLIO ESCROW | | | | 0ST0S | TXMF | | | CZ1 | 001 | |
| 631 | 08/07/2015 | 15.00 | | | | | | RRR | RESIDENTIAL REAL ESTATE | | | | 7ST80 | INSP | | | CZ1 | 001 | |
| 766 | 06/30/2015 | 89.00 | | | | | | RRR | RESIDENTIAL REAL ESTATE | | | | 7ST80 | FBPO | | | CZ1 | 001 | |
| 631 | 06/25/2015 | 1.50 | | | | | | 60001 | SELECT PORTFOLIO ESCROW | | | | 0ST0S | TXMF | | | CZ1 | 001 | |
| 766 | 06/24/2015 | 1.50 | | | | | | 60001 | SELECT PORTFOLIO ESCROW | | | | 0ST0S | TXMF | | | CZ1 | 001 | |
| 601 | 06/23/2015 | 13.00 | | | | | | ROTXCBC | CBC INNOVIS | | | | 0ST0S | MCBR | | | CZ1 | 001 | |
| 766 | 06/22/2015 | 1.50 | | | | | | | | | | | 0ST0S | TXMF | | | CZ1 | 001 | |
| 601 | 06/15/2015 | 15.00 | | | | | | RRR | RESIDENTIAL REAL ESTATE | | | | 7ST80 | INSP | | | CZ1 | 001 | |

The contents of this document are RESTRICTED to authorized individuals.
Any unauthorized access, use or duplication is strictly prohibited.

# Payment History Report

Print Date: 9/24/2019

Current Principal Bal: 593,652.02     Next Pay Date: 09/01/2008

| Tran | Pmt Due | Tran Amt Life Pmt | P & I Pmt Misc. Pmt | Escrow Pmt | Escrow Pmt CD | Escrow Payee | Corp Adv. Amt | Corp Adv Payee CD | Fee Pmt | Fee Code | Corp Adv Payee | Unapplied | Corp Adv Acct. | Rest. Escrow | Corp Adv Reason | A & H Pmt | Partial Prin Pmt | Partial Int Pmt | Pmt Effective | MSP Bank | MSP Cat |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 766 | 05/18/2015 | 1.50 | | | | | | | | | | | 0STO5 | | TXMF | | | | | CZ1 | 001 |
| 601 | 05/13/2015 | 1.50 | | | | | | 60001 | | | SELECT PORTFOLIO ESCROW | | 0STO5 | | TXMF | | | | | CZ1 | 001 |
| 631 | 04/27/2015 | 15.00 | | | | | | RRR | | | RESIDENTIAL REAL ESTATE | | 75780 | | INSP | | | | | CZ1 | 001 |
| 766 | 3/25/2015 | 1.50 | | | | | | | | | | | 0STO5 | | TXMF | | | | | CZ1 | 001 |
| 766 | 3/23/2015 | 1.50 | | | | | | | | | | | 0STO5 | | TXMF | | | | | CZ1 | 001 |
| 601 | 3/05/2015 | 1.50 | | | | | | 60001 | | | SELECT PORTFOLIO ESCROW | | 0STO5 | | TXMF | | | | | CZ1 | 001 |
| 601 | 03/10/2015 | 1.50 | | | | | | 60001 | | | SELECT PORTFOLIO ESCROW | | 0STO5 | | TXMF | | | | | CZ1 | 001 |
| 631 | 3/02/2015 | 15.00 | | | | | | RRR | | | RESIDENTIAL REAL ESTATE | | 75780 | | INSP | | | | | CZ1 | 001 |
| 161 | | | | | | | 3,372.52 | | LOS ANGELES C( | | | | 0STO5 | | | | | | | CZ1 | 001 |
| 312 | | | | | | | -3,372.52 | 04037 | | | | | 0STO5 | | | | | | | CZ1 | 001 |
| 601 | 3/04/2015 | 13.00 | | | | | | ROTXCBC | | | CBC INNOVIS | | 0STO5 | | MCBR | | | | | CZ1 | 001 |
| 601 | 02/10/2015 | 13.00 | | | | | | ROTXCBC | | | CBC INNOVIS | | 0STO5 | | MCBR | | | | | CZ1 | 001 |
| 766 | 2/20/2015 | 1.50 | | | | | | 60001 | | | SELECT PORTFOLIO ESCROW | | 0STO5 | | TXMF | | | | | CZ1 | 001 |
| 766 | | 1.50 | | | | | | 60001 | | | SELECT PORTFOLIO ESCROW | | 0STO5 | | TXMF | | | | | CZ1 | 001 |
| 601 | 02/04/2015 | 13.00 | | | | | | ROTXCBC | | | CBC INNOVIS | | 0STO5 | | MCBR | | | | | CZ1 | 001 |
| 601 | 02/02/2015 | 3.00 | | | | | | A4272 | | | SERVICELINK | | 0STO5 | | FLDT | | | | | CZ1 | 001 |
| 630 | | 400.00 | | | | | | ATCQUALIT | | | QUALITY LOAN SERVICE CRP | | 01RO1 | | FATT | | | | | CZ1 | 001 |
| 601 | | 190.00 | | | | | | MSCOSARCH | | | 5 ARCH CODE COMPLIANCE | | 0STO5 | | VPRC | | | | | CZ1 | 001 |
| 631 | 12/19/2014 | 89.00 | | | | | | RRR | | | RESIDENTIAL REAL ESTATE | | 75780 | | FBPO | | | | | CZ1 | 001 |

The contents of this document are RESTRICTED to authorized individuals. Any unauthorized access, use or duplication is strictly prohibited.

# Payment History Report

Print Date: 9/24/2019

Current Principal Bal: 593,652.02    Next Pay Date: 09/01/2008

| Tran Pmt Due | Tran Amt Escrow Life Pmt | P & I Pmt Misc. Pmt | Escrow Pmt Escrow CD | Escrow Amt Escrow Payee | Corp Adv. Amt Corp Adv Payee CD | Fee Pmt Corp Adv Payee | Fee Code | Unapplied | Corp Adv Acct. Rest. Escrow | Corp Adv Reason A & H Pmt | Partial Prin Pmt | Partial Int Pmt | Pmt Effective | MSP Bank Cat | MSP Bank | MSP Cat |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/18/2014 | 601 6.15 | | | | | | | | 05T05 | POST | | | | CZ1 | 001 |
| 12/17/2014 | 766 1.50 | | | | | | | | 05T05 | TXMF | | | | CZ1 | 001 |
| 12/16/2014 | 601 1.50 | 60001 | SELECT PORTFOLIO ESCROW | | | | | | 05T05 | TXMF | | | | CZ1 | 001 |
| 12/2/2014 | 766 1.50 | | | | | | | | 05T05 | TXMF | | | | CZ1 | 001 |
| 12/1/2014 | 766 1.50 | | | | | | | | 05T05 | TXMF | | | | CZ1 | 001 |
| 11/25/2014 | 601 1.50 | 60001 | SELECT PORTFOLIO ESCROW | | | | | | 05T05 | TXMF | | | | CZ1 | 001 |
| 11/18/2014 | 601 1.50 | 60001 | SELECT PORTFOLIO ESCROW | | | | | | 05T05 | TXMF | | | | CZ1 | 001 |
| 11/18/2014 | 3,372.53 3,161 | LOS ANGELES C( | | | | | | | 05T05 | TXMF | | | | CZ1 | 001 |
| 11/0/2014 | -3,372.53 04037 | | | | | | | | 05T05 | TXMF | | | | CZ1 | 001 |
| 11/06/2014 | 225.00 601 | MSCOSARCH | 5 ARCH CODE COMPLIANCE | | | | | | 05T05 | VPRC | | | | CZ1 | 001 |
| 10/02/2014 | 20.00 601 | RCMORMG | RICHMOND MONROE GROUP | | | | | | 75T28 | DOCU | | | | CZ1 | 001 |
| 9/29/2014 | 13.00 601 | ROTXCBC | CBC INNOVIS | | | | | | 05T05 | MCBR | | | | CZ1 | 001 |
| 9/29/2014 | 3.00 766 | | | | | | | | 05T05 | TXMF | | | | CZ1 | 001 |
| 9/25/2014 | 1.50 601 | 60001 | SELECT PORTFOLIO ESCROW | | | | | | 05T05 | TXMF | | | | CZ1 | 001 |
| 9/24/2014 | 1.50 601 | 60001 | SELECT PORTFOLIO ESCROW | | | | | | 05T05 | TXMF | | | | CZ1 | 001 |
| 08/26/2014 | 1.50 766 | | | | | | | | 05T05 | TXMF | | | | CZ1 | 001 |
| 08/19/2014 | 114.00 631 | RRR | RESIDENTIAL REAL ESTATE | | | | | | 75T80 | FBPO | | | | CZ1 | 001 |

Page 18 of 22

The contents of this document are RESTRICTED to authorized individuals.
Any unauthorized access, use or duplication is strictly prohibited.

# Payment History Report

Print Date: 9/24/2019

Current Principal Bal: 593,652.02          Next Pay Date: 09/01/2008

| Tran | Pmt Due | Tran Amt / Life Pmt | P & I Pmt / Misc. Pmt | Escrow Amt / Escrow Pmt | Corp Adv. Amt / Escrow Payee | Corp Adv Payee CD | Fee Pmt | Fee Code | Corp Adv Payee | Unapplied | Corp Adv Acct. / Rest. Escrow | A & H Pmt / Corp Adv Reason | Partial Prin Pmt | Partial Int Pmt | Pmt Effective | MSP Bank / MSP Bank | MSP Cat / MSP Cat |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 163 | 08/12/2014 | 32.36 | | | | | | | | | 0STOS | CZ1 | | | | CZ1 | 001 |
| 168 | | -32.36 | | | | | | | | | 0STOS | CZ1 | | | | CZ1 | 001 |
| 161 | 08/08/2014 | 1.50 | | | | | | | | | 0STOS | TXMF | | | | CZ1 | 001 |
| 351 | | 1,061.28 | 75608 | | FARMERS INS GI | | | | | | 0STOS | TXMF | | | | CZ1 | 001 |
| 766 | | -1,061.28 | | | | | | | | | 0STOS | TXMF | | | | CZ1 | 001 |
| 601 | 07/29/2014 | 1.50 | 60001 | | SELECT PORTFOLIO ESCROW | | | | | | 0STOS | TXMF | | | | CZ1 | 001 |
| 161 | 07/17/2014 | 147.84 | 351 | | ASSURANT HAZ | | | | | | 0STOS | TXMF | | | | CZ1 | 001 |
| 351 | | -147.84 ASPOL | | | ASSURANT HAZ | | | | | | 0STOS | TXMF | | | | CZ1 | 001 |
| 766 | 06/27/2014 | 1.50 | 60001 | | SELECT PORTFOLIO ESCROW | | | | | | 0STOS | TXMF | | | | CZ1 | 001 |
| 766 | 06/24/2014 | 1.50 | | | | | | | | | 0STOS | TXMF | | | | CZ1 | 001 |
| 766 | 06/10/2014 | 2.00 | | | | | | | | | 0STOS | FLOD | | | | CZ1 | 001 |
| 501 | 06/05/2014 | 1.50 | | | | | | | | | 0STOS | TXMF | | | | CZ1 | 001 |
| 766 | 06/04/2014 | 1.50 | | | | | | | | | 0STOS | TXMF | | | | CZ1 | 001 |
| 161 | | 443.52 | | | | | | | | | 0STOS | TXMF | | | | CZ1 | 001 |
| 351 | 05/28/2014 | -443.52 ASPOL | | | ASSURANT HAZ | | | | | | 0STOS | TXMF | | | | CZ1 | 001 |
| 601 | 05/22/2014 | 1.50 | 60001 | | SELECT PORTFOLIO ESCROW | | | | | | 0STOS | TXMF | | | | CZ1 | 001 |
| 766 | 05/20/2014 | 1.50 | | | | | | | | | 0STOS | TXMF | | | | CZ1 | 001 |
| 631 | 04/16/2014 | 114.00 | | RRR | RESIDENTIAL REAL ESTATE | | | | | | 75780 | FBPO | | | | CZ1 | 001 |
| 745 | 04/02/2014 | -162.00 | | | | | | | | | 0STOS | CTRA | | | | CZ1 | 001 |

The contents of this document are RESTRICTED to authorized individuals. Any unauthorized access, use or duplication is strictly prohibited.

# Payment History Report

**Current Principal Bal: 593,652.02**     **Next Pay Date: 09/01/2008**

| Tran | Pmt Due | Tran Amt / Life Pmt | P & I Pmt / Misc. Pmt | Escrow Pmt | Escrow Amt | Corp Adv. Payee CD | Corp Adv Payee CD | Escrow Payee | Fee Pmt | Fee Code | Corp Adv Payee | Unapplied | Corp Adv Escrow Acct. | Rest. Escrow | Corp Adv Reason | A & H Pmt | Partial Prin Pmt | Partial Int Pmt | Pmt Effective | MSP Bank | MSP Cat |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 630 | 3/31/2014 | 400.00 | | | | ATCAJAWEST | | JAMES E ALBERTELLI PA | | | | | 01R01 | | FATT | | | | | CZ1 | 001 |
| 766 | 3/27/2014 | 1.50 | | | | | | | | | | | | 05T05 | TXMF | | | | | CZ1 | 001 |
| 601 | 3/26/2014 | 1.50 | | | | 60001 | | SELECT PORTFOLIO ESCROW | | | | | | 05T05 | TXMF | | | | | CZ1 | 001 |
| 766 | 3/31/2014 | 1.50 | | | | | | | | | | | | 05T05 | TXMF | | | | | CZ1 | 001 |
| 601 | 3/31/2014 | 1.50 | | | | 60001 | | SELECT PORTFOLIO ESCROW | | | | | | 05T05 | TXMF | | | | | CZ1 | 001 |
| 161 | 3/12/2014 | 3,372.48 | | -3,372.48 04037 | | | | LOS ANGELES C( | | | | | | 05T05 | | | | | | CZ1 | 001 |
| 631 | 3/04/2014 | 114.00 | | | | RRR | | RESIDENTIAL REAL ESTATE | | | | | 75T80 | | FBPO | | | | | CZ1 | 001 |
| 601 | 1/09/2014 | 12.00 | | | | ROTXCBC | | CBC INNOVIS | | | | | | 05T05 | MCBR | | | | | CZ1 | 001 |
| 766 | 1/08/2014 | 1.50 | | | | | | | | | | | | 05T05 | TXMF | | | | | CZ1 | 001 |
| 601 | 1/08/2014 | 1.50 | | | | 60001 | | SELECT PORTFOLIO ESCROW | | | | | | 05T05 | TXMF | | | | | CZ1 | 001 |
| 766 | | 1.50 | | | | | | | | | | | | 05T05 | TXMF | | | | | CZ1 | 001 |
| 601 | | 1.50 | | | | 60001 | | SELECT PORTFOLIO ESCROW | | | | | | 05T05 | TXMF | | | | | CZ1 | 001 |
| 601 | 12/19/2013 | 1.50 | | | | 60001 | | SELECT PORTFOLIO ESCROW | | | | | | 05T05 | TXMF | | | | | CZ1 | 001 |
| 631 | 12/19/2013 | 89.00 | | | | RRR | | RESIDENTIAL REAL ESTATE | | | | | 75T80 | | FBPO | | | | | CZ1 | 001 |
| 601 | 1/27/2013 | 1.50 | | | | 60001 | | SELECT PORTFOLIO ESCROW | | | | | | 05T05 | TXMF | | | | | CZ1 | 001 |
| 766 | 1/27/2013 | 1.50 | | | | | | | | | | | | 05T05 | TXMF | | | | | CZ1 | 001 |
| 601 | 1/26/2013 | 1.50 | | | | | | | | | | | | 05T05 | TXMF | | | | | CZ1 | 001 |
| 632 | 11/19/2013 | 448.55 | | | | ATCACALREC | | CALIFORNIA RECONVEYANCE | | | | | 01R01 | | FCST | | | | | CZ1 | 001 |
| 161 | 1/13/2013 | 3,372.50 | | 3,372.50 | | | | LOS ANGELES C( | | | | | | 05T05 | | | | | | CZ1 | 001 |
| 312 | | -3,372.50 04037 | | | | ROTXCBC | | CBC INNOVIS | | | | | | 05T05 | MCBR | | | | | CZ1 | 001 |
| 601 | | 12.00 | | | | ROTXCBC | | CBC INNOVIS | | | | | | | MCBR | | | | | CZ1 | 001 |

The contents of this document are RESTRICTED to authorized individuals. Any unauthorized access, use or duplication is strictly prohibited.

Report_PaymentHistory_SP

# Payment History Report

Print Date: 9/24/2019

**Current Principal Bal: 593,652.02**          **Next Pay Date: 09/01/2008**

Report_PaymentHistory_SP

| Tran | Pmt Due | Tran Amt / Life Pmt | P & I Pmt / Misc. Pmt | Escrow Amt / Payee CD | Corp Adv. / Corp Adv Payee CD | Escrow Pmt / Escrow Payee | Fee Pmt | Fee Code / Corp Adv Payee | Unapplied | Corp Adv Acct. / Rest. Escrow | A & H Pmt / Corp Adv Reason | Partial Prin Pmt | Partial Int Pmt | Pmt Effective | MSP Bank / MSP Cat | MSP Bank / MSP Cat |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 766 | 10/28/2013 | 1.50 | | | | | | | | 0STO5 | TXMF | | | | CZ1 / 001 | CZ1 / 001 |
| 766 | 10/24/2013 | 1.50 | | 60001 | | SELECT PORTFOLIO ESCROW | | | | 0STO5 | TXMF | | | | CZ1 / 001 | CZ1 / 001 |
| 601 | 10/21/2013 | 2.00 | | A4272 | | LPS NATIONAL FLOOD | | | | 0STO5 | FLOD | | | | CZ1 / 001 | CZ1 / 001 |
| 633 | 10/14/2013 | 0.15 | | ATN4STECH | | 4S TECHNOLOGIES LLC | | | | 0STO5 | LMIT | | | | CZ1 / 001 | CZ1 / 001 |
| 766 | 09/27/2013 | 150.00 | | MSMNHOPENO | | HOMEOWNERSHIP | | | | 0STO5 | HOPE | | | | CZ1 / 001 | CZ1 / 001 |
| 601 | 09/25/2013 | 8.00 | | | | | | | | TXSF | TXSF | | | | CZ1 / 001 | CZ1 / 001 |
| 601 | 09/20/2013 | 8.00 | | 60001 | | SELECT PORTFOLIO ESCROW | | | | 0STO5 | TXSF | | | | CZ1 / 001 | CZ1 / 001 |
| 632 | 09/16/2013 | 109.44 | | ATCACALREC | | CALIFORNIA RECONVEYANCE | | | | 01R01 | FCST | | | | CZ1 / 001 | CZ1 / 001 |
| 631 | 09/12/2013 | 114.00 | | RRR | | RESIDENTIAL REAL ESTATE | | | | 75T80 | FBPO | | | | CZ1 / 001 | CZ1 / 001 |
| 601 | 09/05/2013 | 4.55 | | | | | | | | 0STO5 | POST | | | | CZ1 / 001 | CZ1 / 001 |
| 601 | | 4.55 | | | | | | | | 0STO5 | POST | | | | CZ1 / 001 | CZ1 / 001 |
| | 08/14/2013 | | | | | | | | | | | | | | | |
| 745 | | | | | -4,680.02 | | | | | 7IR11 | BEGB | | | | CZ1 / 001 | CZ1 / 001 |
| 745 | | | | | 500.00 | | | | | 7IR11 | TPMT | | | | CZ1 / 001 | CZ1 / 001 |
| 745 | | | | | 1,038.00 | | | | | 7IR11 | FBPO | | | | CZ1 / 001 | CZ1 / 001 |
| 745 | | | | | 3,142.02 | | | | | 7IT11 | FCST | | | | CZ1 / 001 | CZ1 / 001 |
| 745 | | | | | 195.00 | | | | | 7IT11 | APPR | | | | CZ1 / 001 | CZ1 / 001 |
| 745 | | | | | 590.00 | | | | | 7IT11 | FBPO | | | | CZ1 / 001 | CZ1 / 001 |
| 745 | | | | | 748.33 | | | | | 7IT11 | FCST | | | | CZ1 / 001 | CZ1 / 001 |
| 745 | | | | | 479.65 | | | | | 7IT11 | INSP | | | | CZ1 / 001 | CZ1 / 001 |
| 745 | | | | | 2.25 | | | | | 7IT11 | POST | | | | CZ1 / 001 | CZ1 / 001 |
| | 08/08/2013 | | | | | | | | | | | | | | | |
| 1 142 | 09/01/2008 | 0.00 | -593,652.02 | 0.00 | 0.00 | | 0.00 | | 0.00 | 0.00 | POST | -593,652.02 | 0.00 | | CZ1 / 001 | CZ1 / 001 |

The contents of this document are RESTRICTED to authorized individuals.
Any unauthorized access, use or duplication is strictly prohibited.

# Payment History Report

Report_PaymentHistory_SP

Print Date: 9/24/2019

**Current Principal Bal: 593,652.02**　　　　**Next Pay Date: 09/01/2008**

| Tran | Pmt Due | Tran Amt Life Pmt Escrow Amt Corp Adv. Amt | P & I Pmt Misc. Pmt Escrow Payee CD Corp Adv Payee CD | Escrow Pmt Escrow Payee | Fee Pmt | Fee Code Corp Adv Payee | Unapplied | Rest. Escrow Corp Adv Acct. | A & H Pmt Corp Adv Reason | Partial Prin Pmt | Partial Int Pmt | Pmt Effective | MSP Bank Cat MSP Bank Cat MSP Bank Cat MSP Bank Cat |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Tran | 09/01/2008 | -9,999.99 0.00 | 0.00 0.00 | -9,999.99 0.00 | 0.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | C21 001 |
| 170 | 09/01/2008 | -9,999.99 0.00 | 0.00 0.00 | -9,999.99 0.00 | 0.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | C21 001 |
| 170 | 09/01/2008 | -250.44 0.00 | 0.00 0.00 | -250.44 0.00 | 0.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | C21 001 |
| 170 | 09/01/2008 | -9,999.99 0.00 | 0.00 0.00 | -9,999.99 0.00 | 0.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | C21 001 |
| 170 | 09/01/2008 | -9,999.99 0.00 | 0.00 0.00 | -9,999.99 0.00 | 0.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | C21 001 |
| 170 | 09/01/2008 | -9,999.99 0.00 | 0.00 0.00 | -9,999.99 0.00 | 0.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | C21 001 |
| 745 161 | | 4,680.02 50,250.39 0.00 | 0.00 | 0.00 | | | | 71R11 | BEGB | | | | C21 001 |

The contents of this document are RESTRICTED to authorized individuals.
Any unauthorized access, use or duplication is strictly prohibited.

# EXHIBIT 5

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address<br><br>JaVonne M. Phillips, Esq. SBN 187474<br>Nancy Lee, Esq. SBN 272035<br>**McCarthy & Holthus, LLP**<br>1770 Fourth Avenue<br>San Diego, CA 92101<br>Phone (877) 369-6122 Ext. 2761<br>Fax (619) 685-4811<br>nlee@mccarthyholthus.com | FOR COURT USE ONLY |
|---|---|
| ☒ *Attorney for Movant*<br>☐ *Movant appearing without an attorney* | FILED & ENTERED<br><br>OCT 19 2018<br><br>CLERK U.S. BANKRUPTCY COURT<br>Central District of California<br>BY Ogier     DEPUTY CLERK |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO VALLEY DIVISION**

| In re:<br><br>Orna Shaposhnik,<br><br><br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 1:18-bk-10943-MB<br><br>CHAPTER: 13 |
|---|---|
| | **ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (REAL PROPERTY)** |
| | DATE: 10/17/2018<br>TIME: 10:00 AM<br>COURTROOM: 303<br>PLACE: 21041 Burbank Boulevard<br>          Woodland Hills, CA 91367 |

**Movant:**  U.S. Bank NA, successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass-Through Certificates, Series 2006-AR11, its assignees and/or successors

1.  The Motion was:    ☐ Opposed    ☒ Unopposed    ☐ Settled by stipulation

2.  The Motion affects the following real property (Property):

   *Street address*:     23848 Killion St.
   *Unit/suite number*:
   *City, state, zip code*:   Woodland Hills, CA 91367

   Legal description or document recording number (including county of recording): 06 1510586, Los Angeles County, California

   ☐ See attached page.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

3. The Motion is granted under:

    a. ☒ 11 U.S.C. § 362(d)(1)

    b. ☐ 11 U.S.C. § 362(d)(2)

    c. ☐ 11 U.S.C. § 362(d)(3)

    d. ☐ 11 U.S.C. § 362(d)(4). The filing of the bankruptcy petition was part of a scheme to hinder, delay, or defraud creditors that involved:

        (1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of the secured creditor or court approval; and/or

        (2) ☐ Multiple bankruptcy cases affecting the Property.

        (3) ☐ The court ☐ makes ☐ does not make ☐ cannot make a finding that the Debtor was involved in this scheme.

        (4) If recorded in compliance with applicable state laws governing notices of interests or liens in real property, this order shall be binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of this order by the court, except that a debtor in a subsequent case under this title may move for relief from this order based upon changed circumstances or for good cause shown, after notice and a hearing. Any federal, state or local government unit that accepts notices of interests or liens in real property shall accept any certified copy of this order for indexing and recording.

4. ☒ As to Movant, its successors, transferees and assigns, the stay of 11 U.S.C. § 362(a) is:

    a. ☒ Terminated as to the Debtor and the Debtor's bankruptcy estate.

    b. ☐ Modified or conditioned as set forth in Exhibit _____ to this order.

    c. ☐ Annulled retroactively to the bankruptcy petition date. Any postpetition acts taken by Movant to enforce its remedies regarding the Property do not constitute a violation of the stay.

5. ☒ Movant may enforce its remedies to foreclose upon and obtain possession of the Property in accordance with applicable nonbankruptcy law, but may not pursue any deficiency claim against the Debtor or property of the estate except by filing a proof of claim pursuant to 11 U.S.C. § 501.

6. ☐ Movant must not conduct a foreclosure sale of the Property before (*date*) _____.

7. ☐ The stay shall remain in effect subject to the terms and conditions set forth in the Adequate Protection Agreement contained within this order.

8. ☒ In chapter 13 cases, the trustee must not make any further payments on account of Movant's secured claim after entry of this order. The secured portion of Movant's claim is deemed withdrawn upon entry of this order without prejudice to Movant's right to file an amended unsecured claim for any deficiency. Absent a stipulation or order to the contrary, Movant must return to the trustee any payments received from the trustee on account of Movant's secured claim after entry of this order.

9. ☐ The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, as to the same terms and conditions as to the Debtor.

10. ☒ The 14-day stay as provided in FRBP 4001(a)(3) is waived.

11. This order is binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of the Bankruptcy Code.

12. Movant, or its agents, may, at its option, offer, provide and enter into a potential forbearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                      Page 2                   **F 4001-1.RFS.RP.ORDER**

13. Upon entry of this order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

14. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy case concerning the Property for a period of 180 days from the hearing of this Motion

   (a) ☐ without further notice.

   (b) ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

15. ☐ This order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Property.

16. ☐ This order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:

   (a) ☐ without further notice.

   (b) ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

17. ☐ This order is binding and effective in any future bankruptcy case, no matter who the debtor may be

   (a) ☐ without further notice.

   (b) ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

18. ☐ Other (*specify*):

###

Date: October 19, 2018

Martin R Barash
United States Bankruptcy Judge

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                                   Page 3                                   **F 4001-1.RFS.RP.ORDER**

FORM CACB van155−od13vdr
Rev. 06/2017

# United States Bankruptcy Court
## Central District of California

**21041 Burbank Blvd, Woodland Hills, CA 91367−6603**

## ORDER AND NOTICE OF DISMISSAL
## ARISING FROM DEBTOR'S REQUEST FOR VOLUNTARY DISMISSAL
## OF CHAPTER 13 WITH RESTRICTIONS [11 U.S.C. §§ 109(g)(1) and 1307(b)]

**DEBTOR INFORMATION:**
Orna Shaposhnik

**BANKRUPTCY NO.** 1:18−bk−10943−MB

**CHAPTER** 13

**Last four digits of Social−Security or Individual Taxpayer−Identification (ITIN) No(s)., (if any):** xxx−xx−4866
**Employer Tax−Identification (EIN) No(s).(if any):** N/A
**Debtor Dismissal Date:** 10/22/18

**Address:**
23848 Killion Street
Woodland Hills, Ca 91367

---

Based on debtor's request and because debtor has willfully failed to abide by orders of the court or has willfully failed to appear before the court in proper prosecution of the case, IT IS ORDERED THAT:

(1)  debtor's bankruptcy case is dismissed;

(2)  the court retains jurisdiction on all issues involving sanctions, any bar against being a debtor in bankruptcy, all issues arising under Bankruptcy Code §§ 105, 109(g), 110, 329, 349, and 362, and to any additional extent provided by law; and

(3)  debtor is prohibited from filing any new bankruptcy petition within 180 days from the entry of this order.

BY THE COURT,

Dated: October 22, 2018

**Martin R. Barash**
United States Bankruptcy Judge